IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| SARA WHYTE, )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>NATIONAL BOARD OF )<br>MEDICAL EXAMINERS )<br>)<br>Defendant. ) | CIVIL ACTION FILE NO.<br><br>_____ |

## PLAINTIFF'S INITIAL COMPLAINT

COMES NOW, Sara Whyte, by and through her undersigned attorneys, and for her complaint against the NATIONAL BOARD OF MEDICAL EXAMINERS (NBME), hereby states as follows:

### JURISDICTION AND VENUE

1. Plaintiff brings this action for declaratory and injunctive relief for violations of the Americans with Disabilities Act of 1990 (ADA), as amended, 42 U.S.C. § 12101, *et seq.*; specifically, violations of Title III of the ADA, 42 U.S.C. §§12181 – 12189.

2. Plaintiff's cause of action for disability discrimination under the ADA is authorized by 42 U.S.C. § 12188.

3. The Court has jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331, and 1343(a)(4).

1

4. Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 & 2202, and Fed. R. Civ. P. 65.

5. Venue is proper in the Middle District of Georgia because a substantial part of the events or omissions giving rise to the present claim occurred in this District, and Plaintiff is a natural person domiciled and residing in this judicial circuit. See 28 U.S.C. § 1391(b) and (c).

6. Plaintiff Sara Whyte, a 35 year-old Caucasian female residing in Athens, Georgia, is presently enrolled in the Augusta University/UGA Medical Partnership.

7. As early as May 12, 1988, Plaintiff was tested at the Behavioral Institute of Atlanta. The evaluators concluded that "she was easily frustrated on the timed tasks and tended to give up without really trying."

8. Her scores on the Metropolitan Readiness Test – Level 2 ranged from the bottom 11th to 41st percentile. On the Woodcock Mastery Test – Revised, she scored in the bottom 5% percentile.

9. The evaluators concluded that although Plaintiff had above average intelligence, that she suffered from "processing problems which block her learning. (This report is filed under seal, although it was made available to Defendant).

10. Defendant NBME is a private, non-profit organization, incorporated in the District of Columbia. Its offices and principal place of business are located in Philadelphia, Pennsylvania.

11. Together with the Federation of State Medical Boards, Defendant NBME sponsors the United States Medical Licensing Examination (USMLE), a standardized examination used to evaluate applicants' competence for purposes of medical licensure in the United States and its territories. State medical boards rely upon successful completion of the three USMLE component exams, or "Steps", as an integral element in the process of licensing physicians.

12. As such, the NBME is subject to the requirements of Section 309 of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12189, and related implementing regulations, 28 C.F.R. § 36.309, as well as all other requirements specified within Title III of the ADA, 42 U.S.C. §§12181 – 12189.

## FACTUAL ALLEGATIONS

13. In high school, Plaintiff was diagnosed with ADHD and other learning disabilities.

14. On January 13, 1999, while Plaintiff was in high school, Plaintiff was diagnosed by a licensed clinical psychologist with ADHD. He found the following symptoms, <u>inter alia</u> inattention, because she had great difficulty concentrating on tasks and he recommended that "she should be allowed to take the SAT without the time restraint."

15. The next day, her student support team diagnosed problems "with spoken directions, processing skills. She works well under extended test periods." The

committee specifically recommended that a 504 accommodation plan be put in place to address additional time on testing situations.

16. Throughout high school, in college at the Georgia Institute of Technology, at Emory University, Rollins School of Public Health and the Augusta University/UGA Medical Partnership, Plaintiff has had accommodations of 1.5 time and a quiet room inter alia.

17. Since at least 2006, Plaintiff has been given 1.5 time and a separate space to take written exams. These accommodations were for learning disability and ADHD. Defendant was so informed on or about December 4, 2013.

18. On or about February 23, 2011, the Department of Justice and Defendant entered into a settlement agreement requiring Defendant to provide reasonable test accommodations to persons with disabilities who seek to take the United States Medical Licensing Examination. A true and correct copy of the unsigned agreement appears on the DOJ website and is attached herein.

19. In making the agreement, Defendant did not admit liability and the agreement expired within three years at a time prior to the facts outlined herein regarding Defendant's actions.

20. On March 23-25, 2015, Plaintiff was evaluated by a team of psychologists. The report is being filed under seal but Defendant has a copy of the same. The report was "to establish if Mrs. Whyte is eligible for academic accommodations for

disabilities, as allowed by the Georgia Board of Regents and in accordance with Regents guidelines for diagnosing learning disorders."

21. The team diagnosed ADHD inter alia based on a clinical interview, client self-report questionnaires, prior psychoeducational reports and transcripts including tests. They determined that she "demonstrated an academic deficit in reading efficiency (i.e. the ability to read and comprehend under timed conditions.") (Page 1).

22. She "had prior diagnoses that included learning disabilities and an attention disorder." (Page 2).

23. The team determined she met the DSM-5314.00 criteria for ADHD (page 2).

24. She "exhibited an academic deficit in reading efficiency, which involves reading rate and the understanding of text-based passages under timed conditions." The presence of this deficit is consistent with Mrs. Whyte's attentional difficulties related to ADHD.

25. The team did not find a learning disorder but "her pattern of generally average basic reading and writing abilities are generally lower than expected given her superior overall verbal ability."

26. The team specifically found underachievement in reading efficiency—the ability to efficiently read and understand text-based passages under timed conditions.

27. Her reading rate (page 7) under timed conditions was impaired, in the 6th percentile.

28. Her comprehension fell at the lower end of the average range, in the 30 percentile.

29. The team cautioned that the results might not be accurate. "If anything, Mrs. Whyte's NDRT scores likely represent an overestimation of her abilities given that a more appropriate normative sample would entail comparison to individuals of a more advanced academic level with a greater amount of print exposure."

30. The team recommended test accommodations including time and a half, a private or quiet room, written instructions and scheduled breaks. But they also suggested at pages 9-12 several ways to self-accommodate.

31. As a result, Plaintiff has engaged in self-accommodation to help her overcome her disabilities. She normally studies in an empty room. She normally gives herself double time to read books or notes. If she is running out of time, she will look for videos on YouTube about the subject. She blocks out distractions by playing white noise over headphones. She seeks out recordings of class lectures and takes prescriptions for ADHD.

32. The team then summarized the results of Plaintiff's testing. Of particular importance was the following:

        Visual Response Control Quotient    40  
        Broad Reading Cluster                     44

```
Reading Fluency Cluster            42
Sentence Reading Fluency           37
Reading Comprehension (NDRT)       30
Reading Rate (NDRT)                 6
```

33. Defendant failed to take into account this report at all. It ignored the clinical report. It focused on the fact that under the Nelson Denny Test, Plaintiff's comprehension was in the bottom 30 percentile, but <u>her reading rate was in the bottom 6 percentile</u>.

34. In the test given by University of Georgia evaluators, Plaintiff finished only 30 of 38 questions; she was able to finish the test with time and a half.

35. Plaintiff requested reasonable accommodations from Defendant in 2016, which request was denied on October 6, 2016. A true and correct copy of the letter is attached as Exhibit A.

36. Plaintiff reapplied and again asked for accommodations. Such accommodations were denied on April 30, 2018. A true and correct copy of the letter is attached as Exhibit B.

37. Plaintiff is required to take and pass the USMLE Step 2 by May 24, 2018 or she cannot return to Medical School.

38. Among the stated purpose of the ADA is the congressional intent to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities, and to provide clear, strong, consistent,

7

enforceable standards addressing discrimination against individuals with disabilities. 42 U.S.C. § 12101(b).

39. For purposes of the ADA, the term "disability" means, with respect to an individual, a physical or mental impairment that substantially limits one or more major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1).

40. Without limitation, the activities of learning, reading, and concentrating are among the stated "major life activities" specifically contemplated by the drafters of the ADA. 42 U.S.C. § 12102(2)(A). Plaintiff also is impaired in the major life activity of testing.

41. As intended by Congress, the definition of disability expressed in the maximum extent permitted […]." 42 U.S.C. § 12102(4)(A).

42. As intended by Congress, the ADA's use of the term "substantially limits" in the definition of disability "shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008." 42 U.S.C. § 12101(4)(B).

43. As intended by Congress, for purposes of the ADA an impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability. 42 U.S.C. § 12102(4)(C).

44. Based on the foregoing, Plaintiff is an individual with a "disability" as that concept is defined by the federal Americans with Disabilities Act of 1990, as amended. 42 U.S.C. § 12102.

45. Pursuant to Title III of the ADA, private entities that administer examinations related to professional licensing must offer the examinations in a place and manner accessible to individuals with disabilities, or must offer alternative accessible arrangements for such individuals. 42 U.S.C. § 12189 and 28 C.F.R. § 36.309(a).

46. Pursuant to 28 C.F.R. $ 36.309, private entities that administer such examinations are required to provide reasonable modifications to the examination and appropriate auxiliary aids and services (i.e., testing accommodations) for individuals with disabilities. Private entities must ensure that such examinations are selected and administered "so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure)." 28 C.F.R. § 36.309(b)(1)(i).

47. Additionally, private entities administering such examinations must assure that any request for documentation is "reasonable and limited to the need" for the modification or accommodation requested. 28 C.F.R. $ 36.309(b)(1)(iv).

48. Moreover, when considering requests for modifications and accommodations, a private entity administering such examinations must ensure that it "gives considerable weight" to documentation of past modifications and accommodations received in similar testing situations. 28 C.F.R. § 36.309(b)(1)(v).

49. Finally, the ADA's implementing regulations specifically provide that required modifications and accommodations "may include changes in the length of time permitted for completion of the examination" as well as adaptation of the manner in which the examination is given. 28 C.F.R. § 36.309(b)(2).

50. As a direct and proximate result of Defendant's refusal to acknowledge Plaintiff's protections and its own obligations under the ADA through the provision of requested reasonable accommodations on the USMLE Step 2 Examination, Defendant has violated the ADA by discriminating against Plaintiff in a number of ways, including, without limitation, the following: (a) In twice determining, following its review of significant documentation submitted by Plaintiff – of ADHD, under criteria specified in DSM-5 (2013); Plaintiff submitted to Defendant significant documentation of ADHD under criteria specified in DSM-5 (2013), and also submitted evidence of similar testing accommodations while a

student. Yet Defendant still has determined that Plaintiff is not entitled to accommodations

    (b) In determining after review of the above documentation and other documentation Defendant had available to it related to Plaintiff's applications for testing accommodations, that Plaintiff was not "currently substantially limited" in the major life activities of, for instance, learning, reading, concentrating or thinking - all major life activities specifically contemplated by the ADA and implementing regulations;

    (c) By failing to carefully consider the recommendations and clinical determinations of separate qualified professionals who have personally observed Plaintiff in a clinical setting, and who have determined - in their clinical judgment and in accordance with generally-accepted diagnostic criteria, as supported by reasonable documentation - that Plaintiff is substantially-limited in one or more major life activities within the meaning of the ADA, thereby needing the requested test accommodations in order to demonstrate her ability and achievement level on the USMLE Step 2 Examination.

51. As set out above, Plaintiff is being irreparably harmed without adequate remedy at law.

    WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant, providing the following relief:

1. Entrance of an injunction directing Defendant National Board of Medical Examiners and its officers, employees, and agents to cease discriminating against Plaintiff by granting her application for reasonable testing accommodations on the USMLE Step 2 Examination, based upon her ample submission of professional evaluative and personal corroborative documentation and evidence, as well as her explanation of the ways in which she has compensated and accommodated for functional deficits created by her diagnosed condition of ADHD;

2. Award Plaintiff the costs of this action, and reasonable attorneys' fees pursuant to 42 U.S.C. $ 12188 and 42 U.S.C. § 2000a-3;

3. Provide such other and further relief as the Court deems to be just and equitable.

Respectfully submitted,

/s/ Ralph Goldberg
Ralph Goldberg
Georgia Bar No. 299475

/s/ Laurene Cuvillier
Laurene Cuvillier
Georgia Bar No. 202922
Attorneys for Plaintiff

Goldberg & Cuvillier, P.C.
1400 Montreal Road, Suite 100
Tucker, Georgia 30084-6919
(770) 670-7343
(770) 670-7344 (FAX)
attorneygoldberg@hotmail.com
cuvillier@bellsouth.net