IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| SARA WHYTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE NO. |
| v. | ) | |
| | ) | _____ |
| NATIONAL BOARD OF | ) | |
| MEDICAL EXAMINERS | ) | |
| | ) | |
| Defendant. | ) | |

**STATEMENT UNDER PENALTY OR PERJURY**

COMES NOW, Dr. David Raque, who states under penalty of perjury.

1.

I am a licensed psychologist with a Ph.D. from Southern Illinois University. I have been in full time private practice as a clinical psychologist since 1978.

2.

From August, 1975 until November 1976, I was the Director of the Central DeKalb County Community Health Center, where my duties included administering a one million dollar budget and staff of fifty employees, including clinical and administrative staff. After leaving DeKalb County I began my part time private practice while continuing to do consulting work for the county. In 1978 I resigned from DeKalb County and began my full time private practice.

3.

Beginning in September 1978 I opened my private practice in Stone Mountain, Georgia. I practiced there until I purchased my office condo and moved to Lenox Pointe in 1989. I have continued to practice at this location, 11 Lenox Pointe NE. Suite B, Atlanta, Georgia. During my first twenty years of practice (1978-1998), I specialized in child and adolescent treatment, including the assessment of Attention Deficit Hyperactive Disorders and learning disabilities. The learning disabilities included: dyslexia, auditory processing, and reading comprehension problems. It was at my Lenox Pointe office when I initially met Sara Jones, now Sara Whyte. I am writing this affidavit and becoming involved in Sara Whyte's situation because she contacted me as my having been one of the initial professionals in her life who helped identify the impact of her learning problems and how they were interfering in pursuing her dreams to become successful. During the time she was my patient, she had not talked about wanting to be a physician; if fact, at that time she was more interested in obtaining a Ph.D. in chemistry and being engaged in research. I had not been in touch with Sara for over ten years until she contacted me about a week ago. Sara has been getting 504 accommodations for extra time on testing not only throughout high school and college but also throughout her medical school training at the Medical College of Georgia.

In my initial assessment in 1996, after Sara's parents described Sara's struggles in elementary school and middle school, Sara was a child who had been suffering from ADD, auditory processing and reading comprehension problems from an early age. At that time her ADD diagnosis was based on her inability to stay focused, her distractibility. My diagnosis was based on my clinical observations, thorough history from her parents, her teachers' questionnaires and her intra-test variability on the WISC-R. But because of Sara's overall above average IQ and the combination of her resilience and persistence, Sara had continued to overcome her pre-existing disabilities. After seeing Sara for a while there was continuing evidence of her auditory processing issues that clearly substantiated she suffered from substantial learning disabilities. This conclusion was also based on the State of Georgia's criteria for a child to be diagnosed with a disability. Sara's achievement scores fell two standard deviations below what her expected achievement should have been based on her IQ. This discrepancy had to be present to officially diagnose a learning disability. My diagnosis was instrumental, along with previous testing completed when Sara was in elementary school, to substantiate her qualifying disability to qualify for additional time on formalized testing. This also qualified her for 504 accommodations. These accommodations continued throughout high school, into college and through medical school at the Medical College of Medicine in Augusta, Georgia.

It is important to point out that all her previous intelligence testing, including the most recent evaluation by the Georgia Board of Regents assessment team in 2015, (see report completed by Dr. Miller) consistently places Sara's IQ in the above average range. Also, consistent is the objective finding of reading comprehension impairment, particularly when she is under a time constraint in a formalized testing situation. The results of the 2015 evaluation assessed Sara's reading comprehension, when compared to peers, is in the 6th percentile. In the ACCOMODATIONS section of the 2015 report written by Dr. Scott Miller he recommended Sara be in a "private or quiet and/or private room, extended (1.5) time for all tests, written instructions and scheduled breaks." The 504 guidelines for students with diagnosed and documented learning disabilities affecting their daily life functioning have been granted to Sara beginning in high school, and continued through college and at the Medical College of Georgia.

4.

After reviewing the 2015 report by Dr. Miller, I concur based on the results, Sara's learning disabilities include: reading comprehension under timed pressure particularly in a formalized testing circumstance, and her ADD adds to this problem due to her distractibility and difficulty sustaining her attention. As stated ;previously Sara has a substantial disability that with appropriate time accommodations allows her to perform at her innate potential.

Furthermore, Sara has difficulty with visual closure. Sara applied for accommodations for Step 1 of the USMLE but was turned down. She failed but then took it again a year later and passed. She applied for accommodations for Step 2 of the USMLE but was turned down again. She failed the Step 2 and again appealed for accommodations a second time and did not hear back from her appeal until two weeks ago that her appeal was denied. It is at this point Sara had no further recourse but to hire an attorney to pursue accommodations to take the Step 2 USMLE. If she does not pass Step 2 on this time she will be forced to drop out of medical school.

In the latest assessment by Dr. Miller what stands out is Sara's scores on the Nelson Denny Reading Test. Sara's results placed her within the 6% tile of when compared to the general population. This reading test is a timed test indicating clearly Sara's issues with reading comprehension under time pressure. The National Board references this result to show that Mrs. Whyte does not need accommodations. I would disagree with the assessment by itself. But the National Board completely leaves out the fact that on the 2015 Nelson Denny Reading Test, Mrs. Whyte is in the bottom 6% as though that test result is without meaning.

5.

It is quite clear through additional tutoring and guidance Sara is able to perform adequately as a medical student and an aspiring physician. She has passed

her clinical trials and demonstrated the necessary grasp of the medical knowledge necessary to move forward in her medical career. Sara's Attention Deficit Disorder is not going away nor are her learning disabilities. As I am sure the board would agree some of the best physicians motivated to do their best are those who struggled through medical school for different reasons.

The testing Sara has had throughout her life are all consistent documenting she struggles with reading comprehension, and in when she is in test-taking situation that is being timed.

6.

In real-life terms, Sara's test results for her timed reading test found that on a timed list of 38 questions, Mrs. Whyte finished 30 questions; in other words, she would start the USMLE Level 2 Tests with a 78 out of 100%--quite a difference from those who start out with a possible 100% result.

In conclusion, I would hope the Medical Review Board would reconsider Ms. Whyte's appeal and allow her accommodations on the Step 2 USMLE. Her being allowed to have more time has nothing to do with her grasp of the necessary knowledge and competency, but rather giving Sara the opportunity to perform at a level she is capable giving her reading comprehension disabilities.

This 16th day of May, 2018.

David Raque, Ph.D.

*[signature]*

Clinical Psychologist
Georgia License #413