**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | | |
|---|---|---|
| SARA WHYTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:18-cv-00062-CAR |
| | ) | |
| NATIONAL BOARD OF MEDICAL | ) | |
| EXAMINERS, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF CATHERINE FARMER, PSY.D.

1.      My name is Catherine Farmer.  I am over eighteen (18) years of age and, unless indicated otherwise, I have personal knowledge of the facts stated below.

2.      I am employed by the National Board of Medical Examiners ("NBME") as Director of Disability Services.  I am also the ADA Compliance Officer, Testing Programs.  I hold a Doctor of Psychology degree.

3.      The NBME is a not-for-profit organization that provides assessment services for the health professions.  Its mission is to help protect the public through state-of-the-art assessment of the knowledge and skills of health professionals.

4.      Together with the Federation of State Medical Boards, the NBME sponsors the United States Medical Licensing Examination ("USMLE"), which is a standardized examination used to evaluate applicants' competence for medical licensure in the United States and its territories.  The USMLE is designed to assess a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that constitute the basis of safe and effective patient care.



EXHIBIT
1

5.      Jurisdictions across the country rely upon the USMLE as part of their licensure process for ensuring the qualifications of prospective physicians.

6.      There are three "Steps" to the USMLE, all of which must be passed before a physician with an M.D. degree is eligible to apply for an unrestricted license to practice medicine in the United States. Step 1 is a one-day, computer-based multiple-choice examination that assesses understanding and application of basic science concepts important to the practice of medicine. Step 2 has two components: Step 2 CK (Clinical Knowledge), and Step 2 CS (Clinical Skills). Step 2 CK is a one-day computer-based multiple-choice examination that assesses the application of medical knowledge, skills, and understanding of clinical science for the provision of patient care under supervision. Step 2 CS uses standardized patients to assess an examinee's ability to gather information from patients, perform physical examinations, and communicate his or her findings. Step 3 is a computer-based examination that assesses whether examinees can apply medical knowledge and understanding of biomedical and clinical science essential for the unsupervised practice of medicine.

7.      In order to protect the integrity and meaning of test scores, the USMLE is administered under standard conditions, and NBME has policies and procedures in place that are intended to ensure that no examinee or group of examinees receives unfair advantage on the examination.

8.      With limited exceptions, all examinees take the USMLE Step examinations under the same testing conditions, including standard testing time. The primary exception to this policy is for individuals with documented disabilities who demonstrate that they need reasonable accommodations to access the examination(s).

9.      Testing accommodations are available on the USMLE for examinees with a disability, as defined under the ADA, as amended by the ADA Amendments Act of 2008 ("ADA"). All requests for accommodations are individually reviewed and, when warranted (*i.e.*, when the examinee demonstrates that he or she is disabled within the meaning of the ADA and needs reasonable accommodations to access the examination), reasonable and appropriate accommodations are provided. Accommodations are denied when the submitted documentation fails to demonstrate that the examinee has a disability within the meaning of the ADA or that the requested accommodations are needed for access to the examination. NBME does so to ensure that its testing program is fair for all examinees, and to protect the comparability and validity of USMLE scores.

10.     On occasion, NBME consults with independent professionals with expertise in the relevant disability to review requests and supporting documentation submitted by individuals requesting accommodations, and asks these consulting experts to provide a written recommendation.

11.     On January 7, 2014, NBME received a request from Sara Whyte for testing accommodations on USMLE Step 1 on the basis of a "learning disability in reading" and Attention-Deficit/Hyperactivity Disorder ("ADHD"). She requested 50% additional test time and stated that "[t]ime and a quarter [25% additional time] would be helpful as well." A true and correct copy of Ms. Whyte's 2014 request form for Step 1 is attached at Exhibit A.

12.     NBME received additional supporting documentation in March 2014, including Ms. Whyte's Medical College Admission Test ("MCAT") score report, which showed she took the exam twice under standard testing conditions, achieving a score that was better than 79.1–83.7

percent of a national sample of medical school applicants on her second attempt.    A true and correct copy of Ms. Whyte's MCAT score report is attached at Exhibit B.

13.    NBME carefully reviewed all documents submitted in support of her request for test accommodations, and also provided Ms. Whyte's file to an external reviewer, Stephen G. Zecker, Ph.D., for review and recommendation.    Dr. Zecker is an expert in ADHD and learning disabilities.    A true and correct copy of the written recommendation that Dr. Zecker provided to NBME is attached at Exhibit C.

14.    Following its review of Ms. Whyte's request, and based on Dr. Zecker's recommendations and my independent review of the file, NBME concluded that Ms. Whyte's documentation did not demonstrate a substantial limitation in a major life activity compared to most people or that her requested accommodations were an appropriate modification of her USMLE Step 1 test administration.    NBME therefore denied Ms. Whyte's request for extra time testing accommodations.    A true and correct copy of my June 5, 2014 letter to Ms. Whyte in response to her accommodation request is attached at Exhibit D.

15.    On July 30, 2014, Sara Whyte took Step 1 without accommodations and did not achieve a passing score.    With a score of 187, Ms. Whyte was five points below the minimum score needed to pass the exam at that time, a 192.    A true and correct copy of Ms. Whyte's July 30, 2014 Step 1 score report is attached at Exhibit E.

16.    On March 16, 2015, Sara Whyte took Step 1 without accommodations and achieved a passing score.    With a score of 199, Ms. Whyte was seven points above the minimum score needed to pass the exam at that time, a 192.    A true and correct copy of Ms. Whyte's March 16, 2015 Step 1 score report is attached at Exhibit F.

- 4 -

17.     In June 2016, NBME received a request from Ms. Whyte for testing accommodations on USMLE Step 2 CK and Step 2 CS on the basis of ADHD and Major Depressive Disorder, mild.  She requested 50% additional test time for Step 2 CK and for the "Patient Note" section of Step 2 CS.  She also requested a "private and/or quiet room," "written instructions," and "scheduled breaks."  A true and correct copy of Ms. Whyte's June 2016 request form for Step 2 is attached at Exhibit G.

18.     On July 14, 2016, Ms. Whyte submitted additional supporting documentation to NBME and said that she mistakenly requested accommodations for Step 2 CS.

19.     On July 25, 2016, Ms. Whyte withdrew her request for accommodations for Step 2 CS.

20.     NBME carefully reviewed all documents submitted in support of her request for test accommodations, and also provided Ms. Whyte's file to two external reviewers, Benjamin J. Lovett, Ph.D. and B. Christopher Frueh, Ph.D., for review and recommendation.  Dr. Lovett is an expert in ADHD and learning disabilities.  Dr. Frueh is an expert in mood and anxiety disorders. Neither reviewer recommended that Ms. Whyte be provided testing accommodations.  A true and correct copy of the written recommendation that Dr. Lovett provided to NBME, which addresses Ms. Whyte's request based on her ADHD diagnosis, is attached at Exhibit H.

21.     Following its review of Ms. Whyte's request, and based on Dr. Lovett's recommendations, Dr. Frueh's recommendations, Dr. Zecker's previous recommendations, and my independent review of the file, NBME concluded that Ms. Whyte's documentation did not demonstrate a substantial limitation in a major life activity compared to most people or that her requested accommodations were an appropriate modification of her USMLE Step 2 CK test administration.  NBME therefore denied Ms. Whyte's request for accommodations.  A true and

correct copy of my October 6, 2016 letter to Ms. Whyte in response to her accommodation request is attached at Exhibit I. She was issued a scheduling permit for the eligibility period of October 1 though December 31, 2016. Ms. Whyte did not take Step 2 CK at that time.

22.    On March 16, 2017, Ms. Whyte took Step 2 CS without accommodations and achieved a passing score. A true and correct copy of Ms. Whyte's March 16, 2017 Step 2 CS score report is attached at Exhibit J.

23.    On October 2, 2017, NBME received a request from Ms. Whyte to reconsider its October 2016 decision regarding testing accommodations for Step 2 CK. A true and correct copy of Ms. Whyte's 2017 reconsideration request is attached at Exhibit K.

24.    NBME carefully reviewed Ms. Whyte's request and all documents submitted in support of her request for reconsideration. Based on my independent review of the file, NBME concluded that there was no new substantive information or evidence that warranted a different decision than the original decision as communicated in my October 6, 2016 letter to Ms. Whyte. NBME therefore informed Ms. Whyte by letter dated November 1, 2017, that she was not approved for accommodations. A true and correct copy of my November 1, 2017 letter to Ms. Whyte is attached at Exhibit L.

25.    On December 28, 2017, Ms. Whyte took Step 2 CK without accommodations and did not achieve a passing score. With a score of 205, Ms. Whyte was four points below the minimum score needed to pass the exam, a 209. A true and correct copy of Ms. Whyte's December 28, 2017 Step 2 CK exam administration is attached at Exhibit M.

26.    In March 2018, NBME received a request from Ms. Whyte for testing accommodations on USMLE Step 2 CK on the basis of ADHD and a learning disorder in reading.

She requested 100% additional test time and "a single room with no other test takers." A true and correct copy of Ms. Whyte's 2018 request form is attached at Exhibit N.

27.     NBME carefully reviewed all documents submitted in support of her request for test accommodations. Based on my independent review of the file, NBME concluded that there was no new substantive information or evidence that warranted a different decision than the decisions communicated to Ms. Whyte on November 1, 2017, October 6, 2016, and June 5, 2014. NBME therefore informed Ms. Whyte by letter dated April 30, 2018, that she was not approved for accommodations. A true and correct copy of my April 30, 2018 letter to Ms. Whyte is attached at Exhibit O.

28.     On May 14, 2018, I received a letter from Ms. Whyte's attorney, Ralph Goldberg, which stated that Ms. Whyte seeks to take the exam on May 24, 2018. The letter further stated that if NBME did not provide accommodations for the administration of her exam, Ms. Whyte would file a lawsuit. The letter enclosed a Motion for Temporary Restraining Order and Brief in Support, and Plaintiff's Initial Complaint. These documents did not contain any new substantive evidence that altered the decision we communicated to Ms. Whyte by letter dated April 30, 2018. NBME therefore informed Mr. Goldberg by letter dated May 16, 2018, that it could not approve the accommodations requested. A true and correct copy of my May 16, 2018 letter to Mr. Goldberg is attached at Exhibit P.

29.     True and correct copies of Ms. Whyte's Student Score Report on the May 1999 and November 1999 administrations of the SAT, which she provided to NBME in support of her accommodation requests, are attached at Exhibit Q.

30.     A true and correct copy of Ms. Whyte's score report on the Georgia High School Examination, which she provided to NBME in support of her accommodation requests, is attached at Exhibit R.

31.     True and correct copies of Ms. Whyte's report cards from Decatur High School, which she provided to NBME in support of her accommodation requests, are attached at Exhibit S.

32.     A true and correct copy of Ms. Whyte's transcript from Georgia Tech University, which she provided to NBME in support of her accommodation requests, is attached at Exhibit T.

33.     Birth dates and social security numbers have been redacted from the attached documents.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 21, 2018

Catherine Farmer

# EXHIBIT A



1074842    B-318-720-1
Step 1 Request Form

## United States Medical Licensing Examination® (USMLE®)

### REQUEST FOR TEST ACCOMMODATIONS
*Use this form if you have never received test accommodations for USMLE*

---

**The National Board of Medical Examiners® (NBME®) processes requests for test accommodations on behalf of the USMLE program**

If you have a documented disability covered under the Americans with Disabilities Act (ADA), you must notify the USMLE in writing <u>each time</u> you apply for a Step examination for which you require test accommodations. Submitting this form constitutes your official notification.

- Review the USMLE Guidelines for Test Accommodations at www.usmle.org for a detailed description of how to document a need for accommodation.

- Complete all sections of this form and submit it together with all required documentation.

- Incomplete, illegible, or unsigned request forms and/or insufficient supporting documentation will delay processing of your request.

- Do not send originals. Please retain the originals of all documentation that you submit as we are unable to return submissions.

- Submitting duplicate and/or bound documentation may delay processing of your request.

- Requests are processed in the order in which they are received.    RECEIVED

- NBME will acknowledge receipt of your request and audit your submission for completeness. You may be asked to submit additional documentation to complete your request.    JAN 2 7 2014

  Disability Services

- Allow at least 60 days for processing of your request. Processing cannot begin until sufficient information is received by NBME.

- The outcome of our review will not be released via telephone. All official communications regarding your request will be made in writing. If you wish to modify or withdraw a request for test accommodations, contact Disability Services by e-mail at disabilityservices@nbme.org or by telephone at 215-590-9700.

---

**You MUST provide supporting documentation verifying your current functional impairment.**

In order to document your need for accommodation, **submit** the following with this form:

✓ A **personal statement** describing your disability and its impact on your daily life and educational functioning.

✓ **Supporting documentation** such as psychoeducational evaluations; medical records; copies of report cards, academic and score transcripts; faculty or supervisor feedback; job performance evaluations; clerkship/clinical course evaluations; verification of prior academic/test accommodations; etc.

✓ A **complete and comprehensive evaluation**. Reports from qualified professionals must be typewritten on letterhead, signed and include their professional qualifications.

Accom Request Form (2011)                                      1

**Section A: Exam Information**

**A1.** Place a check next to the examination(s) for which you are currently registered and requesting test accommodations: (Check all that apply)

☑ Step 1

☐ Step 2 CK (Clinical Knowledge)

☐ Step 2 CS (Clinical Skills)

☐ Step 3 for the year: _____   Name of State through which you applied for Step 3: _____

**Submit this completed request form and all supporting documentation to the appropriate address listed on the last page of this form at the same time that you submit your Step exam application(s) to your registration agency.**

**Section B: Biographical Information**
Please type or print.

**B1.** Name:  _Whyte_  _Sara_  _K_
　　　　　　Last　　　　　　　　First　　　　　　　　Middle Initial

**B2.** Gender:  ☐ Male  ☑ Female

**B3.** Date of Birth:  _._  　　　　　　　_ _

**B4.** USMLE # _5_ - _3 1 6_ - _7 2 0_ - _1_  (required)

**B5.** Address:
_127 Hart Aver._
Street

_Athens_　　　　　　　_Georgia_　　　　　_30606_
City　　　　　　　　　　State/Province　　　　Zip/Postal Code

_United States_
Country

_404-217-8036_　　　　　　　　RECEIVED
Daytime Telephone Number

_N/A_　　　　　　　　　　　　JAN 0 7 2014
Alternate Telephone Number　　　　　Disability Services

_Swhyte@gru.edu_
E-mail address

**B6.** Medical School Name: _Georgia Regents University / UGA Medical Partnership_

Country of Medical School: _USA_　　　　Date of Medical School Graduation: _2016_

---

**Section C: Accommodations Information**

**C1.** Do you require wheelchair access at the examination facility?  ☐ Yes  ☑ No
If yes, and you require an adjustable height computer table, indicate the number of inches required from the bottom of the table to the floor: _____

**C2.** Describe the accommodation(s) you are requesting. Accommodations must be appropriate to the impairment within the context of the examination task and setting:

*Extra time for the exam. Typically time and a half. Time and a quarter would be helpful as well.*

**C3.** If you are requesting additional break or extended testing time, check the appropriate box below.

**STEP 1:**

| Additional Break Time | Additional Testing Time |
|---|---|
| ☐ Additional break time over 1 day | ☐ 25% Additional test time (Time and 1/4) over 2 days |
| ☐ Additional break time over 2 days | ☑ 50% Additional test time (Time and 1/2) over 2 days |
| | ☐ 100% Additional test time (Double time) over 2 days |

**STEP 2 CK:**

| Additional Break Time | Additional Testing Time |
|---|---|
| ☐ Additional break time over 2 days | ☐ 25% Additional test time (Time and 1/4) over 2 days |
| | ☐ 50% Additional test time (Time and 1/2) over 2 days |
| | ☐ 100% Additional test time (Double time) over 2 days |

**STEP 3:**

| Additional Break Time | Additional Testing Time |
|---|---|
| ☐ Additional break time over 2 days | ☐ 25% Additional test time (Time and 1/4) over 3 days |
| ☐ Additional break time over 4 days | ☐ 50% Additional test time (Time and 1/2) over 3 days |
| | ☐ 100% Additional test time (Double time) over 4 days |

**STEP 2 CS:**
For each section of Step 2 CS you believe is affected by a disability (i.e., patient encounter, patient note), describe the accommodations you are requesting. If you are requesting additional time, state the **amount** of additional time you require in **minutes per encounter/note**.

JAN 17 2014

Disability Services

☐ Patient Encounter: _____

_____

☐ Patient Note: _____

_____

_____

**Section D: Information about Your Impairment**

**D1.** Check the box that best describes the **nature of your impairment.** Write the year it was first professionally diagnosed.  Select those for which you are requesting accommodations.

| Sensory | Year first diagnosed |
|---|---|
| ❑ Hearing | |
| ❑ Vision | |
| ❑ Other (specify):_____ | |

**Learning**
| | |
|---|---|
| ☑ Reading | 1988 |
| ❑ Writing | |
| ❑ Mathematics | |
| ❑ Other (specify):_____ | |

**Language**
| | |
|---|---|
| ❑ Expressive | |
| ❑ Receptive | |
| ❑ Other (specify):_____ | |

**Physical**
| | |
|---|---|
| ❑ Mobility/motor | |
| ❑ Endocrine | |
| ❑ Neurological | |
| ❑ Other (specify):_____ | |

**Psychiatric**
| | |
|---|---|
| ❑ Anxiety Disorder | |
| ❑ Depression/Mood Disorder | |
| ☑ Attention Deficit/Hyperactivity Disorder | 1988 |
| ❑ Other (specify):_____ | |

**Other Impairment** (specify) _____

RECEIVED

MAR ? 7 2014

Disability Services

**D2.** List your **current** DSM/ICD diagnosis/diagnoses for which you are requesting accommodations:

Learning Disability in reading and Attention Deficit/Hyperactivity Disorder

**D3.** Personal Statement

- **Attach a signed and dated personal statement describing your impairments(s) and their impact on daily life.** Narratives should **not** be confined to standardized test performance. The personal statement is your opportunity to tell us how your physical or mental impairment(s) substantially limit your current functioning in a major life activity. In your own words, discuss how your impairment(s) would interfere with your access to the relevant USMLE Step and how the specific accommodation(s) you are requesting will alleviate this impact.

**Section E:  Accommodation History**

**STANDARDIZED EXAMINATIONS**

**E1.** List accommodations you received for all standardized examinations such as college, graduate and professional school admissions tests and professional licensure and certification examinations.  If no accommodations were provided, write NONE.

> Attach copies of official documentation from each testing agency confirming the test accommodations they provided as well as a copy of your official score report(s).

|  | DATE(S) ADMINISTERED | ACCOMMODATION(S) PROVIDED |
|---|---|---|
| ☐ SAT®, ACT® | | |
| ☐ MCAT® | | |
| ☐ GRE® | | |
| ☐ GMAT® | | |
| ☐ LSAT® | | |
| ☐ DAT® | | |
| ☐ COMLEX® | | |
| ☐ Bar Examination(s) | | |
| ☐ Other(s) | | RECEIVED |

**POSTSECONDARY EDUCATION**

Disability Services

**E2.** List each school and all formal accommodations you receive/received, and the dates accommodations were provided:

|  | SCHOOL | ACCOMMODATIONS PROVIDED | DATES PROVIDED |
|---|---|---|---|
| Medical/Graduate/ Professional School | GRU/UGA Medical Partnership | Time and a half 2012 - Current Separate space to take my exams (a quiet empty room) | 2012 - Current |
| Undergraduate School | Georgia Institute of Technology | Time and a half for testing and a quiet empty room to take test in | 2000 - 2006 |

**E3.**  Certification of Prior Test Accommodations

> If you receive/received accommodations in medical school and/or residency, the appropriate official at your medical school/residency must complete and submit the Certification of Prior Test Accommodations form available at www.usmle.org.

## PRIMARY AND SECONDARY SCHOOL

**E4.** List each school and all formal accommodations you received, and the dates accommodations were provided:

> *Attach copies of official records from the school(s) listed confirming the accommodations they provided.*

|  | SCHOOL | ACCOMMODATIONS PROVIDED | DATES PROVIDED |
|---|---|---|---|
| **High School** | Decatur High | Time and a half | 1996-2000 |
| **Middle School** |  |  |  |
| **Elementary School** |  |  |  |

RECEIVED

Disability Services

## Section F:  Certification and Authorization

To the best of my knowledge and belief, the information recorded on this request form is true and accurate. I understand that my request for accommodations, including this form and all supporting documentation, must be received by the NBME sufficiently in advance of my anticipated test date in order to provide adequate time to evaluate and process my request.

I acknowledge and agree that any information submitted by me or on my behalf may be used by the USMLE program for the following purposes:

- Evaluating my eligibility for accommodations.  When appropriate, my information may be disclosed to qualified independent reviewers for this purpose.
- Conducting research.  Any disclosure of my information by the USMLE program will not contain information that could be used to identify me individually; information that is presented in research publications will be reported only in the aggregate.

I authorize the National Board of Medical Examiners (NBME) to contact the entities identified in this request form, and the professionals identified in the documentation I am submitting in connection with it, to obtain further information.  I authorize such entities and professionals to provide NBME with all requested further information.

**For Step 3 applicants:** I authorize the release of any documentation or information relating to my current or prior request(s) for test accommodations for USMLE Step(s) to the medical licensing authority or its designee for purposes of rendering a decision regarding my eligibility for accommodations on Step 3.

I further understand that the USMLE reserves the right to take action, as described in the Bulletin of Information (see "Indeterminate Scores and Irregular Behavior"), if it determines that false information or false statements have been presented on this request form or in connection with my request for test accommodations.

Name (print):  Sara K. Whyte

Signature:  Sara Whyte                    Date: 12-19-2013

# EXHIBIT B



1077615        5-318-728-1
MCAT-Test Scores (MCAT, G



MCAT is a program of the
Association of American Medical Colleges

## CONFIDENTIAL

**RECEIVED**

**Name:** WHYTE, SARA K

MAR 20 2014

**AAMC ID:** 12896990

**Date of Birth:**

**Disability Services**

**Gender:** Female

**Verification Code:** ZNYT-XXHV-FOO3-PFF2

2 MCAT exam(s) since 1991. 2 MCAT exam(s) included in this report.

| Test Date | 05/07/2011 | Score | Percentile |
|-----------|-----------|-------|------------|
| Scores: | Verbal Reasoning | 10 | 67.8 - 83.4 |
| | Physical Sciences | 11 | 79.5 - 88.7 |
| | Writing Sample | Q | 62.9 - 83.7 |
| | Biological Sciences | 10 | 57.7 - 77.0 |
| | Total Score | 31Q | 79.1 - 83.7 |

| Test Date | 07/30/2010 | Score | Percentile |
|-----------|-----------|-------|------------|
| Scores: | Verbal Reasoning | 06 | 14.2 - 26.7 |
| | Physical Sciences | 08 | 41 - 54.5 |
| | Writing Sample | Q | 62.9 - 83.7 |
| | Biological Sciences | 06 | 11.2 - 19.5 |
| | Total Score | 20Q | 19.5 - 23.2 |

Please go to https://services.aamc.org/mcat_verify/ to verify the scores on this report.

This report will no longer be able to be verified after 05/03/2014.

Score legend

H or HD - scores are currently on hold.

C or CD - scores have been cancelled.

D or DD - scores have been deleted.

© 1995-2013 AAMC

# EXHIBIT C

Steven G. Zecker, Ph.D.
Clinical Psychologist
2103 Ridge Avenue
Evanston, IL 60201

March 27, 2014

Cathy Farmer, Psy.D.
National Board of Medical Examiners
Disability Services
3750 Market Street
Philadelphia, PA 19104

RECEIVED

MAR 2 8 2014

Disability Services

Dear Dr. Farmer:

I am writing to you concerning the materials that were submitted to your office by Sara K. Whyte (nee Jones) of Athens, Georgia (USMLE ID# 5-316-720-1), who is a student at the Georgia Regents University/UGA Medical Partnership (GRU/UGAMP). Ms. Whyte is requesting special testing accommodations on Step 1 of the United States Medical Licensing Examination (USMLE). Specifically, Ms. Whyte states that she has Learning Disabilities (LD: specifically, Reading Disorder) and Attention Deficit Hyperactivity Disorder (ADHD), and that because of these disabilities she requires a time and one-half extended-time accommodation and testing over two days in order to be able to successfully complete the Step 1 exam.

In support of her request for Step 1 testing accommodations, Ms. Whyte provided the following documentation for review: 1) a *'USMLE Request for Test Accommodations'* form, dated December 19, 2013; 2) a January 2, 2014 personal statement; 3) a *'Psychological/Educational Report'* completed in 1988 by S. W. Garber Ph.D., a clinical psychologist and B. M. Galina, Ph.D., an educational consultant at The Behavioral Institute of Atlanta in Atlanta, Georgia; 4) a report of a *'Psychological and Learning Evaluation'* conducted in 2009 by C. Lancelot, Ph.D., a clinical psychologist in Decatur, Georgia; 5) copies of Ms. Whyte's report cards from Decatur (GA) High School (grades 9-12: 1996-2000); 6) a copy of Ms. Whyte's undergraduate transcript from Georgia Tech University (2000-2006); 7) a copy of Ms. Whyte's academic transcript from GRU/UGAMP (2012-present); 8) copies of five *'Student Assessment'* forms from GRU/UGAMP (2012-2013); 9) copies of Ms. Whyte's results from the Georgia High School Graduation Tests (1999); 10) a copy of Ms. Whyte's results from the Medical College Admissions Test (MCAT: 2010 and 2011); 11) a December 18, 1998 letter from Ms. Whyte's parents to K. Davenport at Decatur High School in which they state their concerns about their daughter's unaccommodated performance on the SAT and state their desire for her to receive extended time on a future administration of the test; 12) a January 13, 1999 *'To Whom It May Concern'* letter from D. Raque, a clinical psychologist, in which he indicates that he has been working with Ms. Whyte for several years and in which he states his support for her request for SAT accommodations; 14) a July 26, 2000 letter from J. Jones, Ms. Whyte's mother, to D. Carlson, Assistant Dean of Students at Georgia Tech University, in which she requests that her daughter receive accommodations when she matriculates at the school in fall 2000; 15) a copy of an email exchange between Ms. Whyte and M. M. Goldberg, Ph.D., Manager, Disability Services at the NBME in which Dr. Goldberg requests that Ms. Whyte submit her past MCAT scores and indicate whether she was accommodated on past administrations of the SAT, and in which Ms. Whyte replies that she cannot provide any documentation of SAT accommodations; and 16) a *'Certificate of Prior Test Accommodations'* form dated December 4, 2013 and completed by W. S. Richardson, M.D., Campus Associate Dean for Curriculum at GRU/UGAMP, in which he indicates that Ms. Whyte has received a 50% extended-time accommodation and testing in a separate room since September 2012.

In Ms. Whyte's personal statement she indicates that when she was very young she was diagnosed with "attention deficit disorder and a severe learning disability". She indicates that as a seven-year-old she was a non-reader who could only identify a few letters. She states that following her initial diagnosis she enrolled in The Schenk School, a private school for children with learning and attention problems, which she attended for two years. After the two years at Schenk Ms. Whyte indicates that she "was caught up with my age group" and she returned to her local public school. She describes her first year back in public school as "scary" and indicates that she had difficulty listening and taking notes. She indicates that standardized testing has always been difficult for her, and that she would "either just barely pass or exceed my age group", a trend that has continued to the present. She describes herself as easily distracted during tests and one who easily loses track of conversations. Ms. Whyte also states that she is forgetful and "incredibly disorganized". In medical school she has been receiving a time and one-half extended time accommodation; she indicates that this is "exactly how much time I need". She writes that when she listens to recorded lectures they sometimes "seem completely new to me" despite the fact that she had attended the class. Much of her time in medical school is spent in small group learning sessions, in which she indicates her distractibility and tendency to switch from one topic to another cause problems for her. In her statement, Ms. Whyte focuses mainly on what she describes as her current difficulties. She provides little information about her early education, other than to indicate that she attended a private school for two years. However, she also indicates that when she left the school she was functioning at grade level, and as a result it is unclear to me how her claimed disabilities impacted her from fourth grade until she began medical school.

Drs. Galina and Gerber conducted the first evaluation that Ms. Whyte submitted for review in 1988. At the time of the testing Ms. Whyte was 6 years old and in kindergarten at The Atlanta School. In their report Drs. Galina and Gerber write that Ms. Whyte was experiencing "much anxiety about school", that parents and teachers believe she is "overly dependent on adults" and that they "feel she does not want to relinquish her role as a baby". According to her nursery school teacher, Ms. Whyte was a stubborn child who cried frequently. Since entering kindergarten, she has experienced nightmares and morning stomachaches, and her morning behavior "resembles school phobia". She is described as forgetting things that she has known for months, such as the location of the school bathroom or the meaning of well-learned words. Responses on the Problem Behavior Checklist indicated a lengthy list of behaviors, including withdrawal, whining, anxiousness, and avoidance of new situations, among many others. Ms. Whyte sucked her thumb "continuously" during testing and "tended to give up without really trying on some tasks", which in my opinion calls into question the validity of some of the results. Intelligence testing with the Wechsler Intelligence Scale for Children-Revised (WISC-R) resulted in an overall high average range score (FSIQ=115). Verbal abilities (VIQ=115) and Performance abilities (PIQ=111) were both high average. Individual subtest scores are not provided, but from the report narrative it appears that all were average or higher. Receptive vocabulary was assessed with the Peabody Picture Vocabulary Test (PPVT), on which Ms. Whyte obtained a high average score (113). Pre-achievement testing with the Metropolitan Readiness Tests (MRT) yielded below average scores in Auditory Skills (81) and Language (89), and Average scores in Visual (96) and Quantitative (92). Ms. Whyte's Pre-Reading composite score (87) was low average. Testing with the Woodcock Reading Mastery Tests-Revised (WRMT-R) yielded a below average score (75) on an unnamed subtest that I assume was Letter Identification. On the KeyMath Diagnostic Arithmetic Test she obtained a grade equivalent score of 1.2, which her evaluators note was much higher than her performance on a comparable subtests of the MRT. They speculate that the fact that the test was "enjoyable to take" resulted in the higher score, which to me implies that the MRT results should not have been considered a fully valid measure of Ms. Whyte's capabilities. Tests of visual perception, visual-motor integration and visual-spatial orientation yielded generally below average scores, although Ms. Whyte's evaluators correctly note that interpretation of some scores is difficult because of her poor letter identification skills. Her parents and teachers completed rating scales assessing Ms. Whyte's attentional skills; across these respondents the results "were not significant for attention

2

RECEIVED

MAR 2 8 2014

Disability Services

problems". Projective testing suggested "many anxieties", a tendency to fantasize, and issues with self-confidence. In discussing the results, Drs. Garber and Galina indicate that they believe that Ms. Whyte's test scores were "lowered by anxiety and resulting regressive behavior patterns". They state that they also indicate that they believe the results demonstrate "signs of processing problems". In my opinion these are reasonable conclusions that point to the difficulties in interpreting the results of evaluations of very young children. Drs. Garber and Galina do not provide any diagnosis and indicate that it is unclear whether results are developmental in nature or whether they are indicative of learning disabilities. They also recommend that Ms. Whyte undergo interventions, including family therapy, to address her anxiety and self-concept. I agree that such recommendations were appropriate given the apparent emotional issues that Ms. Whyte was experiencing, and I also concur that the overall results did not warrant the diagnosis of a disability. I note that in Ms. Whyte's personal statement she appears to misinterpret the conclusions of this evaluation, stating that she was "diagnosed with attention deficit disorder and a severe learning disability", when in fact Drs. Garber and Galina ruled out an attention deficit and indicated that it was unclear whether she had learning disabilities or was experiencing a developmental delay.

Dr. Lancelot conducted Ms. Whyte's next evaluation in 2009, nearly 21 years after her initial testing. At the time of this evaluation she was a 27-year-old graduate student preparing to take the MCAT. In the history section of her report Dr. Lancelot indicates that Ms. Whyte's reading achievement "increased by several grade levels" during her two years at The Schenk School, and that despite the fact that her grades were "good after this point", she was served under a 504 Plan once she returned to public school. However, I note that based on the documentation submitted it does not appear that the 504 Plan was approved until 11th grade. She was described as an "A/B student" throughout her school years, although standardized test scores "remained considerably lower". Her mother indicated to Dr. Lancelot that Ms. Whyte was granted extended time on the SAT, although SAT scores were not submitted for review and it is unclear whether she was provided accommodations when she took the test. Ms. Whyte reported that she was accommodated during her undergraduate years, although no accommodations were provided when she took the GRE. She indicated that she scored "more than 200 points higher" on the quantitative part of the GRE than the verbal part, although no scores were submitted for review. Ms. Whyte indicated that she "chose not to formally seek out accommodations" in her graduate program, indicating to me that she was able to function appropriately in the absence of them. Dr. Lancelot writes that "there has been some question" as to whether Ms. Whyte ever formally met the criteria for ADHD. At The Schenk School it was recommended that she "should be on Ritalin", despite the fact that her recent evaluation had ruled out ADHD. In high school Ms. Whyte worked with a therapist who "felt" she had ADHD, although the psychiatrist with whom she has most recently worked did not diagnose her with ADHD, instead indicating that her "clinical picture was more consistent with anxiety and depression". In my opinion such varying perspectives are not surprising, given that the symptoms of anxiety and depression overlap considerable with those of ADHD. Ms. Whyte began taking medication for depression in high school, and when she stops the medication she reportedly experiences a "resurgence" of depression symptoms. At the time of testing she was taking both Wellbutrin and Prozac, having been diagnosed with both Major Depression and Anxiety Disorder-Not Otherwise Specified by her current psychiatrist. In recent months her stress level had reportedly increased due to dealing with the responsibilities of multiple jobs, school and MCAT preparation, and as a result her psychiatrist has increased her medication dosage levels. Dr. Lancelot conducted intelligence testing with the Wechsler Adult Intelligence Scale-IV (WAIS-IV). This testing resulted in an overall high average score (FSIQ=118). Verbal Comprehension (VCI=120) and Working Memory (WMI=128) were superior, while Perceptual Organization (POI=109) and Processing Speed (PSI=102) abilities were average. Of the 10 WAIS-IV subtests administered, 8 resulted in above average scores and 2 were average. Achievement testing with the Wechsler Individual Achievement Test-II (WIAT-II) resulted in an above average score on Word Reading (113) and average scores on Reading Comprehension (104) and Pseudoword Decoding (100). The unreliable WIAT-II Reading Speed score placed Ms. Whyte in the first quartile. Two WIAT-

3

RECEIVED

MAR 2 8 2014

Disability Services

II subtests assessing mathematics achievement yielded superior scores, while measures of Spelling (110) and Written Expression (114) were average and high average, respectively. It appears that the Written Expression subtest was administered under a 50% extended time condition, which would render the results invalid because norms for such an accommodated administration do not exist. Ms. Whyte's Word Fluency score (an unreliable estimate of writing fluency) placed her in the first quartile. Reading assessment with the Test of Word Reading Efficiency (TOWRE) resulted in an average score when reading real words and a high average score when reading nonwords. Additional reading testing yielded a below average score on the Nelson-Denny Reading Test (NDRT) Reading Rate subtest, an unreliable measure in which Ms. Whyte self-reported the number of words she was able to read in one minute. Her timed Comprehension score on the NDRT was also below average (87) using inappropriate grade-based norms (which result in lower scores than the appropriate age-based scores). When provided with a 50% extended-time accommodation on the NDRT (which I note is not the correct amount of additional time to provide on the test), Ms. Whyte's score (110) was high average. No NDRT scale scores were provided; such scores would have allowed for a comparison of Ms. Whyte's performance to the entire NDRT standardization sample rather than what I believe was a group of college graduates. Given that Ms. Whyte's timed Comprehension score fell just short of average, I believe that her scale score would have placed her solidly within the average range. Additional tests assessing phonological processing (CTOPP), visual perception (TVPS-3) and visual memory and listening comprehension (WJ-III) all yielded average or better scores. Social and emotional testing indicated mild to moderate depression (BDI). A range of rating scales assessing attention and completed by Ms. Whyte, her mother and a long-term friend were significant for both current and past functioning. I note that Ms. Whyte has apparently experienced affective difficulties for well over a decade, and that given the substantial symptom overlap between ADHD and depression the interpretation of these subjective symptom checklists is complicated. Further, it appears that Ms. Whyte's mother's retrospective reports of her daughter's childhood attentional functioning suggest considerably more impairment than was the case when she assessed the same functioning in childhood, because her 1998 responses (as well as those of her husband and several of Ms. Whyte's teachers) indicated no attentional impairment. Based on these results, Dr. Lancelot diagnoses Ms. Whyte with Learning Disorder-Not Otherwise Specified (LD-NOS), Depressive Disorder-Not Otherwise Specified and ADHD-Inattentive Type. Dr. Lancelot apparently based the LD-NOS diagnosis on what she interpreted as Ms. Whyte's slow reading and writing fluency, but in my opinion the scores considered to support the diagnosis were either unreliable (i.e., the WIAT-II Reading Speed and Writing Fluency measures) or based on inappropriate grade based norms (i.e., the NDRT). I also note that the WIAT-II's test creators advise that the Reading Speed and Writing Fluency measures should not relied upon diagnostically, and that there should be additional support for any diagnosis from additional measures. In my professional opinion no such additional support was provided; Ms. Whyte's scores on all other measures of reading (including those with a timed component) ranged from average to above average. Regarding the ADHD diagnosis, Dr. Lancelot writes that despite the fact that Ms. Whyte's current psychiatrist has ruled out ADHD (instead stating that her difficulties were attributable to anxiety and depression) she believes that she meets the criteria for ADHD because of the results of rating scales assessing present functioning and what she considers to be evidence for childhood onset of ADHD. However, as I have indicated, the symptomatology of affective disorders and ADHD overlap to a considerable degree, and in my professional opinion the fact that Ms. Whyte had been struggling with depression for at least 15 years indicates that her psychological difficulties form the basis for her described symptoms. Dr. Lancelot claims that evidence indicates a childhood onset for ADHD, as is required for a valid diagnosis to occur, but that evidence is very weak (e.g., teachers making (unethical) recommendations that Ms. Whyte should be taking Ritalin and a high school therapist (who was treating Ms. Whyte's depression) stating that she "felt" that she had ADHD). However, a diagnosis of ADHD was apparently never provided by anyone who had worked with Ms. Whyte. Most importantly, when Ms. Whyte was evaluated at age 6 years, neither her parents nor multiple teachers' ratings of her attentional functioning were suggestive of ADHD, according to Drs. Garber and Galina. The fact that Ms. Whyte's

4

RECEIVED

MAR 2 8 2014

DISABILITY SERVICES

mother's 20-year old retrospective memories of her daughter's functioning are now strongly suggestive of childhood ADHD must be considered within the context of the fact that she did not behave/function in a manner consistent with ADHD at the time she was a child. Finally, Dr. Lancelot provides no clear evidence that Ms. Whyte is experiencing a significant impairment in functioning as a result of an attention problem, as is required for an ADHD diagnosis to be provided. In fact, she refers to "mild inattentiveness", which I do not interpret as indicating significant impairment. In my professional opinion the symptoms that Ms. Whyte reports can be best accounted for by her longstanding affective difficulties. Ms. Whyte acknowledged that her recent stress levels had been elevated, resulting in her ADHD symptoms being "exacerbated", which in my professional opinion provides support for this interpretation.

In Mr. and Mrs. Jones' (Ms. Whyte's parents) December 18, 1998 letter to Ms. Davenport at Decatur High School she states her concerns about "our daughter's SAT performance". It is unclear to me from this letter whether the SAT had already been taken once without accommodations, or whether the Joneses were requesting that their daughter receive accommodations on a future first attempt at the test. In support of their request for accommodations, they refer in their letter to Dr. Raque's work with their daughter "on overcoming the problems of learning disabilities", although a diagnosis of learning disabilities had never been given to Ms. Whyte at this time. Further, Dr. Raque's January 13, 1999 letter makes no mention of learning disabilities, instead referring to his work with her on problems ranging from inattention to noncompliance and social problems. The Joneses further indicate that their daughter had been a consistent 'A/B' student, apparently in the absence of accommodations. In support of their request they also refer to the 1989 testing that they write resulted in Ms. Whyte being "diagnosed as having learning disabilities", although I have indicated previously, an LD diagnosis was not provided by Drs. Garber and Galina. They indicated that they wished to further discuss their request for test accommodations at their daughter's upcoming Student Support Team meeting on January 14, 1999. According to the *'Minutes'* of that meeting, a 504 Plan was approved in order to provide Ms. Whyte with extended time on tests. Thus, it appears that prior to midway through her 11th grade year, Ms. Whyte had not previously been accommodated, and that she had been a consistently strong 'A/B' student despite this lack of accommodations. I also note that the basis of the 504 Plan's approval appears to have been the 9 year old evaluation by Dr. Garber and Galina, which was incorrectly interpreted as having resulted in ADHD and LD diagnoses.

In her July 26, 2000 letter to Dean Carlson at Georgia Tech, Ms. Whyte's mother discusses her daughter's need for college accommodations. She again states that her daughter was "diagnosed as learning disabled" by Drs. Garber and Galina and that "the diagnosis of learning disabilities was confirmed" in the 1999 high school 504 meeting. I reiterate that the 1989 evaluation did not yield an LD diagnosis and there was apparently no subsequent evaluation conducted prior to the 1999 504 meeting or Ms. Whyte's college matriculation. Further, Ms. Whyte had not been accommodated until about 18 months before she entered college, yet she had been a consistently strong student throughout high school in the absence of accommodations.

Ms. Whyte's high school transcript from Decatur High School confirms that she was a consistently strong student throughout her four years, whether accommodated or not. For example, throughout 10th grade and the first semester of 11th grade (during which times she received no accommodations) she obtained no grade lower than '90' and was described by multiple teachers as "a pleasure to teach". Based on this strong unaccommodated academic performance it is unclear on what basis Ms. Whyte was provided accommodations midway through her junior year. At Georgia Tech University, Ms. Whyte's transcript indicates that she obtained grades that ranged from 'A' to 'C' and she graduated with a degree in Applied Biology and a 3.33 GPA. Contrary to Ms. Whyte's claim that her most difficult courses are ones in which she has considerable reading, I note that the 5 'C' grades she

5

RECEIVED

MAR 2 8 2014

Disability Services

earned in college were all in math and science courses (Inorganic Chemistry, Calculus, Organismal Biology, Biochemistry and Physics). Her medical school grades have been mostly in the 'C' range during her first three terms, according to her GRU/UGAMP transcript, and her current GPA is 2.12. Her GRU/UGAMP *'Student Assessment Form'* reports describe her as engaged and curious, although she reportedly experienced some difficulty with her presentations and has a tendency to talk over others.

Documentation indicates that Ms. Whyte received accommodations as a student at Decatur High School only from midway through eleventh through twelfth grade (as discussed previously). She indicates that she was unaccommodated throughout a master's program prior to entering medical school. Dean Richardson's 2014 *'Certificate of Prior Test Accommodations'* form states that she has been provided with a time and one-half accommodation and testing in a separate room at GRU/UGAMP since September 2012.

Two past standardized test scores were submitted for review. On the Georgia High School Graduation Tests in 1999 Ms. Whyte scored at or above the 88th percentile in all areas tested. Based on the information provided in her 1999 504 Plan, I assume that she was accommodated on this test, although it is not specifically indicated. Ms. Whyte also submitted results from two different administrations of the MCAT in 2010 and 2011. On the 2010 administration she obtained scores (06/08/Q/06) that ranged from below average to average in comparison to the other medical school aspirants who took the test. In the 2011 administration of the test her scores (10/11/Q/10) were substantially higher and ranged from average to above average. Given this strong level of unaccommodated MCAT performance, it is unclear why Ms. Whyte believes she requires accommodations in order to be successful on the Step 1 exam.

Dr. Goldberg emailed Ms. Whyte on January 21, 2014 to request that she submit her past MCAT scores and provide some verification of past accommodation on the SAT. Ms. Whyte replied on March 19, 2014, writing that she has been unable to obtain any evidence of SAT accommodation, stating that she was "lost in the system" of the College Board. She indicates that she has "all my score sheets" from the SAT, but that they did not indicate that she had received accommodations. She indicates, however, that she recalls receiving a time and one-half accommodation in the test. Ms. Whyte apparently did not submit any of these SAT results for review, although she did submit the MCAT scores I discussed in the previous paragraph.

In summary, my careful review of the extensive documentation provided by Ms. Whyte indicates that she experienced early developmental, emotional, social and behavioral difficulties while in kindergarten that resulted in an evaluation being conducted at age 6 years. That evaluation ruled out an attention problem but was equivocal as to whether Ms. Whyte had learning disabilities or was experiencing a developmental delay. She subsequently attended a private school for children with language and learning problems for two years, during which time her academic achievement improved substantially and resulted in her functioning at or above grade level when she returned to her local public school. Such dramatic improvement in my professional opinion strongly suggests that her early difficulties that led to the evaluation were emotional or developmental and not due to a learning disability. From the documentation submitted it appears that beginning in third or fourth grade (now in public school) she functioned well and did not require special services or accommodations. In the middle of her 11th grade year, apparently motivated by the desire to receive SAT and ACT accommodations, Ms. Whyte's parents convened a multidisciplinary meeting that resulted in her being approved for a 504 Plan despite the fact that she had been a nearly all-A student during the past 18 months in the absence of accommodations. Ms. Whyte possibly received testing accommodations on the SAT (although no documentation of either SAT results or an accommodations approval were provided for review). During her elementary and high school years Ms. Whyte struggled with emotional and behavioral issues, and she

6

RECEIVED

MAR 2 8 2014

Disability Services

began taking medication to treat her anxiety and depression in high school. She continued to take medication until at least 2009, the date of her most recent evaluation. It would be expected that her significant anxiety and depression has impacted Ms. Whyte's functioning (including learning) in a number of ways, although Ms. Whyte and her evaluator poorly addressed this. Dr. Lancelot's 2009 evaluation yielded diagnoses of LD-NOS, ADHD and Depressive Disorder-NOS, although I have discussed, the LD-NOS diagnosis was not supported by the test results and the ADHD diagnosis was provided despite the fact that Ms. Whyte's symptoms were in my professional opinion best accounted for by her anxiety and depression, which had apparently worsened in the months prior to testing. Further, one of the major bases for the ADHD diagnosis was the retrospective ratings that Ms. Whyte's mother provided concerning her daughter's childhood attentional functioning. However, these ratings appear to be entirely inconsistent with ratings that she had provided when Ms. Whyte was a child; at that time her responses (and those of her husband and several teachers) did not indicate an attention problem. Given that ADHD is a neurodevelopmental disorder with an onset in childhood, this absence of any demonstrated childhood impairment strongly suggests that other factors (most likely her anxiety and depression) account for the symptoms reported by Ms. Whyte. Ms. Whyte submitted no documentation to indicate that she has ever been accommodated on standardized tests. Although she and her mother indicated that she was accommodated on the SAT, she submitted no scores or other documentation of any SAT administration. Ms. Whyte acknowledges that she did not seek accommodations when she took the GRE prior to entering a graduate program (in which she was also unaccommodated). She did submit the results of two unaccommodated MCAT administrations, the most recent of which (2011) resulted in generally above average scores. In my professional opinion such a strong performance on an unaccommodated administration of the MCAT demonstrates that Ms. Whyte is not impaired in functioning in a manner that warrants accommodations on the USMLE Step 1 exam. In conclusion, considering all of the documentation submitted, in my professional opinion there was insufficient evidence to support the diagnosis of a disability that would warrant a 50% extended-time accommodation and testing over two days on the Step 1 exam. I therefore recommend that you deny Sara Whyte's request for Step 1 accommodations.

Please feel free to contact me if I may provide you with any additional information regarding Ms. Whyte's request for USMLE Step 1 accommodations.

Sincerely;

*By typing my name below I am confirming my intent to sign this document on 03/27/2014*

Steven G. Zecker, Ph.D.
Clinical Psychologist

# EXHIBIT D



1079550     5-316-720-1
denial-Decision Letter (a

National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org

**Confidential**

June 5, 2014

Sara K. Whyte
127 Hart Ave
Athens, GA 30606

RE: USMLE Step 1                 USMLE ID#: 5-316-720-1

Dear Ms. Whyte:

We have thoroughly reviewed the documentation provided in support of your request for test accommodations for the United States Medical Licensing Examination (USMLE) Step 1. We conducted an individualized review of your request in accordance with the guidelines set forth in the Americans with Disabilities Act (ADA).

You report the basis of your request to be a Reading Disorder and Attention-Deficit/Hyperactivity Disorder diagnosed in 1988. You write in your personal statement, *"When I was very young I was diagnosed with attention deficit disorder and a severe learning disability... Looking back at my exam-taking I cans see where my ADHD has caused me trouble. If people come by the room talking I can't even read a sentence. I have to wait until they are quiet again. However, in the quiet I still read much slower than my classmates."*

Received with your request was an April, 2009 report of Psychological and Learning Evaluation conducted when you were a 27-year-old graduate school student. Cynthia Lancelot, Ph.D. writes that you self-referred for evaluation to determine whether you would benefit from any test-taking accommodations in light your history of learning problems and mental health treatment. Dr. Lancelot reports that she reviewed your past psychoeducational evaluation, special education and treatment records, and a written narrative from your current treating psychiatrist. Your evaluator concludes, *"In order to offset Sara's history of reading problems and her continued slow reading rate and slow performance on complex tasks such as writing an essay, as well as clinically significant signs of ADHD and depression which exacerbate her learning issues... it is recommended that Sara be allowed a time extension for nationally standardized tests such as the MCAT..."* She assigned the diagnoses of 315.9 Learning Disorder NOS; 314.00 Attention Deficit Hyperactivity Disorder -- inattentive type; and 311.00 Depressive Disorder NOS.

The conclusions of your evaluator notwithstanding, your 2009 performances on a range of cognitive and academic tasks, including processing speed and timed reading comprehension, are well within the range of average functioning and do not demonstrate impairments that limit a major life activity. For example, Dr. Lancelot reports that you earned a *Nelson-Denny Reading Test (NDRT)* Comprehension score at the 19th percentile under standard conditions, Low Average range compared to a select group of about 500 college educated individuals. Your evaluator did not provide *NDRT* scale scores which are derived from the pooled standardization sample of approximately 8000 individuals, a group whose aggregate characteristics more closely resemble the average person from the general population and the appropriate frame-of-reference when assessing disability under the ADA. Your *NDRT* Comprehension scale score of 211-212 obtained under standard time is well within the Average range compared to the pooled standardization sample where the mean is 200 and the standard deviation is 25. Overall, these data do not demonstrate impaired reading comprehension under timed conditions.

In her 2009 report, Dr. Lancelot writes that responses to standardized symptom checklists by you, your mother, and your long-time friend indicated clinically and statistically significant elevations on scales pertaining to inattentive type ADHD. She also noted that you reported mild to moderate range depressive symptoms at that time. Dr. Lancelot writes, *"There has been some question as to whether Sara ever formally met criteria for ADHD and the data over the years has been mixed on this issue. The diagnosis was brought up at various points in her school records from high school. However, when Sara was six and underwent formal evaluation, checklists administered to parents and teachers did not indicate clinically significant problems with inattention...Most recently, her psychiatrist indicated that Sara's clinical picture was more consistent with anxiety and depression than with ADHD, and did not formally diagnose her with ADHD."* Your evaluator reports that your treating psychiatrist diagnosed you with Major Depression and Anxiety Disorder Not Otherwise Specified, and prescribed medication for depression and mild problems with inattention. The psychiatric evaluation/treatment records referenced by Dr. Lancelot were not provided for our independent review. No recent treatment/evaluation records were provided to document your current functioning.

Like learning disorders, ADHD is a developmental disorder with a childhood onset that typically results in a chronic and pervasive pattern of functional impairment in academic, social, vocational, or daily adaptive functioning. Your documentation does not demonstrate a record of chronic and pervasive problems with inattention, impulsivity, behavioral regulation, or distractibility that impaired your functioning during your development.

As best one can tell from the documentation provided, you were evaluated at age six due to what is described as anxiety about school. You reportedly attended a special school for two years where your reading skills increased by several grade levels. The school records provided show that the City Schools of Decatur Student Support Team recommended a 504 plan for additional time in timed testing situations when you were in the 11th grade. A clinical basis for the 504 plan is not described in the documentation. Regarding your most recent performances on timed standardized tests, the records provided show that you earned an MCAT score of 30Q under standard conditions in 2011, better than 79.1-83.7% of a highly select group of medical school applicants. These data do not demonstrate impaired functioning.

Accommodations are intended to provide access to the USMLE testing program for individuals with a documented disability as defined by the ADA. A diagnostic label, in and of itself, does not establish coverage under the ADA, nor does prior receipt of accommodations for a particular activity guarantee that identical accommodations are indicated or will be available in all future settings and circumstances.. The ADA covers individuals who are substantially limited in a major life activity. Determination of whether an individual is substantially limited in functioning as compared to most people is based on assessment of the current impact of the identified impairment.

Your documentation does not demonstrate that you are currently substantially limited in a major life activity as compared to most people or that extended time is an appropriate modification of your USMLE Step 1 test administration. Therefore, after a thorough review of all of your documentation, I must inform you that we are unable to provide you with the requested accommodations.

We will advise Applicant Services to process your exam application without test accommodations. You may inquire at usmlereg@nbme.org or call Applicant Services directly at (215) 590-9700 with any questions about your scheduling permit.

Sincerely,

Catherine Farmer, Psy.D.
Director, Disability Services
ADA Compliance Officer, Testing Programs

EXHIBIT E



**US·MLE**
United States
Medical
Licensing
Examination ®

# UNITED STATES MEDICAL LICENSING EXAMINATION ®

## STEP 1 SCORE REPORT

This score report is provided for the use of the examinee.
Third party users of USMLE information are advised to rely solely on official USMLE transcripts.

**Whyte, Sara K**
**USMLE ID:   5-316-720-1**                                    **Test Date:   July 30, 2014**

The USMLE is a single examination program consisting of three Steps designed to assess an examinee's understanding of and ability to apply concepts and principles that are important in health and disease and that constitute the basis of safe and effective patient care. Step 1 is designed to assess whether an examinee understands and can apply important concepts of the sciences basic to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy. The inclusion of Step 1 in the USMLE sequence is intended to ensure mastery of not only the sciences underlying the safe and competent practice of medicine in the present, but also the scientific principles required for maintenance of competence through lifelong learning. Results of the examination are reported to medical licensing authorities in the United States and its territories for use in granting an initial license to practice medicine. This score§ represents your result for the administration of Step 1 on the test date shown above.

| | |
|---|---|
| **FAIL** | This result is based on the minimum passing score recommended by USMLE for Step 1. Individual licensing authorities may accept the USMLE-recommended pass/fail result or may establish a different passing score for their own jurisdictions. |

| | |
|---|---|
| **187** | This score is determined by your overall performance on Step 1. For recent administrations, the mean and standard deviation for first-time examinees from U.S. and Canadian medical schools are approximately 228 and 21, respectively, with most scores falling between 140 and 260. A score of 192 is set by USMLE to pass Step 1. The standard error of measurement (SEM)‡ for this scale is five points. |

§Effective April 1, 2013, test results are reported on a three-digit scale only. Test results reported as passing represent an exam score of 75 or higher on a two-digit scoring scale.

‡Your score is influenced both by your general understanding of the basic biomedical sciences and the specific set of items selected for this Step 1 examination. The Standard Error of Measurement (SEM) provides an index of the variation in scores that would be expected to occur if an examinee were tested repeatedly using different sets of items covering similar content.

## INFORMATION PROVIDED FOR EXAMINEE USE ONLY

The Performance Profile below is provided solely for the benefit of the examinee.
These profiles are developed as self-assessment tools for examinees only and will not be reported or verified to any third party.

### USMLE STEP 1 PERFORMANCE PROFILE

| | Lower Performance | Borderline Performance | Higher Performance |
|---|---|---|---|
| **DISCIPLINE** | | | |
| Behavioral Sciences | xxxxxxxxxxxxxxxxxxxx | | |
| Biochemistry | *xxxxxxxxxx | | |
| Genetics | | xxxxxxxxxxxxxxxxxxxxxx | |
| Gross Anatomy & Embryology | | xxxxxxxxxxxxxxxxxxx | |
| Histology & Cell Biology | *xxxxxx | | |
| Microbiology & Immunology | *xxxxxxxx | | |
| Nutrition | *xxxxxxxxxxxxxxxxx | | |
| Pathology | xxxxxxxxxx | | |
| Pharmacology | xxxxxxxxxxxxxx | | |
| Physiology | xxxxxxxxxxx | | |
| **SYSTEM** | | | |
| General Principles of Foundational Science | xxxxxxxxxxxxxx | | |
| Immune System | xxxxxxxxxxxxxxxxxx | | |
| Blood & Lymphoreticular System | | xxxxxxxxxxxxxxxxxx | |
| Behavioral Health & Nervous Systems/Special Senses | xxxxxxxxxxxxxxxx | | |
| Musculoskeletal, Skin, & Subcutaneous Tissue | *xxxxxxxxxxxx | | |
| Cardiovascular System | | xxxxxxxxxxxxxxxxxxxx | |
| Respiratory System | xxxxxxxxxxxxxxxxxx | | |
| Gastrointestinal System | xxxxxxxxxxxxxxxxxxx | | |
| Renal/Urinary System | *xxxxxxxxxxx | | |
| Reproductive System | | xxxxxxxxxxxxxxxxxxx | |
| Endocrine System | xxxxxxxxxxxxxxx | | |
| Multisystem Processes & Disorders | xxxxxxxxxxxxxxxx | | |
| Biostatistics & Epidemiology/Population Health | | xxxxxxxxxxxxxxxxxxxxx | |

The above Performance Profile is provided to aid in self-assessment. The shaded area defines a borderline level of performance for each content area; borderline performance is comparable to a HIGH FAIL/LOW PASS on the total test.

Performance bands indicate areas of relative strength and weakness. Some bands are wider than others. The width of a performance band reflects the precision of measurement: narrower bands indicate greater precision. The band width for a given content area is the same for all examinees. An asterisk indicates that your performance band extends beyond the displayed portion of the scale. Small differences in the location of bands should not be over-interpreted. If two bands overlap, performance in the associated areas should be interpreted as similar. Because Step 1 is designed to be integrative, many items contribute to more than one content area. As a consequence, caution should be used when interpreting differences in performance across content areas.

**This profile should not be compared to those from other Step 1 administrations.**

Additional information concerning the topics covered in each content area can be found in the *USMLE Step 1 Content Description and Sample Test Materials*.

# EXHIBIT F



**US·MLE**
United States
Medical
Licensing
Examination ®

# UNITED STATES MEDICAL LICENSING EXAMINATION ®

## STEP 1 SCORE REPORT

This score report is provided for the use of the examinee.
Third party users of USMLE information are advised to rely solely on official USMLE transcripts.

**Whyte, Sara K**

**USMLE ID:   5-316-720-1**                          **Test Date:   March 16, 2015**

The USMLE is a single examination program consisting of three Steps designed to assess an examinee's understanding of and ability to apply concepts and principles that are important in health and disease and that constitute the basis of safe and effective patient care. Step 1 is designed to assess whether an examinee understands and can apply important concepts of the sciences basic to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy. The inclusion of Step 1 in the USMLE sequence is intended to ensure mastery of not only the sciences underlying the safe and competent practice of medicine in the present, but also the scientific principles required for maintenance of competence through lifelong learning. Results of the examination are reported to medical licensing authorities in the United States and its territories for use in granting an initial license to practice medicine. This score§ represents your result for the administration of Step 1 on the test date shown above.

| PASS | This result is based on the minimum passing score recommended by USMLE for Step 1. Individual licensing authorities may accept the USMLE-recommended pass/fail result or may establish a different passing score for their own jurisdictions. |
|---|---|

| 199 | This score is determined by your overall performance on Step 1. For recent administrations, the mean and standard deviation for first-time examinees from U.S. and Canadian medical schools are approximately 228 and 21, respectively, with most scores falling between 140 and 260. A score of 192 is set by USMLE to pass Step 1. The standard error of measurement (SEM)‡ for this scale is five points. |
|---|---|

§Effective April 1, 2013, test results are reported on a three-digit scale only. Test results reported as passing represent an exam score of 75 or higher on a two-digit scoring scale.

‡Your score is influenced both by your general understanding of the basic biomedical sciences and the specific set of items selected for this Step 1 examination. The Standard Error of Measurement (SEM) provides an index of the variation in scores that would be expected to occur if an examinee were tested repeatedly using different sets of items covering similar content.

# INFORMATION PROVIDED FOR EXAMINEE USE ONLY

The Performance Profile below is provided solely for the benefit of the examinee.
These profiles are developed as self-assessment tools for examinees only and will not be reported or verified to any third party.

## USMLE STEP 1 PERFORMANCE PROFILE

| | Lower Performance | Borderline Performance | Higher Performance |
|---|---|---|---|
| **DISCIPLINE** | | | |
| Behavioral Sciences | | x▓▓▓xxxxxxxxxxxxxxx | |
| Biochemistry | xxxxxxx▓▓▓x | | |
| Genetics | xxxxxxxxx▓▓▓xxxxx | | |
| Gross Anatomy & Embryology | *xxxxxxxxxxx▓▓▓ | | |
| Histology & Cell Biology | | ▓▓▓xxxxxxxxxxxxxx | |
| Microbiology & Immunology | xx▓▓▓xxxxxx | | |
| Nutrition | xxxxxxxxxxxx▓▓▓xxxxx | | |
| Pathology | | ▓▓▓xxxx | |
| Pharmacology | xxxxxxx▓▓▓x | | |
| Physiology | | ▓▓▓xxxxxx | |
| **SYSTEM** | | | |
| General Principles of Foundational Science | | ▓▓▓xxxxxxxxxx | |
| Immune System | | ▓▓▓xxxxxxxxxxxxxxxxx | |
| Blood & Lymphoreticular System | | ▓▓▓xxxxxxxxxxxxxxxx | |
| Behavioral Health & Nervous Systems/Special Senses | xxxxxxxxx▓▓▓x | | |
| Musculoskeletal, Skin, & Subcutaneous Tissue | *xxxxxxxxxx▓▓▓x | | |
| Cardiovascular System | | xxxxxxxxxxxxxxxx | |
| Respiratory System | xxx▓▓▓xxxxxxxxxxxx | | |
| Gastrointestinal System | xxxxxxx▓▓▓xxxxxxx | | |
| Renal/Urinary System | *xxxxxxxxxx▓▓▓x | | |
| Reproductive System | xxxxxxxxx▓▓▓xxxxx | | |
| Endocrine System | | x▓▓▓xxxxxxxxxxxxx | |
| Multisystem Processes & Disorders | | ▓▓▓xxxxxxxxxxxxxx | |
| Biostatistics & Epidemiology/Population Health | | ▓▓▓xxxxxxxxxxxxxxxxx | |

The above Performance Profile is provided to aid in self-assessment. The shaded area defines a borderline level of performance for each content area; borderline performance is comparable to a HIGH FAIL/LOW PASS on the total test.

Performance bands indicate areas of relative strength and weakness. Some bands are wider than others. The width of a performance band reflects the precision of measurement: narrower bands indicate greater precision. The band width for a given content area is the same for all examinees. An asterisk indicates that your performance band extends beyond the displayed portion of the scale. Small differences in the location of bands should not be over-interpreted. If two bands overlap, performance in the associated areas should be interpreted as similar. Because Step 1 is designed to be integrative, many items contribute to more than one content area. As a consequence, caution should be used when interpreting differences in performance across content areas.

**This profile should not be compared to those from other Step 1 administrations.**

Additional information concerning the topics covered in each content area can be found in the *USMLE Step 1 Content Description and Sample Test Materials.*

# EXHIBIT G

1101669     5-316-720-1
**Step 2 CK & Step 2 CS-Mul**

**RECEIVED**

United States Medical Licensing Examination® (USMLE®)

JUN 3 0 2016

## REQUEST FOR TEST ACCOMMODATIONS
*Use this form if you are requesting accommodations on USMLE for the first time*

Disability Services

---

**The National Board of Medical Examiners® (NBME®) processes requests for test accommodations on behalf of the USMLE program**

If you have a documented disability covered under the Americans with Disabilities Act (ADA), you must notify the USMLE in writing <u>each time</u> you apply for a Step examination for which you require test accommodations. Submitting this form constitutes your official notification.

- Review the USMLE Guidelines for Test Accommodations at www.usmle.org for a detailed description of how to document a need for accommodation.

- Complete all sections of this request form and submit it together with all required documentation at the same time you submit your Step exam application.

- Incomplete, illegible, or unsigned request forms and/or insufficient supporting documentation will delay processing of your request.

- Do not send originals. Please retain the originals of all documentation that you submit as we are unable to return submissions or provide duplicate copies to third parties.

- Submitting duplicate and/or bound documentation may delay processing of your request.

- NBME will acknowledge receipt of your request by e-mail and audit your submission for completeness. If you do not receive an e-mail acknowledgement within a few days of submitting your request, please contact Disability Services at 215-590-9700. You may be asked to submit additional documentation to complete your request.

- Requests are processed in the order in which they are received. Allow at least 60 days for processing of your request. Processing cannot begin until sufficient information is received by NBME and your Step exam registration is complete.

- The outcome of our review will not be released via telephone. All official communications regarding your request will be made in writing. If you wish to modify or withdraw a request for test accommodations, contact Disability Services by e-mail at disabilityservices@nbme.org or by telephone at 215-590-9700.

---

**You MUST provide supporting documentation verifying your current functional impairment.**

In order to document your need for accommodation, **submit** the following with this form:

✓ A **personal statement** describing your disability and its impact on your daily life and educational functioning.

✓ **Supporting documentation** such as psychoeducational evaluations; medical records; copies of report cards, academic and score transcripts; faculty or supervisor feedback; job performance evaluations; clerkship/clinical course evaluations; verification of prior academic/test accommodations; etc.

✓ A **complete and comprehensive evaluation**. Reports from qualified professionals must be typewritten on letterhead, signed and include the professional's qualifications.

USMLE® Request for Test Accommodations

## Section A: Exam Information

Place a check next to the examination(s) for which you are currently registered and requesting test accommodations: (Check all that apply)

- ☐ Step 1
- ☑ Step 2 CK (Clinical Knowledge)
- ☑ Step 2 CS (Clinical Skills)
- ☐ Step 3

## Section B: Biographical Information
### Please type or print.

**B1.** Name: <u>Whyte</u>                    <u>Sara</u>                    <u>K</u>
            Last                          First                       Middle Initial

**B2.** Gender:   ☐ Male        ☑ Female

**B3.** Date of Birth: _

**B4.** USMLE # _5_ - _3_ _1_ _6_ - _7_ _2_ _0_ - _1_ (required)

**B5.** Address:
<u>127 Hart Ave.</u>
Street

<u>Athens</u>                              <u>GA</u>                  <u>30606</u>
City                                 State/Province        Zip/Postal Code

<u>United States of America</u>
Country

<u>404 217 8036</u>
Daytime Telephone Number

<u>None</u>
Alternate Telephone Number

<u>swhyte@gru.edu  or swhyte@augusta.edu</u>
E-mail address

**B6.** Medical School Name: <u>Augusta University/Medical College of Georgia/Georgia Regents</u> Univ.

Country of Medical School: <u>USA</u>                    Date of Medical School Graduation: <u>May of 2017</u>

USMLE® Request for Test Accommodations

## Section C: Accommodations Information

C1.  Do you require wheelchair access at the examination facility? ☐ Yes ☑ No
If yes, and you require an adjustable height computer table, indicate the number of inches required from
the bottom of the table to the floor: _____

C2.  Describe the accommodation(s) you are requesting. Accommodations must be appropriate to the
impairment within the context of the examination task and setting:
_For Tests: private and/or quiet room; extended (1.5x) time for all tests; written instructions_

_Scheduled Breaks_

C3.  Check **ONLY ONE** box for the exam(s) for which you are registered.

### STEP 1:
**Additional Break Time**
☐ Additional break time over 1 day

☐ Additional break time over 2 days

**Additional Testing Time**
☐ 25% Additional test time (Time and 1/4) over 2 days

☑ 50% Additional test time (Time and 1/2) over 2 days

☐ 100% Additional test time (Double time) over 2 days

☐ Additional break time <u>and</u> 50% Additional test time (Time and 1/2) over 2 days

### STEP 2 CK:
**Additional Break Time**
☐ Additional break time over 2 days

**Additional Testing Time**
☐ 25% Additional test time (Time and 1/4) over 2 days

☑ 50% Additional test time (Time and 1/2) over 2 days

☐ 100% Additional test time (Double time) over 2 days

☐ Additional break time <u>and</u> 50% Additional test time (Time and 1/2) over 2 days

### STEP 3:
**Additional Break Time**
☐ Additional break time over 4 days

**Additional Testing Time**
☐ 25% Additional test time (Time and 1/4) over 3 days

☑ 50% Additional test time (Time and 1/2) over 4 days

☐ 100% Additional test time (Double time) over 5 days

☐ Additional break time <u>and</u> 50% Additional test time (Time and 1/2) over 4 days

### STEP 2 CS:
Describe the accommodations you are requesting for each section of Step 2 CS (i.e., patient encounter,
patient note).  If you are requesting additional time, state the **amount** of additional time you require in
**minutes per encounter/note**.

☐ Patient Encounter: _____

☑ Patient Note: ___50% Additional time (Time and 1/2) over 1 day_____

USMLE® Request for Test Accommodations

## Section D: Information About Your Impairment

**D1.** Check the box that best describes the **nature of your impairment** and list the **year** it was first diagnosed by a qualified professional. Check only those for which you are requesting accommodations.

**Sensory**                                          **Year first diagnosed**
❑ Hearing                                            _____
❑ Vision                                             _____
❑ Other (specify):_____                      _____

**Learning**
☑ Reading                                            ~~1988~~
❑ Writing                                            _____
❑ Mathematics                                        _____
❑ Other (specify):_____                      _____

**Language**
❑ Expressive
☑ Receptive                                          ~~1988~~
❑ Other (specify):_____

**Physical**
❑ Mobility/motor
❑ Endocrine                                          _____
❑ Neurological                                       _____
❑ Other (specify):_____                      _____

**Psychiatric**
❑ Anxiety Disorder
☑ Depression/Mood Disorder                           2015
☑ Attention Deficit/Hyperactivity Disorder           1988
❑ Other (specify):_____

**Other Impairment** (specify) _____          _____

**D2.** List your <u>current</u> **DSM/ICD** diagnosis/diagnoses for which you are requesting accommodations:
Attention Deficit/Hyperactivity Disorder, inattentive type (DSM-5, 314.00); Major

Depressive Disorder, mild (DSM-5, 296.31)

_____

## D3. Personal Statement

: **Attach a signed and dated personal statement describing your impairments(s) and their impact on daily life.** Narratives should **not** be confined to standardized test performance. The personal statement is your opportunity to tell us how your physical or mental impairment(s) substantially limit your current functioning in a major life activity. In your own words, discuss how your impairment(s) would interfere with your access to the relevant USMLE Step and how the specific accommodation(s) you are requesting will alleviate this impact.

USMLE® Request for Test Accommodations

## Section E: Accommodation History

### STANDARDIZED EXAMINATIONS

**E1.** List accommodations you received for all standardized examinations such as college, graduate and professional school admissions tests and professional licensure and certification examinations. If no accommodations were provided, write NONE.

> **Attach copies of official documentation from each testing agency confirming the test accommodations they provided.**

> **Attached a copy of your official examination score report(s).**

| | DATE(S) ADMINISTERED | ACCOMMODATION(S) PROVIDED |
|---|---|---|
| ❑ SAT®, ACT® | | |
| ❑ MCAT® | | |
| ❑ GRE® | | |
| ❑ GMAT® | | |
| ❑ LSAT® | | |
| ❑ DAT® | | |
| ❑ COMLEX® | | |
| ❑ Bar Examination(s) | | |
| ❑ Other(s)_____ | | |
| | | |

### POSTSECONDARY EDUCATION

**E2.** List each school and all formal accommodations you receive/received, and the dates accommodations were provided:

> **Attach copies of official records from the school(s) listed confirming the accommodations they provided.**

| | SCHOOL | ACCOMMODATIONS PROVIDED | DATES PROVIDED |
|---|---|---|---|
| Medical/Graduate/ Professional School | Medical College of GA | Time and 1/2 on tests Separate room for Tests | 2012-current |
| | | | |
| Undergraduate School | GA Institute of Technoloy | Time and 1/2 on tests Quiet, empty room | 2000-2006 |

### E3. Certification of Prior Test Accommodations

> If you receive/received accommodations in medical school and/or residency, the appropriate official at your medical school/residency must complete and submit the **Certification of Prior Test Accommodations** form available at www.usmle.org.

USMLE® Request for Test Accommodations

## PRIMARY AND SECONDARY SCHOOL

**E4.** List each school and all formal accommodations you received, and the dates accommodations were provided:

- **Attach copies of official records from the school(s) listed confirming the accommodations they provided.**

| SCHOOL | ACCOMMODATIONS PROVIDED | DATES PROVIDED |
|---|---|---|
| **High School**  Decatur High School | Time and 1/2 for tests | 1996-2000 |
| **Middle School** | | |
| **Elementary School** | | |

## Section F:  Certification and Authorization

To the best of my knowledge and belief, the information recorded on this request form is true and accurate. I understand that my request for accommodations, including this form and all supporting documentation, must be received by the NBME sufficiently in advance of my anticipated test date in order to provide adequate time to evaluate and process my request.

I acknowledge and agree that any information submitted by me or on my behalf may be used by the USMLE program for the following purposes:

- Evaluating my eligibility for accommodations. When appropriate, my information may be disclosed to qualified independent reviewers for this purpose.
- Conducting research. Any disclosure of my information by the USMLE program will not contain information that could be used to identify me individually; information that is presented in research publications will be reported only in the aggregate.

I authorize the National Board of Medical Examiners (NBME) to contact the entities identified in this request form, and the professionals identified in the documentation I am submitting in connection with it, to obtain further information. I authorize such entities and professionals to provide NBME with all requested further information.

I further understand that the USMLE reserves the right to take action, as described in the Bulletin of Information (see "Indeterminate Scores and Irregular Behavior"), if it determines that false information or false statements have been presented on this request form or in connection with my request for test accommodations.

Name (print): Sara K Whyte

Signature: _____   Date: 6-29-2016

# EXHIBIT H

### Review of Accommodation Request

**Applicant Name:** Sara Whyte
**Date of Birth:** ⟩
**Date of Review:** July 29, 2016
**Reviewer:** Benjamin J. Lovett, Ph.D.

This review concerns Sara Whyte, who has requested testing accommodations (50% extended time, a private room, written instructions, and scheduled breaks) on Step 2 CK of the USMLE. She reports having current diagnoses of ADHD and a mood disorder, as well as learning and language disabilities. In a personal statement, she reports having early problems with reading and attention that continue to the present day, causing slow reading as well as distractibility.

In support of her request, Ms. Whyte has submitted the following documents:
- Score reports from a high school graduation test, as well as high school report cards
- Records from a "student support team" meeting and subsequent accommodation plan in Grade 11, including letters from parents and a psychologist
- Transcripts from college and medical school, as well as additional performance evaluations from medical school
- Score reports from the SAT, MCAT, and AP tests
- Reports from diagnostic evaluations completed in 1988, 2009, and 2015
- Confirmation of accommodations in medical school and in part of high school, and evidence that parents requested disability services provision in college

This review has three purposes: to evaluate the evidence for the reported disability conditions, to determine if the conditions (if present) cause a substantial limitation in any major life activities, and to determine if the requested accommodations are appropriate for Ms. Whyte.

<u>Chronological Summary of Documentation</u>
The earliest records that we have from Ms. Whyte are from a diagnostic evaluation conducted in 1988, when she was 6 years old. She was referred for the evaluation due to anxiety concerning school and reported teacher concerns over academic skills. On formal achievement testing, her performance was below average on measures of reading skills. However, the evaluators also observed that she seemed tired and easily frustrated on the day of testing; they concluded that she may simply be slow to develop certain skills, or might have a learning disability, but that it was too early to tell. In addition, they noted that parent and teacher rating scales were "not significant for attentional problems."

The next records that we have are from Ms. Whyte's high school years, where her grades were generally in the A and B ranges with several Cs and one D. Her report cards used numerical codes for narrative comments, and *all* of her comments from teachers were positive; although codes were *available* for inattentive and disruptive behavior, her teachers never endorsed these for her, instead repeatedly describing her as being a pleasure to teach. In her application, she appears to report accommodations throughout her time in high school, but her documentation actually suggests otherwise; it appears that in the middle of 11th grade, her parents wanted to ensure that she would have extended time on college admissions tests, and so they requested an

accommodation plan for the remainder of high school. The request worked; Ms. Whyte was given a Section 504 plan in the middle of 11th grade, and she did receive accommodations on the SAT.[1] In college, her parents also requested disability services, and she reports having received extended time and private room accommodations there, but no records have been submitted to confirm this. She did well in college, with all grades of A, B, and C, and a cumulative GPA of 3.33.

Ms. Whyte reportedly took the GRE without accommodations and gained entry to a public health graduate program.[2] In 2009, she completed a comprehensive diagnostic evaluation, specifically done to determine her accommodation needs. On measures of reading skills, there was a bit of variability, but her scores were generally in the average range or above, at least when properly interpreted. On the timed reading comprehension task from the Nelson-Denny Reading Test (NDRT), her score was at the 19th percentile for graduating college seniors, but such a score (211 or 212) would actually be well within the average range for a general population proxy group (i.e., first-year college students).[3] Ms. Whyte, her mother, and her friend all rated her as having very high levels of inattention (and the mother gave extremely high retrospective childhood ratings), and Ms. Whyte also endorsed some symptoms of depression. The evaluator diagnosed ADHD, a Learning Disorder Not Otherwise Specified (LD-NOS), and a depressive disorder NOS, and recommended 50% extended time accommodations on the MCATs and elsewhere. However, Ms. Whyte took the MCAT twice *without* accommodations (her request was reportedly denied); the first time, some of her scores were below the average range (for medical school applicants), whereas the second time, all of her scores were in the average range or above, with her composite score better than about 80% of medical school applicants.

In medical school, Ms. Whyte has shown mediocre performance, earning mostly C grades, and receiving mixed narrative feedback that included some comments about impulsive talking and lack of focus. In 2015, she completed her most recent diagnostic evaluation, again to determine her accommodation needs. The evaluators noted that she had a tendency to be extremely self-deprecating in describing her performance, believing that she did poorly on tasks where her scores were actually well above the average range. All reliable timed reading measures yielded scores in the average range (her NDRT timed comprehension score was even higher than it had been in 2009), and an objective test of attention and self-control did not suggest ADHD symptoms while on medication (which she was at the time). Symptom ratings from her and her husband suggested problems with attention, but also with depression and/or anxiety. The evaluators diagnosed ADHD and mild depression, and recommended the testing accommodations that Ms. Whyte is now requesting.

Evidence of ADHD

Briefly, there is insufficient evidence of ADHD. Really, the only evidence even *consistent* with

---

[1] It is unclear exactly what accommodations Ms. Whyte received on the SAT; she reports receiving extended time, but her score report merely shows that the test administration was nonstandard.

[2] Unfortunately, we do not have her GRE scores. Her 2009 evaluation reports that her math score was much higher than her verbal score on the GRE, but in fact this is typical since the average math score was much higher than the average verbal score at that time.

[3] I do not discuss the results of the NDRT reading *rate* task, since it is based on only one minute of silent reading with no check on comprehension, and the score that it generates is known to be unreliable. It should never be used for diagnostic purposes.

the disorder has been the presence of symptoms reported by (a) Ms. Whyte, her friend, and family members during evaluations being conducted to determine her need for accommodations and (b) medical school faculty. Her initial evaluation at age 6 showed parent and teacher ratings that failed to reach clinical significance for attention problems, and the narrative comments from teachers at her high school did not mention anything like attention problems—quite the opposite. The more recent reports of inattentive symptoms could be due to a variety of other factors: the incentive to obtain accommodations, a general negative self-concept, or the presence of anxiety and/or depressive feelings.[4] In particular, there is a lack of objective evidence of ADHD symptoms; the only performance test designed specifically for measuring such symptoms was administered in 2015 and failed to find evidence of such symptoms.[5] More generally, Ms. Whyte is over 30 years old and so I would expect to see documented evidence of a *lengthy and consistent history of significant ADHD-related impairment* in real-world settings that (unlike medical school) most people are expected to perform in. Such evidence is not present in her file.

Evidence of Language/Learning Disabilities
In her application, Ms. Whyte reported having a learning disability in reading and a receptive language disorder, but her most recent (2015) evaluation did not make either diagnosis, and there is no current or recent evaluation of deficits that would meet the criteria for either disorder. Ms. Whyte's evaluations as an adult have not found academic skills that are below the average range compared to age peers, and her receptive language has not been directly assessed with standardized instruments. There is clearly insufficient evidence of any language/learning problems.

Evidence of Depression
I understand that another consultant will be considering Ms. Whyte's diagnosis of a mood disorder, so I will not discuss the evidence for that disorder directly, although I will comment on her more general need for accommodations below.

Evidence of Functional Limitations and Accommodation Needs
Ms. Whyte has requested 4 accommodations on Step 2 CK of the USMLE; I discuss each below, along with the evidence of related functional limitations:

- 50% extended time – Ms. Whyte's timed reading skills were measured in her most recent (2015) diagnostic evaluation with the Woodcock-Johnson Tests of Achievement (WJ-Ach) reading fluency test and the NDRT timed reading comprehension test; on both measures, her score was in at least the average range. The NDRT score is particularly relevant, since it was based on reading passages and answering multiple-choice questions about the passages under a strict time limit (i.e., skills that are required for accessing Step

---

[4] With regard to the incentive to obtain accommodations, research has found that a significant minority of young adults being evaluated for learning and attention problems do exaggerate their symptoms. This exaggeration can certainly extend to other people who are trying to help the evaluated individual obtain accommodations. With regard to a general negative self-concept, it is possible that Ms. Whyte generally evaluates herself negatively (see the evaluators' behavioral observations during the 2015 evaluation), and so she honestly believes herself to be worse than she is at things. Finally, with regard to feelings of anxiety and depression, these feelings can certainly cause symptoms of inattention.

[5] At the time of the 2015 evaluation, Ms. Whyte was on ADHD medication, and so this certainly may have affected her performance on a test of ADHD symptoms. However, if her medication is so effective, it is then unclear if she still requires accommodations.

2 CK of the USMLE under a standard time limit). All this suggests that she does not need additional time to access Step 2 CK of the USMLE.

- A private room – As I discussed above, there is insufficient objective evidence of attention problems (including distractibility) compared to most people in the general population. Moreover, on the MCAT, without any accommodations, Ms. Whyte achieved a score that was better than most medical school applicants. This suggests that she does not need a private room to access Step 2 CK of the USMLE.

- Scheduled breaks – It is unclear just what Ms. Whyte is requesting here, and she did not check the box on her application indicating that she was asking for additional break time. She was likely simply repeating the recommendations of her 2015 evaluators, who recommended "scheduled breaks" with no further description. In any case, no rationale for a different or expanded allotment of breaks has been presented, and so I must conclude that there is insufficient evidence supporting that request.

- Written instructions – As with the "scheduled breaks," it appears that this request is simply being copied from the 2015 evaluators' recommendations. I believe that on Step 2 CK of the USMLE, the instructions are generally written on a computer screen rather than orally delivered, so this request should be moot.


Benjamin J. Lovett, Ph.D.

# EXHIBIT I





National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org

**Confidential**

October 6, 2016

Sara K. Whyte
127 Hart Ave
Athens, GA 30606

RE: USMLE Step 2 CK                    USMLE ID#: 5-316-720-1

Dear Ms. Whyte:

We have thoroughly reviewed the documentation provided in support of your request for test accommodations for the United States Medical Licensing Examination (USMLE) Step 2 Clinical Knowledge (CK). We conducted an individualized review of your request in accordance with the guidelines set forth in the amended Americans with Disabilities Act (ADA).

You report the basis of your request to be Attention-Deficit/Hyperactivity Disorder (ADHD) diagnosed in 1988 and Major Depressive Disorder, Mild diagnosed in 2015. In your recent personal statement you write, *"Schools I have attended granted me an accommodation of time and half on a test which is exactly how much time I need. I find that I finish an exam in the exact amount of time they give me with no need to reread... A professor of mine took me under his wing and once or twice a week he would go over practice exams with me and help me figure out why I was missing so many questions. Working with him I learned that I knew the material but was not able to express that on a test without time accommodations. In fact, upon rereading the questions at a normal pace the correct answers were clear to me. We determined that the critical factor between success and failure were the issues of time and a quiet environment... I know that most residencies use this score to determine the knowledge and skills of a prospective resident. However, I and my professors feel that my current score does not represent me well. After a lot of talk with my school advisors I came to the conclusion that I should apply for accommodations for Step 2 (CK)... Through all my experiences and based on all the batteries of psychological tests I have taken, I clearly need these accommodations to accurately show my knowledge and skills to residencies and to assure that I do not need to take another year off to study for this exam."*

Received with your request was a March 2015 report of Diagnostic Summary and Recommendations signed by Scott E. Miller, Ph.D. at the University of Georgia Regents' Center for Learning Disorders and two students; Cutter A. Lindbergh, M.A. and Emily S. Hallowell, M.A. They report that you presented for evaluation to establish if you are eligible for academic accommodations for disabilities as allowed by the Georgia Board of Regents and to aid you in understanding your cognitive, language, academic, and social/emotional functioning. Your evaluators write, *"Sara Whyte is a 33-year-old, second year medical student at the GRU/UGA Medical Partnership with a GPA of 2.3 and SAT scores of 640 Verbal and 640 Math. Mrs. Whyte had prior diagnoses that included learning disabilities and an attention disorder. She reported current difficulties with reading, understanding directions, and retaining information that is not repeated... She indicated that she has recently been under a great*

*amount of stress as the result of her preparation for her STEP exam, explaining that her study schedule has limited her social contact, disrupted her sleep patterns, and caused her to feel emotionally and physically fatigued."* Your evaluators administered a battery of tests and conclude, *"Based on self-report, informant-report, and her overall pattern of test performance, Mrs. Whyte met criteria for Attention-Deficit/Hyperactivity Disorder (ADHD), inattentive type (DSM-5, 314.00). Relative to her high average overall ability as well as the general population, Mrs. Whyte exhibited an academic deficit in reading efficiency, which involves reading rate and the understanding of text-based passages under timed condition. The presence of this deficit is consistent with Mrs. Whyte's attentional difficulties related to ADHD. Mrs. Whyte also met diagnostic criteria for Major Depressive Disorder (MDD; DSM-5, 296.31). Although Mrs. Whyte was previously diagnosed with a learning disorder, her pattern of tests results based on the current evaluation suggests that she no longer meets criteria for a learning disorder diagnosis."*

The conclusions of your evaluator notwithstanding, your 2015 performances on a range of cognitive and academic tasks including attention, processing speed, working memory, and timed reading comprehension are well within the range of average functioning and do not demonstrate impairments that limit any major life activity. For example, consistent with your 2009 evaluation, your 2015 *Nelson-Denny Reading Test (NDRT)* timed reading comprehension was Average range, better than 30% of a national sample of college educated peers. Furthermore, neither you nor your evaluators describe current symptoms of depression, and your evaluators do not discuss how you currently meet diagnostic criteria for any psychiatric disorder.

The ADA defines disability as a physical or mental impairment that substantially limits one or more major life activities. Accommodations are intended to provide access to the USMLE testing program for individuals with a documented disability as defined by the ADA. A diagnostic label, in and of itself, does not establish coverage under the ADA, nor does prior receipt of accommodations for a particular activity guarantee that identical accommodations are indicated or will be available in all future settings and circumstances. The ADA covers individuals who are substantially limited in a major life activity. Determination of whether an individual is substantially limited in functioning as compared to most people is based on assessment of the current impact of the identified impairment.

Your documentation does not demonstrate a substantial limitation in a major life activity as compared to most people or that the requested accommodations are an appropriate modification of your USMLE Step 2 CK test administration. Therefore, after a thorough review of all of your documentation, I must inform you that we are unable to provide you with the requested accommodations.

We will advise Applicant Services to process your exam application without test accommodations. You may inquire at usmlereg@nbme.org or call Applicant Services directly at (215) 590-9700 with any questions about your scheduling permit.

Sincerely,

Catherine Farmer, Psy.D.
Director, Disability Services
ADA Compliance Officer, Testing Programs

# EXHIBIT J



# UNITED STATES MEDICAL LICENSING EXAMINATION®

## STEP 2 CLINICAL SKILLS (CS) SCORE REPORT

This score report is provided for the use of the examinee.
Third-party users of USMLE information are advised to rely solely on official USMLE transcripts.

**Whyte, Sara K**

**USMLE ID:  5-316-720-1**                    **Test Date:  March 16, 2017**

The USMLE is a single examination program consisting of three Steps designed to assess an examinee's understanding of and ability to apply concepts and principles that are important in health and disease and that constitute the basis of safe and effective patient care. Step 2 is designed to assess whether an examinee can apply medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision, including emphasis on health promotion and disease prevention. The inclusion of Step 2 in the USMLE sequence is intended to ensure that due attention is devoted to principles of clinical sciences and basic patient-centered skills that provide the foundation for the safe and competent practice of medicine. There are two components to Step 2:  a Clinical Knowledge (CK) examination and a Clinical Skills (CS) examination.  This report represents results for the Step 2 CS examination only.  Results of the examination are reported to medical licensing authorities in the United States and its territories for use in granting an initial license to practice medicine. The overall Pass/Fail outcome provided below represents your result for the administration of the Step 2 CS on the test date shown above.



The overall outcome for Step 2 CS, reported above, is based upon the minimum passing levels set by USMLE for the three Step 2 CS subcomponents. The three subcomponents are Integrated Clinical Encounter (ICE), Communication and Interpersonal Skills (CIS), and Spoken English Proficiency (SEP). It is necessary to pass all three subcomponents in order to obtain an overall passing outcome on the Step 2 CS. Results for the three Step 2 CS subcomponents are reported below.

| ICE | CIS | SEP |
|-----|-----|-----|
| PASS | PASS | PASS |

**INFORMATION PROVIDED FOR EXAMINEE USE ONLY**

The Performance Profile below is provided solely for the benefit of the examinee.

These profiles are developed as self-assessment tools for examinees only and will not be reported or verified to any third party.

## USMLE STEP 2 CS PERFORMANCE PROFILE



The above Performance Profile is provided to aid in self-assessment. The shaded area defines a borderline level of performance for each subcomponent (ICE, CIS, SEP); borderline performance is comparable to a HIGH FAIL/LOW PASS on the subcomponent.

Performance bands indicate areas of relative strength and weakness. Some bands are wider than others. The width of a performance band reflects the precision of measurement: narrower bands indicate greater precision. The band width for a given content area is the same for all examinees. An asterisk indicates that your performance band extends beyond the displayed portion of the scale. Small differences in the location of bands should not be over interpreted. If two bands overlap, performance in the associated areas should be interpreted as similar.

Additional information concerning the Step 2 CS subcomponents can be found in the *USMLE Step 2 CS Content Description and General Information Booklet.*

# EXHIBIT K



1116875        5-316-720-1
Reconsideration Request L

Dear National Board of Medical Examiners Disability Services,

I am writing to appeal your decision to deny me testing accommodations for step 2 CK. I would like to formally request that you review my material and testing again. I am also submitting several letters of attestation from various people in my life, including my psychiatrist, the Dean of Student Affairs for my school, and people that have lived with me and know me, speaking about how they have seen my disability affect my daily life. I have also spoken to the disability services people in my school who were kind enough to inform me of what is meant by hindering daily life by the ADA and recent changes made in the ADA that affects why I still believe I qualify for testing accommodations.

My psychiatrist has written a letter about the various medications and treatments I have required for major depressive disorder. I have been diagnosed with it by multiple doctors and psychologists now. It does affect me in that it keeps me from getting anything done. Case in point, this letter of appeal is going out very late to you. My depression has kept me from doing anything. Getting anything done. It has kept me from getting my tests done and is affecting my grades. It affects my daily life by keeping me from doing my job, which is studying, taking this exam, getting my applications done, working in the clinic.

Further, I would like to note again that I have tried for the past 3 years now to get information or proof of the testing accommodations I received for the SAT. Unfortunately, they have lost all of my past files and information. They will not tell me why or what happened. I contacted my old high school who received the letter of accommodations for me and they too have lost all my files in a fire. It all seems very suspect, but I assure you this is all true. Unfortunately, because I took this exam in the 1990s, losing my files is not their concern and was inevitable. Please take this into consideration when you review my request.

Lastly, I was advised by the department of disability services at MCG that I cite the department of justice findings for testing agencies. I have included the documents that they sent me on the ADA from the DOJ. I would like to refer you page 4-5 describing the types of documentation required to prove a need for testing accommodations, the fact that I have been receiving accommodations since High school (included in my previous application) and receive accommodations now from Augusta University/MCG. I would also like to cite page 7 under "Qualified Professionals" where they mention that "reports from qualified professionals who have evaluated the candidate should take precedence over reports from testing entity reviews who have never conducted the requisite assessment of the candidate for diagnosis and treatment" and that "qualified professional's decision not to provide results from a specific test or evaluation instrument should not preclude approval of a request for testing accommodations where the documentation [...] demonstrates that the candidate has a disability and needs a requested testing accommodation."

Thank you so much for your time and patience. Please reconsider my request and my stance on this issue.

Most sincerely,

Sara Whyte

RECEIVED

OCT 0 2 2017

Disability Services

# EXHIBIT L

 NBME

1118177        5-316-720-1
Reconsideration- Denial-D

National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org

**<u>Confidential</u>**

November 1, 2017

Sara K. Whyte
127 Hart Ave
Athens, GA 30606

RE: USMLE Step 2 CK                USMLE ID#: 5-316-720-1

Dear Ms. Whyte:

We have thoroughly reviewed your request for reconsideration of our decision regarding test accommodations for the United States Medical Licensing Examination (USMLE) Step 2 Clinical Knowledge (CK). We conducted an individualized review of your request and supporting documentation in accordance with the guidelines set forth in the Americans with Disabilities Act (ADA).

NBME carefully considers all evidence in determining whether an individual is substantially limited within the meaning of the ADA and what, if any, accommodations are appropriate to the particular exam context. Documentation including the individual's personal statements; evaluation reports; letters from treatment providers and advocates; and objective information such as school records and scores obtained on high stakes tests taken with and without accommodations are thoroughly reviewed. Supporting documentation submitted from qualified professionals is a necessary part of any request for accommodations and is carefully reviewed by the NBME. Though not required to defer to the conclusions or recommendations of an applicant's supporting professional, we carefully consider the recommendation of qualified professionals made in accordance with generally accepted diagnostic criteria and supported by reasonable documentation.

Accommodations are provided when there is clear documentation of functional impairment compared to most people in the general population and a rationale to demonstrate that the requested accommodation is appropriate to the setting and circumstance of the exam. Our thorough review of all of the documentation submitted to date found no new substantive information or evidence that alters our decision communicated in my October 6, 2016 letter. Therefore, after a thorough review of all of your documentation, I must inform you that we are unable to provide you with the requested accommodations.

Sincerely,

*Catherine Farmer*

Catherine Farmer, Psy.D.
Director, Disability Services
ADA Compliance Officer, Testing Programs

# EXHIBIT M



# UNITED STATES MEDICAL LICENSING EXAMINATION ®

## STEP 2 CLINICAL KNOWLEDGE (CK) SCORE REPORT

This score report is provided for the use of the examinee.
Third party users of USMLE information are advised to rely solely on official USMLE transcripts.

**Whyte, Sara K**

**USMLE ID:  5-316-720-1**                    **Test Date:   December 28, 2017**

The USMLE is a single examination program consisting of three Steps designed to assess an examinee's understanding of and ability to apply concepts and principles that are important in health and disease and that constitute the basis of safe and effective patient care. Step 2 is designed to assess whether an examinee can apply medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision, including emphasis on health promotion and disease prevention. The inclusion of Step 2 in the USMLE sequence is intended to ensure that due attention is devoted to principles of clinical sciences and basic patient-centered skills that provide  the foundation for the safe and competent practice of medicine. There are two components to Step 2:  a Clinical Knowledge (CK) examination and a Clinical Skills (CS) examination. This report represents results for the Step 2 CK examination only.  Results of the examination are reported to medical licensing authorities in the United States and its territories for use in granting an initial license to practice medicine. This score§ represents your result for the administration of Step 2 CK on the test date shown above.

| | |
|---|---|
| **FAIL** | This result is based on the minimum passing score recommended by USMLE for Step 2 CK. Individual licensing authorities may accept the USMLE-recommended pass/fail result or may establish a different passing score for their own jurisdictions. |

| | |
|---|---|
| **205** | This score is determined by your overall performance on Step 2 CK. For administrations between July 1, 2016 and June 30, 2017, the mean and standard deviation for first-time examinees from U.S. and Canadian medical schools were approximately 242 and 17, respectively, with most scores falling between 190 and 270. A score of 209 is set by USMLE to pass Step 2 CK. The standard error of measurement (SEM)‡ for this scale is six points. |

§Effective April 1, 2013, test results are reported on a three-digit scale only. Test results reported as passing represent an exam score of 75 or higher on a two-digit scoring scale.

‡Your score is influenced both by your general understanding of clinical science and the specific set of items selected for this Step 2 CK examination. The Standard Error of Measurement (SEM) provides an index of the variation in scores that would be expected to occur if an examinee were tested repeatedly using different sets of items covering similar content.

# INFORMATION PROVIDED FOR EXAMINEE USE ONLY

The Performance Profile below is provided solely for the benefit of the examinee.
These profiles are developed as self-assessment tools for examinees only and will not be reported or verified to any third party.

## USMLE STEP 2 CK PERFORMANCE PROFILE

| | Lower Performance | Borderline Performance | Higher Performance |
|---|---|---|---|
| **PHYSICIAN TASK** | | | |
| MK: Applying Foundational Science Concepts | *xxxxxxxxxxx | | |
| PC: Diagnosis | xxxxxx | | |
| PC: Health Maint, Prevention & Surveillance | xxx | xxxxxx | |
| PC: Pharmacotherapy, Intervention & Management | xxxxxxxxxx | | |
| **SYSTEM** | | | |
| Immune System | xxxxxx | xxxxx | |
| Blood & Lymphoreticular System | *xxxxxxxxxxx | | |
| Behavioral Health | xxxxxxxx | x | |
| Nervous System and Special Senses | xxxxxxxxx | | |
| Musculoskeletal Syst/Skin & Subcutaneous Tissue | xxxx | xxxxx | |
| Cardiovascular System | xxx | xxxxxx | |
| Respiratory System | xxxx | xxxxx | |
| Gastrointestinal System | xxxxxxxxx | | |
| Renal & Urinary System & Male Reproductive | xxxxxxx | xx | |
| Pregnancy, Childbirth & the Puerperium | xxxxxxxxxxxx | | |
| Female Reproductive & Breast | xxxxxxxxxx | | |
| Endocrine System | xx | xxxxxxx | |
| Multisystem Processes & Disorders | xxxxxxxxxx | | |
| **DISCIPLINE** | | | |
| Medicine | xxxxxx | | |
| Obstetrics & Gynecology | xxxxxxxxxxxxx | | |
| Pediatrics | xxxxxx | | |
| Psychiatry | xxxxxxxxxxxx | | |
| Surgery | xxxx | x | |

The above Performance Profile is provided to aid in self-assessment. The shaded area defines a borderline level of performance for each content area; borderline performance is comparable to a HIGH FAIL/LOW PASS on the total test.

Performance bands indicate areas of relative strength and weakness. Some bands are wider than others. The width of a performance band reflects the precision of measurement: narrower bands indicate greater precision. The band width for a given content area is the same for all examinees. An asterisk indicates that your performance band extends beyond the displayed portion of the scale. Small differences in the location of bands should not be over interpreted. If two bands overlap, performance in the associated areas should be interpreted as similar. Because Step 2 CK is designed to be integrative, many items contribute to more than one content area. As a consequence, caution should be used when interpreting differences in performance across content areas.

This profile should not be compared to those from other Step 2 CK administrations.

Additional information concerning the topics covered in each content area can be found in the *USMLE Step 2 CK Content Description and Sample Test Materials.*

MK—medical knowledge; PC—patient care.

# EXHIBIT N

**USMLE® Request for Test Accommodations**

## Section A: Exam Information

Place a check next to the examination(s) for which you are **currently registered** *and* requesting test accommodations: (Check all that apply)

❑ Step 1

☑ Step 2 CK (Clinical Knowledge)

❑ Step 2 CS (Clinical Skills)

❑ Step 3*

*Please be aware that additional test time for Step 3 may involve 3 to 5 days of testing, depending on the requested accommodation (See Section C1).

## Section B: Biographical Information
**Please type or print.**

**B1.** Name: _Whyte_____ _Sara_____ _K_____
            Last                              First                            Middle Initial

**B2.** Gender: ❑ Male   ☑ Female

**B3.** Date of Birth: _____

**B4.** USMLE # _5__ - _3_ _1_ _6_ - _7_ _2_ _6_ - _1_ (required)

**B5.** Address:
_127 Hart Ave_____
Street

_Athens_____   _GA_____   _30606_____
City                              State/Province          Zip/Postal Code

_USA_____
Country

_404-217-8036_____
Preferred Telephone Number

_sarakwhyte@gmail.com_____
E-mail address

**B6.** Medical School Name: _Augusta University Medical College of Georgia_

Country of Medical School: _USA_____     Date of Medical School Graduation: _2018, May_

USMLE® Request for Test Accommodations

## Section C: Accommodations Information

**C1.**   **Step 1, Step 2 CK, or Step 3** (computer-based examinations)

Check the appropriate box to indicate the accommodations you are requesting. Check **ONLY ONE** box for the exam(s) for which you are currently registered:

**STEP 1:**

**Additional Break Time**
- ❑ Additional break time over 1 day
- ❑ Additional break time over 2 days

**Additional Testing Time**
- ❑ 25% Additional test time (Time and 1/4) over 2 days
- ❑ 50% Additional test time (Time and 1/2) over 2 days
- ☒ 100% Additional test time (Double time) over 2 days

❑ Additional break time **and** 50% Additional test time (Time and 1/2) over 2 days

**STEP 2 CK:**

**Additional Break Time**
- ❑ Additional break time over 2 days

**Additional Testing Time**
- ❑ 25% Additional test time (Time and 1/4) over 2 days
- ❑ 50% Additional test time (Time and 1/2) over 2 days
- ☒ 100% Additional test time (Double time) over 2 days

❑ Additional break time **and** 50% Additional test time (Time and 1/2) over 2 days

**STEP 3:**

**Additional Break Time**
- ❑ Additional break time over 4 days

**Additional Testing Time**
- ❑ 25% Additional test time (Time and 1/4) over 3 days
- ❑ 50% Additional test time (Time and 1/2) over 4 days
- ❑ 100% Additional test time (Double time) over 5 days

❑ Additional break time **and** 50% Additional test time (Time and 1/2) over 4 days

**Describe any other accommodation(s) you are requesting for Step 1, Step 2 CK, or Step 3.**

_Request to take exam in a single room with no other test takers._

**C2.**   **STEP 2 CS (Clinical Skills)**
Review the Step 2 CS Onsite Orientation video and Step 2 CS Content Description and General Information Booklet at www.usmle.org for detailed information about the format and delivery of the Step 2 CS examination.

Describe the accommodations you are requesting for each section of Step 2 CS (i.e., patient encounter, patient note). If you are requesting additional time, state the **amount** of additional time you require in **minutes per encounter or note**.

- ❑ Patient Encounter: _____
- ❑ Patient Note: _____

USMLE® Request for Test Accommodations

**C3.** Do you require wheelchair access at the examination facility?  ❏ Yes  ☑ No
If yes, please indicate the number of inches required from the bottom of the table to the floor: _____

## Section D: Information About Your Impairment

**D1.** List the **specific DSM/ICD diagnostic code(s) and disability** for which you are requesting accommodations and report the year that it was **first diagnosed**.

| DIAGNOSTIC CODE | DISABILITY | YEAR DIAGNOSED |
|---|---|---|
| DSM-r 314 w/ addh'd | A Hen-tin-Deficit/Hyperactive Disorder | 1988 |
| DSM-5- 315.00 | Specific learning disorder - reading severe | 1988 |
| | | |
| | | |

**D2. Personal Statement**

· **Attach a signed and dated personal statement describing your impairment(s) and how a major life activity is substantially limited.** The personal statement is your opportunity to tell us how your physical or mental impairment(s) substantially limits your current functioning in a major life activity and how the standard examination conditions are insufficient for your needs. In your own words, describe the impact of your disability on your daily life (do not confine your statement to standardized test performance) and provide a rationale for why the specific accommodation(s) you are requesting are necessary in the context of this examination.

## Section E:  Accommodation History

**E1. Standardized Examinations**

**Attach copies of your score report(s) for any previous standardized examination taken.**

**If accommodations were provided, attach official documentation from each testing agency confirming the test accommodations they provided.**

List the accommodations received for previous standardized examinations such as college, graduate, or professional school admissions tests and professional licensure or certification examinations (if no accommodations were provided, write NONE).

| | DATE(S) ADMINISTERED | ACCOMMODATION(S) PROVIDED |
|---|---|---|
| ☑ SAT®, ACT® | May 1999, Nov. 1999 | Yes, time & a half, empty room to test r |
| ☑ MCAT® | May 2011 | No |
| ☑ GRE® | 2006 | No |
| ❏ GMAT® | | |
| ❏ LSAT® | | |
| ❏ DAT® | | |
| ❏ COMLEX® | | |
| ❏ Other (specify) | | |

USMLE® Request for Test Accommodations

## E2. Postsecondary Education

List each school and all formal accommodations you receive/received, and the dates accommodations were provided:

- Attach copies of official records from each school(s) confirming the accommodations they provided.

- If you receive/received accommodations in **medical school and/or residency,** have the appropriate official at your medical school/residency complete and submit the **USMLE Certification of Prior Test Accommodations** form available at www.usmle.org.

| | SCHOOL | ACCOMMODATIONS PROVIDED | DATES PROVIDED |
|---|---|---|---|
| Medical/Graduate/ Professional School | AU/MCG | 1) Time & a half 2) Empty test room | 2012-2018 |
| | Emory University | 1) Time & a half 2) Empty room | 2001-2008 |
| Undergraduate School | George Institute of Technology | 1) Time & a half 2) Empty test room | 2000-2002 |

## E3.  Primary and Secondary School

List each school and all formal accommodations you received, and the dates accommodations were provided:

- Attach copies of official records from each school listed confirming the accommodations they provided.

| | SCHOOL | ACCOMMODATIONS PROVIDED | DATES PROVIDED |
|---|---|---|---|
| High School | Decatur High School | - Time & ½ - empty test room | 1998-2000 |
| Middle School | | | |
| Elementary School | Mary Lynn Elem | They did a different kind of test on me for the gifted program | 1992 |

USMLE® Request for Test Accommodations

## Section F:  Certification and Authorization

To the best of my knowledge and belief, the information recorded on this request form is true and accurate.  I understand that my request for accommodations, including this form and all supporting documentation, must be received by the NBME sufficiently in advance of my anticipated test date in order to provide adequate time to evaluate and process my request.

I acknowledge and agree that any information submitted by me or on my behalf may be used by the USMLE program for the following purposes:

- Evaluating my eligibility for accommodations.  When appropriate, my information may be disclosed to qualified independent reviewers for this purpose.
- Conducting research.  Any disclosure of my information by the USMLE program will not contain information that could be used to identify me individually; information that is presented in research publications will be reported only in the aggregate.

I authorize the National Board of Medical Examiners (NBME) to contact the entities identified in this request form, and the professionals identified in the documentation I am submitting in connection with it, to obtain further information.  I authorize such entities and professionals to provide NBME with all requested further information.

I further understand that the USMLE reserves the right to take action, as described in the Bulletin of Information, if it determines that false information or false statements have been presented on this request form or in connection with my request for test accommodations.

Name (print):  Sara Whyte

Signature:  Sara Whyte                     Date:  Feb 20, 2018

**E-mail (as a pdf), fax or mail your completed request form and supporting documents to the address below at the same time you submit your Step examination application.**

**Disability Services**
**National Board of Medical Examiners**
**3750 Market Street**
**Philadelphia, PA 19104-3190**
**Telephone: (215) 590-9700**
**Facsimile: (215) 590-9422**
**E-mail: disabilityservices@nbme.org**

# EXHIBIT O



National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org

**Confidential**

April 30, 2018

Sara K. Whyte
127 Hart Ave
Athens, GA 30606

RE: USMLE Step 2 CK                    USMLE ID#: 5-316-720-1

Dear Ms. Whyte:

We have thoroughly reviewed the documentation provided in support of your request for test accommodations for the United States Medical Licensing Examination (USMLE) Step 2 Clinical Knowledge (CK). We conducted an individualized review of your request in accordance with the guidelines set forth in the amended Americans with Disabilities Act (ADA).

You report the basis of your request to be Attention-Deficit/Hyperactivity Disorder (ADHD) and Specific Learning Disorder in Reading diagnosed in 1988. In an undated personal statement received February 27, 2018 you write, *"I have a lifelong history of being an individual with disabilities which affect my performance on standardized tests. I am substantially limited in the major life activities of concentrating, reading, learning, and test-taking."*

Received with your current request for accommodations were copies of documents previously submitted and reviewed including your May and November 1999 SAT scores; a Student Accommodation Plan dated January 14, 1999 when you were in the 11th grade; and a copy of a USMLE Certification of Prior Test Accommodations dated December 4, 2013 signed by W. Scott Richardson, M.D. verifying that your medical school provided you the accommodations of 1.5 time and a separate room.

Accommodations are intended to provide access to the USMLE testing program for individuals with a documented disability as defined by the ADA. A diagnostic label, in and of itself, does not establish coverage under the ADA, nor does prior receipt of accommodations for a particular activity guarantee that identical accommodations are indicated or will be available in all future settings and circumstances. The ADA defines disability as a physical or mental impairment that substantially limits one or more major life activities compared to most people in the general population.

Your documentation does not demonstrate impaired functioning relative to most people in the general population or that standard testing conditions are a barrier to your access to the USMLE. Our thorough review of all of the documentation provided found no new substantive information or

evidence that alters our decisions communicated in our letters of November 1, 2017, October 6, 2016, and June 5, 2014.

We will advise Applicant Services to process your exam application without test accommodations. You may inquire at usmlereg@nbme.org or call Applicant Services directly at (215) 590-9700 with any questions about your scheduling permit.

Sincerely,

Catherine Farmer, Psy.D.
Director, Disability Services
ADA Compliance Officer, Testing Programs

# EXHIBIT P



National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org

May 16, 2018

**Via E-mail to attorneygoldberg@hotmail.com**
Ralph Goldberg
Goldberg & Cuvillier, P.C.
1400 Montreal Road
Suite 100
Tucker, GA 30084

RE: USMLE Step 2 CK                    USMLE ID#: 5-316-720-1

Dear Mr. Goldberg:

We have thoroughly reviewed the documents you provided relating to Sara Whyte, who requested accommodations for Step 2 CK of the USMLE. We understand that Ms. Whyte is registered to sit for the exam on May 24, 2018.

The documents provided, which consisted of a Motion for Temporary Restraining Order and Brief in Support, and Plaintiff's Initial Complaint, did not contain any new substantive evidence that alters the decision we communicated to Ms. Whyte by letter dated April 30, 2018. Accordingly, at this time there is no basis upon which we can approve the accommodations requested.

Although her accommodation request form from February 2018 did not request additional break time, the Motion states that Ms. Whyte seeks to take Step 2 CK with "adequate breaks." Please understand that Step 2 CK is administered so that each examinee receives a minimum of 45 minutes of break time, to be used as the examinee chooses between sections of the exam. Examinees are also given a 15-minute optional tutorial, which they may complete in advance, thus increasing the amount of available break time on exam day. They must, however, perform a sound check of the audio headphones at the testing center before commencing the exam.

Should you have further correspondence on this matter, please direct it to our attorney:

Robert Burgoyne
Perkins Coie LLP
700 13th Street, NW, Suite 600
Washington, D.C. 20005-3960
Phone: 202.654.1744
Email: RBurgoyne@perkinscoie.com

Sincerely,

Catherine Farmer, Psy.D.
Director, Disability Services
ADA Compliance Officer, Testing Programs

C: Sara K. Whyte to SWHYTE@augusta.edu

# EXHIBIT Q

 **PROGRAM**

# STUDENT SCORE REPORT
## REPORT DATE: 5/13/99
### (HIGH SCHOOL COPY - 111045)

**Your Scores**

Test Date:  **MAY 1999**
R = Recentered score (test dates on or after April 1, 1995)

| | | | College-Bound Seniors Percentiles |  |
| --- | --- | --- | --- | --- |
| | | | National | State |
| | R 530 | 500-560 | 57 | 65 |
| | R 610 | 580-640 | 79 | 87 |

* Non-Standard Admin.

Seq#0108576
SARA K. JONES
131 CANDLER OAKS LANE
DECATUR          GA 30030



1123384          5-318-720-1
SAT scores –Test Scores



Register now for next year via our website at www.collegeboard.org

**WHAT DOES YOUR SCORE RANGE MEAN?**
No single numerical score can exactly represent your reasoning skills. If you had taken different editions of the test within a short period of time, your performance would probably vary somewhat on the 200 to 800 scale.

**HOW DO YOU COMPARE WITH COLLEGE-BOUND SENIORS?**
Percentiles indicate what percentage of test takers earned a score lower than yours. The national percentile for your verbal score of 530 is 57, indicating you did better than 57 % of the national group of college-bound seniors. The national percentile for your math score of 610 is 79, indicating you did better than 79 % of the national group of college-bound seniors.

**DID YOU DO BETTER IN VERBAL OR MATH?**
Your scores indicate that you performed better on the math test than on the verbal test.

**WHAT'S THE AVERAGE VERBAL OR MATH SCORE?**
For college-bound seniors in the class of 1998, the average verbal score was 505 and the average math score was 512.

**WILL YOUR SCORES CHANGE IF YOU TAKE THE TEST AGAIN?**
If you take the test again, especially if you study between now and then, your scores may go up.

Among students with verbal scores of 530, 54% score higher on a second testing, 37% score lower, and 8% receive the same score. On average, a person with a verbal score of 530 gains  9 point(s) on a second testing.

Among students with math scores of 610, 53% score higher on a second testing, 38% score lower, and 9% receive the same score. On average, a person with a math score of 610 gains  9 point(s) on a second testing.

## HOW DID YOU DO ON EACH TYPE OF QUESTION?

| Type of Question | Number Right | Number Wrong | Number Omitted | Number of Questions | Raw Score | College-Bound Seniors Percentiles |
| --- | --- | --- | --- | --- | --- | --- |
| | 26 | 14 | 0 | 40 | 23 | 65 |
| | 13 | 6 | 0 | 19 | 12 | 75 |
| | 9 | 10 | 0 | 19 | 7 | 35 |
| | 32 | 10 | 0 | 42 | 30 | 75 |
| | 14 | 4 | 0 | 18 | 13 | 85 |

Your responses to specific types of questions are presented as number right, number wrong, and number omitted. Raw scores are based on the specific edition of the test that you took (form code VB). You cannot compare raw scores on different editions of the test or across different types of questions. For each type of question, you can compare your performance to college-bound seniors who took this test. This percentile is an estimate of the percentage of college-bound seniors who earned a raw score lower than yours on each type of question.

## SUMMARY OF SCORES    *Register now for next year via our website at www.collegeboard.org*

| SAT I: Reasoning Test | | | SAT II: Subject Tests | | |
| --- | --- | --- | --- | --- | --- |
| *May 99 | 11 | R 530 | R 610 | | |

'Not all tests have subscores                                          * Non-Standard Administration

**ID Information**

To take additional tests you can reregister by mail or by phone and use Visa, MasterCard, or American Express. You will need the registration number below and the test date (see above).

To send more score reports you will need the institution's 4-digit codes. See the back of this report for instructions on how to request these services.

| F | | 7280075 | 11565 | DECATUR HIGH SCHOOL | 111045 |



**STUDENT SCORE REPORT**
REPORT DATE: 11/18/99

## Your Scores

**Test Date:   NOVEMBER 1999**

R = Recentered score (test dates on or after April 1, 1995)

| Reasoning Test Scores | Score | Score Range | College-Bound Seniors National Percentiles |  |
|---|---|---|---|---|
| Verbal | R 630 | 600–660 | 86 | 90 |
| Math | R 620 | 590–650 | 81 | 89 |

* Non-Standard Admin

Seq#0184357
SARA K. JONES
131 CANDLER OAKS LANE
DECATUR            GA 30030

**WHAT DOES YOUR SCORE RANGE MEAN?**
No single numerical score can exactly represent your reasoning skills. If you had taken different editions of the test within a short period of time, your performance would probably vary somewhat on the 200 to 800 scale.

**HOW DO YOU COMPARE WITH COLLEGE-BOUND SENIORS?**
Percentiles indicate what percentage of test takers earned a score lower than yours. The national percentile for your verbal score of 630 is 86, indicating you did better than 86 % of the national group of college-bound seniors. The national percentile for your math score of 620 is 81 , indicating you did better than 81 % of the national group of college-bound seniors.

**DID YOU DO BETTER IN VERBAL OR MATH?**
Your scores indicate that you performed similarly on the math test and the verbal test.

**WHAT'S THE AVERAGE VERBAL OR MATH SCORE?**
For college-bound seniors in the class of 1999, the average verbal score was 505 and the average math score was 511.

**WILL YOUR SCORES CHANGE IF YOU TAKE THE TEST AGAIN?**
If you take the test again, especially if you study between now and then, your scores may go up.

Among students with verbal scores of 630, 48% score higher on a second testing, 43% score lower, and 9% receive the same score. On average, a person with a verbal score of 630 gains   4 point(s) on a second testing.

Among students with math scores of 620, 52% score higher on a second testing, 39% score lower, and 9% receive the same score. On average, a person with a math score of 620 gains   8 point(s) on a second testing.

## HOW DID YOU DO ON EACH TYPE OF QUESTION?



| Verbal Section | Right | Wrong | Omitted | Raw Score | % of Test | Percentile |
|---|---|---|---|---|---|---|
| Critical Reading | 36 | 4 | 0 | 40 | 35 | 95 |
| Analogies | 13 | 6 | 0 | 19 | 12 | 75 |
| Sentence Completion | 12 | 7 | 0 | 19 | 10 | 55 |
| Arithmetic / Algebraic Reasoning | 38 | 5 | 1 | 44 | 37 | 85 |
| Geometric Reasoning | 9 | 7 | 0 | 16 | 7 | 45 |

Your responses to specific types of questions are presented as number right, number wrong, and number omitted. Raw scores are based on the specific edition of the test that you took (form code VE). You cannot compare raw scores on different editions of the test or across different types of questions. For each type of question, you can compare your performance to college-bound seniors who took this test. This percentile is an estimate of the percentage of college-bound seniors who earned a raw score lower than yours on each type of question.

## SUMMARY OF SCORES

| SAT I: Reasoning Test |  |  |  | SAT II: Subject Tests |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Verbal | Math | | | | | | | | |
| *Nov 99 | 12 | R 630 | R 620 | | | | | | | | |
| *May 99 | 11 | R 550 | R 610 | | | | | | | | |

†Not all tests have subscores                                              * Non-Standard Administration

## ID Information

To take additional tests you can reregister by mail or by phone and use Visa, MasterCard, or American Express. You will need the registration number below and the test date (see above).

To send more score reports you will need the Institution's 4-digit codes. See the back of this report for instructions on how to request these services.

| Sex | Date of Birth | Registration Number | SS Number | Student Number |
|---|---|---|---|---|
| F | | 2359020 | 11580 | |

# EXHIBIT R

**DECATUR HIGH SCHOOL**
310 North McDonough Street
Decatur, Georgia 30030



1074936      5-316-720-1
Graduation test-School Re

May 24, 1999

Dear Parent:

Enclosed you will find a computer print-out summarizing your child's performance on the Georgia High School Graduation Test in the areas of English/Language Arts, Mathematics, Social Studies, and Science. The test was given in March to all eleventh graders and to twelfth graders who had not previously passed it.

The test results are reported in scale scores ranging from 400 to 600. A student must earn a score of 500 or above on each test in order to pass. Any section of the test that is passed does not have to be taken again, but any section of the test that is failed must be taken again. If necessary, a student may take any section of the test once this summer and three times during the 1999-2000 school year. Passing all sections of the test is one of the requirements for receiving a high school diploma in the state of Georgia. Seniors who have not passed all parts of the test but who have earned the required units of credit for graduation may take part in the graduation ceremonies but will receive a Certificate of Performance instead of a High School Diploma.

For the first time this spring, a task force of Georgia educators has esablished a new level of distinction for the Graduation Test. This classification, known as Pass Plus, is reserved to honor those students whose scores far exceed the minimum passing score of 500. The Pass Plus scale scores are as follows:

| English/Language Arts | 538 | Science | 531 |
|---|---|---|---|
| Mathematics | 535 | Social Studies | 526 |

If you would like to discuss these test results with one of our counselors, please call the counseling office at 404-370-4423. Students who have not passed one or more sections of the test will have the opportunity attend reveiw sessions this summer and to re-take needed sections the last part of July or the first part of August. As soon as we know the dates for review sessions and the retest, we will let you know.

Sincerely,

*Sacra Vaughan*

Sacra Vaughan
Counselor



**GEORGIA HIGH SCHOOL GRADUATION TESTS**

## Student Content Area Summary

Student: SARA K. JONES
Date of Birth:
System: DECATUR CITY
School: DECATUR HIGH

Student ID:
Date Tested: Spring 1999
System Code: 773
School Code: 3050

Date Printed: 03MAY99

| Content Area/ Strand | Scaled Score | Scaled Score 400 450 500 550 600 |
|---|---|---|
| **English Lang Arts** | 584 | |
| Percentile rank | 97 | |
| Reading/Literature | 580 | |
| Critical Thinking | 557 | |
| Language/Writing | 548 | |

You PASSED the English Language Arts test.
Your score was 584.
Congratulations! You have earned the Pass Plus
level of distinction.

| Content Area/ Strand | Scaled Score | Scaled Score 400 450 500 550 600 |
|---|---|---|
| **Social Studies** | 538 | |
| Percentile rank | 88 | |
| World Studies | 546 | |
| US Hist to 1865 | 551 | |
| US Hist since 1865 | 556 | |
| Citizenship/Govt | 537 | |
| Map Skills | 513 | |
| Info Proc Skills | 546 | |

You PASSED the Social Studies test.
Your score was 538.
Congratulations! You have earned the Pass Plus
level of distinction.

| Content Area/ Strand | Scaled Score | Scaled Score 400 450 500 550 600 |
|---|---|---|
| **Mathematics** | 585 | |
| Percentile rank | 97 | |
| Number & Computation | 548 | |
| Data Analysis | 567 | |
| Measurement & Geom | 567 | |
| Algebra | 566 | |

You PASSED the Mathematics test.
Your score was 585.
Congratulations! You have earned the Pass Plus
level of distinction.

| Content Area/ Strand | Scaled Score | Scaled Score 400 450 500 550 600 |
|---|---|---|
| **Science** | 535 | |
| Percentile rank | 92 | |
| Process/Res Skills | 526 | |
| Chemical Concepts | 542 | |
| Physical Concepts | 538 | |
| Biology | 556 | |

You PASSED the Science test.
Your score was 535.
Congratulations! You have earned the Pass Plus
level of distinction.

- The Passing Score is 500 for all tests.
- Content Area scores are not simple averages of strand scores because strands have different numbers of items.
- Percentile rank indicates the percentage of students who scored lower than you.
- See ↑ back of this report for important information.
- *--Your performance was low in these strands.

HSGTRP

# EXHIBIT S

1101989        5-316-720-1
**Decatur High School Grade**
CITY SCHOOLS OF DECATUR
DON L. GRIFFITH, Superintendent
WILLIAM J. FUNK, Principal

## DECATUR HIGH SCHOOL
DECATUR, GEORGIA 30030

Jones,  Sara  Kathryn

Report    Card  -  Semester    1   1996-97           Grade  9

Absent:  0          Tardy:  0

| Course No. | Course Name | Teacher | Grade | Exam | Conduct | Abs | Comments | | |
|---|---|---|---|---|---|---|---|---|---|
| 53.0371 | Intermediate  Band  I | Anderson  3 | 98 | N | B | | | | |
| 23.0614 | Lit/Comp  9Honors | Cassell | 88 | A | B | | 11 | 10 | |
| 40.0114 | Physical  Science | Gillham | 80 | A | A | | | | |
| 60.011 | French  I | Greene | 91 | A | A | | | | |
| 36.011 | Phy  Ed/Health  J | Januzelli | 93 | A | A | 1 | 10 | | |

COMMENT CODES

The student is:

1    improving in this course
2.   demonstrating quality work
3.   showing outstanding ability
4    achieving below ability
5.   not bringing books or materials to class
6    not completing assignments regularly
7    displaying poor study habits
8    displaying good study habits
9    needing to participate more in class discussions
10.  a cooperative student
11   a pleasure to teach
12.  not working well or cooperatively with others
13.  talking excessively during class
14.  inattentive during class
15.  fails to respect authority
16.  needing to improve his/her attitude
17   improving in class behavior
18.  excessively tardy
19   excessively absent

A = 93 -100  Excellent
B = 85 - 92  Above average
C = 77 - 84  Average
D = 70 - 76  Below average
F = Below 70 Failure*

*A grade of F in conduct will
affect eligibility in some
athletic and school organizations
or elected offices.

RECEIVED
JUL 15 2016
Disability Services

IMPORTANT

All subjects are normally scheduled for a semester.  A Carnegie unit is earned when a course is passed.  The final semester grade includes 20% for the final examination.

Grades are affected by attendance; a statement of reason for absence must be written by the parent or guardian for each absence.  A student with excessive absences must have an excusable absence signed by a doctor in order to receive credit for the semester's work.  Only lawful absences are excused.  Lawful absences according to the compulsory attendance law are the following: "Children may be temporarily excused from school (1) who are personally ill--whose attendance would endanger their health or others, (2) in whose immediate family there is a serious illness or death which would reasonably necessitate absence from school; (3) on special and recognized religious holidays observed by their faith; (4) when absence is mandated by order of governmental agencies, e.g.; preinduction physical examination for service in armed forces, or court order."

A passing score on each section of the Georgia Graduation Test is REQUIRED FOR GRADUATION.  The test report for each student will be sent home beginning in the spring of the eleventh grade and periodically thereafter until passing scores have been achieved.

The school staff is interested in providing the best education possible for your child.  Close cooperation between home and school contributes toward accomplishing this purpose.  Every effort is made to help your child experience success and make progress; but progress also depends upon attitude, a willingness to work, and regular attendance.

We will be happy to arrange conferences with you to discuss the progress of your child.  Please call the counseling office, 370-4423, for an appointment.

Parent/Guardians: Report is mailed and need not be returned.  This copy is for your record

## DECATUR HIGH SCHOOL
### DECATUR, GEORGIA 30030

CITY SCHOOLS OF DECATUR
DON L. GRIFFITH, Superintendent
WILLIAM J. FUNK, Principal

**Jones, Sara Kathryn**

**Report Card - Semester 2 1996-97**          Grade 9

COMMENT CODES

The student is:

Absent: 0          Tardy: 0

| Course No. | Course Name | Teacher | Grade | Exam | Conduct | Abs | Comments |
|---|---|---|---|---|---|---|---|
| 3 0371 | Concert Band I | Anderson S | 97 | N | A | | |
| 5 0834 | World Hist Honors | Brown | 87 | C | B | 2 | |
| 7 0634 | Eucl Geometry | Flemons | 88 | D | A | | |
| 9 012 | French II | Sessions | 92 | B | B | | |

1. improving in this course
2. demonstrating quality work
3. showing outstanding ability
4. achieving below ability
5. not bringing books or materials to class
6. not completing assignments regularly
7. displaying poor study habits
8. displaying good study habits
9. needing to participate more in class discussions
10. a cooperative student
11. a pleasure to teach
12. not working well or cooperatively with others
13. talking excessively during class
14. inattentive during class
15. fails to respect authority
16. needing to improve his/her attitude
17. improving in class behavior
18. excessively tardy
19. excessively absent

| | |
|---|---|
| A = 93 -100  Excellent<br>B = 85 - 92  Above average<br>C = 77 - 84  Average<br>D = 70 - 76  Below average<br>F = Below 70 Failure* | *A grade of F in conduct will affect eligibility in some athletic and school organizations or elected offices. |

**IMPORTANT**

All subjects are normally scheduled for a semester.  A Carnegie unit is earned when a course is passed.  The final semester grade includes 20% for the final examination.

Grades are affected by attendance; a statement of reason for absence must be written by the parent or guardian for each absence.  A student with excessive absences must have an excusable absence signed by a doctor in order to receive credit for the semester's work.  Only lawful absences are excused.  Lawful absences according to the compulsory attendance law are the following: "Children may be temporarily excused from school (1) who are personally ill--whose attendance would endanger their health or the health or others; (2) in whose immediate family there is a serious illness or death which would reasonably necessitate absence from school; (3) on special and recognized religious holidays observed by their faith; (4) when absence is mandated by order of governmental agencies. e.g.; preinduction physical examination for service in armed forces, or court order."

A passing score on each section of the Georgia Graduation Test is REQUIRED FOR GRADUATION.  The test report for each student will be sent home beginning in the spring of the eleventh grade and periodically thereafter until passing scores have been achieved.

The school staff is interested in providing the best education possible for your child.  Close cooperation between home and school contributes toward accomplishing this purpose.  Every effort is made to help your child experience success and make progress; but progress also depends upon attitude, a willingness to work, and regular attendance.

We will be happy to arrange conferences with you to discuss the progress of your child.  Please call the counseling office, 370-4423, for an appointment.

Parent/Guardians- Report is mailed and need not be returned   This copy is for your record.

Form AH
Revised 1997

# DECATUR HIGH SCHOOL
## DECATUR, GEORGIA 30030

CITY SCHOOLS OF DECATUR
IDA H. LOVE, Superintendent
WILLIAM J. FUNK, Principal

COMMENT CODES

The student is:

1.  improving in this course
2.  demonstrating quality work
3.  showing outstanding ability
4.  achieving below ability
5.  not bringing books or materials to class
6.  not completing assignments regularly
7.  displaying poor study habits
8.  displaying good study habits
9.  needing to participate more in class discussions
10. a cooperative student
11. a pleasure to teach
12. not working well or cooperatively with others
13. talking excessively during class
14. inattentive during class
15. fails to respect authority
16. needing to improve his/her attitude
17. improving in class behavior
18. excessively tardy
19. excessively absent

Jones, Sara Kathryn

Report Card - Semester 1   1997-98      Grade 10

Absent: 1       Tardy  0

| Course No. | Course Name | Teacher | Grade | Exam | Conduct | Abs | Comments | |
|---|---|---|---|---|---|---|---|---|
| 53.0372 | Intermediate Band II | Anderson4 | 90 | C | A | 3 | | |
| 20.525 | Care of Child I | Black | 95 | A | A | 1 | 3 | 11 |
| 60.0211 | Visual Art/Comp I | Fowlkes | 95 | A | A | | | |
| 26.0114 | Biology I Honors | Maxfield | 90 | A | A | 1 | 14 | |
| 45.082 | US History  AP | Nielsen | 95 | A | A | 1 | 11 | |

| | |
|---|---|
| A  - 93-100   Excellent<br>B  - 85-92   Above Average<br>C  - 77-84   Average<br>D  - 70-78   Below Average<br>F  -  Below 70  Failure* | *A grade of F in conduct will<br>affect eligibility in some<br>athletic and school organizations<br>or elected offices. |

IMPORTANT

All subjects are normally scheduled for a semester.  A Carnegie unit is earned when a course is passed.  The final semester grade includes 20% for the final examination.

Grades are affected by attendance; a statement of reason for absence must be written by the parent or guardian for each absence.  A student with excessive absences must have an excusable absence signed by a doctor in order to receive credit for the semester's work.  Only lawful absences are excused.  Lawful absences according to the compulsory attendance law are the following: "Children may be temporarily excused from school (1) who are personally ill--whose attendance would endanger their health or the health or others; (2) in whose immediate family there is a serious illness or death which would reasonably necessitate absence from school. (3) on special and recognized religious holidays observed by their faith; (4) when absence is mandated by order of governmental agencies, e.g.; preinduction physical examination for service in armed forces, or court order."

A passing score on each section of the Georgia Graduation Test is REQUIRED FOR GRADUATION.  The test report for each student will be sent home beginning in the spring of the eleventh grade and periodically thereafter until passing scores have been achieved.

The school staff is interested in providing the best education possible for your child.  Close cooperation between home and school contributes toward accomplishing this purpose.  Every effort is made to help your child experience success and make progress; but progress also depends upon attitude, a willingness to work, and regular attendance.

We will be happy to arrange conferences with you to discuss the progress of your child.  Please call the counseling office, 370-4423, for an appointment.

Parent/Guardians-Report is mailed and need not be returned.   This copy is for your records.

Form AH
Revised 1997

# DECATUR HIGH SCHOOL
## DECATUR, GEORGIA 30030

CITY SCHOOLS OF DECATUR
IDA H. LOVE, Superintendent
WILLIAM J. FUNK, Principal

## Jones, Sara Kathryn

### Report Card - Semester 2  1997-98        Grade 10

Absent: 2        Tardy: 1

COMMENT CODES

The student is:

| Course No. | Course Name | Teacher | Grade | Exam | Conduct | Abs | Comments |
|---|---|---|---|---|---|---|---|
| 27.064 | Algebra II | Flemons | 93 | C | A | 2 | |
| 23.0514 | Am Lit/Comp10 | Cassell | 95 | A | A | 1 | 9 |
| 53.0372 | Concert Band II | Anderson6 | 99 | N | A | | |
| 48.521 | Graphic Arts I | Fowlkes | 97 | A | A | 2 | |

1.  improving in this course
2.  demonstrating quality work
3.  showing outstanding ability
4.  achieving below ability
5.  not bringing books or materials to class
6.  not completing assignments regularly
7.  displaying poor study habits
8.  displaying good study habits
9.  needing to participate more in class discussions
10.  a cooperative student
11.  a pleasure to teach
12.  not working well or cooperatively with others
13.  talking excessively during class
14.  inattentive during class
15.  fails to respect authority
16.  needing to improve his/her attitude
17.  improving in class behavior
18.  excessively tardy
19.  excessively absent

| | |
|---|---|
| A  . 93-100  Excellent<br>B  = 85-92  Above Average<br>C  = 77-84  Average<br>D  . 70-78  Below Average<br>F  = Below 70 Failure* | *A grade of F in conduct will<br>affect eligibility in some<br>athletic and school organizations<br>or elected offices. |

IMPORTANT

All subjects are normally scheduled for a semester.  A Carnegie unit is earned when a course is passed.  The final semester grade includes 20% for the final examination.

Grades are affected by attendance; a statement of reason for absence must be written by the parent or guardian for each absence.  A student with excessive absences must have an excusable absence signed by a doctor in order to receive credit for the semester's work.  Only lawful absences are excused.  Lawful absences according to the compulsory attendance law are the following: "Children may be temporarily excused from school (1) who are personally ill--whose attendance would endanger their health or the health of others; (2) in whose immediate family there is a serious illness or death which would reasonably necessitate absence from school; (3) on special and recognized religious holidays observed by their faith; (4) when absence is mandated by order of governmental agencies, e.g.; preinduction physical examination for service in armed forces, or court order."

A passing score on each section of the Georgia Graduation Test is REQUIRED FOR GRADUATION.  The test report for each student will be sent home beginning in the spring of the eleventh grade and periodically thereafter until passing scores have been achieved.

The school staff is interested in providing the best education possible for your child.  Close cooperation between home and school contributes toward accomplishing this purpose.  Every effort is made to help your child experience success and make progress; but progress also depends upon attitude, a willingness to work, and regular attendance.

We will be happy to arrange conferences with you to discuss the progress of your child.  Please call the counseling office, 370-4423, for an appointment.

Parent/Guardians-Report is mailed and need not be returned.    This copy is for your records.

Form AH
Revised 1996

# DECATUR HIGH SCHOOL
Decatur, Georgia 30030
## Report Card

CITY SCHOOLS OF DECATUR
IDA H. LOVE, Superintendent
KAREN M. ELDRIDGE, Principal

COMMENT CODES

The student is:

1. improving in this course
2. demonstrating quality work
3. showing outstanding ability
4. achieving below ability
5. not bringing books or materials to class
6. not completing assignments regularly
7. displaying poor study habits
8. displaying good study habits
9. needing to participate more in class discussions
10. a cooperative student
11. a pleasure to teach
12. not working well or cooperatively with others
13. talking excessively during class
14. inattentive during class
15. failing to respect authority
16. needing to improve his/her attitude
17. improving in class behavior
18. excessively tardy
19. excessively absent

Jones, Sara Kathryn

Report Card · Semester 1   1998-99 Grade 11

Absent: 0          Tardy: 3

| Course No | Course Name | Teacher | Grade | Exam | Conduct | Abs | Comments |
|---|---|---|---|---|---|---|---|
| 52038100 | Advanced Band I | Anderson,G | 97 | N | A | | |
| 23043000 | APLangComp11 * | Cassell  10 | 95 | A | A | 5 | 11 |
| 23031000 | Writer's  Worksh* | Cassell  10 | 99 | A | A | 5 | 11 |
| 59521200 | Vis  Arts/Co  II | Fowlkes | 96 | N | A | 3 | 11 |
| 27085000 | Adv  Alg/Trig* | Vaughn | 94 | C | A | 5 | 11 |

| | | |
|---|---|---|
| A = 93-100 | Excellent | *A grade of F in conduct will |
| B = 85-92 | Above Average | affect eligibility in some |
| C = 77-84 | Average | athletic and school organizations |
| D = 70-76 | Below Average | or elected offices. |
| F = Below 70 | Failure¹ | |

## IMPORTANT

All subjects are normally scheduled for a semester.  A Carnegie unit is earned when a course is passed.  Students receive half a credit for the following courses:  American Political Behavior, Economics Honors, Band (1st semester), Citizenship, Economics, Health, and Introduction to Team Sports.  The final semester grade includes 20% for the final examination.

Grades are affected by attendance; a student who is absent from school for an entire day or any portion of the day shall bring a signed note from his/her parent/guardian explaining the reason(s) for the absence.  The absence will be excused or unexcused based on the state board rule indicating that absences from school may be excused for the following reasons: (1) personal illness for which attendance in school would endanger the student's health or the health of others; (2) serious illness or death in the student's immediate family; (3) special and recognized holidays observed by the student's faith; (4) order of governmental agencies (i.e., a court order); (5) conditions rendering school attendance impossible or hazardous to the student's health or safety; (6) students serving as a page in the Georgia General Assembly; and (7) student voter registration (one day only).  An absence shall be designated unexcused if it cannot be validated according to state guidelines within three days of the absence.

When unexcused absences exceed ten days in a semester for one class at the high school level, the student shall be ineligible to take the final exam for that particular class.  If a student is absent when a final exam is given, he/she must present a doctor's excuse in order to make up the exam.  The exam must be made up by the last day of the semester for students.  If circumstances prevent the student from meeting this deadline then an appeal may be made to the principal.

A passing score on each section of the Georgia Graduation Test is REQUIRED FOR GRADUATION.  The test report for each student will be sent home beginning in the spring of the eleventh grade and periodically thereafter until passing scores have been achieved.  Summer school remedial sessions are offered for all students who do not pass the graduation test.

The school staff is interested in providing the best education possible for your child.  Close cooperation between home and school contributes toward accomplishing this purpose.  Every effort is made to help your child experience success and make progress; but progress also depends upon attitude, a willingness to work, and regular attendance.

We will be happy to arrange conferences with you to discuss the progress of your child.  Please call the counseling office, (404) 370-4423, for an appointment.

Parent(s)/Guardian(s) - Report is mailed and need not be returned.  This copy is for your records.

Form AH
Revised 1996

# DECATUR HIGH SCHOOL
Decatur, Georgia 30030
## Report Card

**Jones, Sara Kathryn**

Report Card - Semester 2   1998-99   Grade 11

Absent: 3   Tardy: 0

| Course No. | Course Name | Teacher | Grade | Exam | Conduct | Abs | Comments |
|---|---|---|---|---|---|---|---|
| 53038200 | Advanced Band II | Anderson6 | 98 | N | A | 1 | |
| 70031000 | DS-1 Pottery | Fowlkes | 95 | N | A | 6 | |
| 45054000 | Am Pol Beh Hon* | Maupin | 96 | C | A | 7 | 11 |
| 45061000 | Economics*Hon | Maupin3 | 96 | C | A | 7 | 11 |
| 40651000 | Chemistry I* | Winterscheid | 95 | A | A | 6 | 2   11 |

CITY SCHOOLS OF DECATUR

IDA H. LOVE, Superintendent

KAREN M. ELDRIDGE, Principal

COMMENT CODES

The student is:

1. improving in this course
2. demonstrating quality work
3. showing outstanding ability
4. achieving below ability
5. not bringing books or materials to class
6. not completing assignments regularly
7. displaying poor study habits
8. displaying good study habits
9. needing to participate more in class discussions
10. a cooperative student
11. a pleasure to teach
12. not working well or cooperatively with others
13. talking excessively during class
14. inattentive during class
15. failing to respect authority
16. needing to improve his/her attitude
17. improving in class behavior
18. excessively tardy
19. excessively absent

| | | |
|---|---|---|
| A = 93-100 | Excellent | *A grade of F in conduct will affect eligibility in some athletic and school organizations or elected offices. |
| B = 85-92 | Above Average | |
| C = 77-84 | Average | |
| D = 70-76 | Below Average | |
| F = Below 70 | Failure* | |

## IMPORTANT

All subjects are normally scheduled for a semester. A Carnegie unit is earned when a course is passed. Students receive half a credit for the following courses: American Political Behavior, Economics Honors, Band (1st semester), Citizenship, Economics, Health, and Introduction to Team Sports. The final semester grade includes 20% for the final examination.

Grades are affected by attendance; a student who is absent from school for an entire day or any portion of the day shall bring a signed note from his/her parent/guardian explaining the reason(s) for the absence. The absence will be excused or unexcused based on the state board rule indicating that absences from school may be excused for the following reasons: (1) personal illness for which attendance in school would endanger the student's health or the health of others; (2) serious illness or death in the student's immediate family; (3) special and recognized holidays observed by the student's faith; (4) order of governmental agencies (i.e., a court order); (5) conditions rendering school attendance impossible or hazardous to the student's health or safety; (6) students serving as a page in the Georgia General Assembly; and (7) student voter registration (one day only). An absence shall be designated unexcused if it cannot be validated according to state guidelines within three days of the absence.

When unexcused absences exceed ten days in a semester for one class at the high school level, the student shall be ineligible to take the final exam for that particular class. If a student is absent when a final exam is given, he/she must present a doctor's excuse in order to make up the exam. The exam must be made up by the last day of the semester for students. If circumstances prevent the student from meeting this deadline then an appeal may be made to the principal.

A passing score on each section of the Georgia Graduation Test is REQUIRED FOR GRADUATION. The test report for each student will be sent home beginning in the spring of the eleventh grade and periodically thereafter until passing scores have been achieved. Summer school remedial sessions are offered for all students who do not pass the graduation test.

The school staff is interested in providing the best education possible for your child. Close cooperation between home and school contributes toward accomplishing this purpose. Every effort is made to help your child experience success and make progress; but progress also depends upon attitude, a willingness to work, and regular attendance.

We will be happy to arrange conferences with you to discuss the progress of your child. Please call the counseling office, (404) 370-4423, for an appointment.

**Parent(s)/Guardian(s)** - Report is mailed and need not be returned. This copy is for your records.

Form AH
Revised 1999

# DECATUR HIGH SCHOOL
Decatur, Georgia  30030
## Report Card

Jones, Sara Kathryn

Report Card - Semester 2   1999-00         Grade 12

Absent: 7        Tardy: 2

| Course No. | Course Name | Teacher | Grade | Exam | Conduct | Abs | Comments |
|---|---|---|---|---|---|---|---|
| 23065000 | AP  Lit/Comp12* | Bailey | 92 | A | A | 7 | 10   11 |
| 70031000 | DSCreative Writing | Cassell5 | 93 | N | A | 4 | 11   2 |
| 50071200 | Visual Arts/Photo I | Streeter | 100 | N | A | 6 | 2   3 |
| 40861000 | Physics I* | Winterscheid | 87 | B | A | 3 | 1   11 |

CITY SCHOOLS OF DECATUR
IDA H. LOVE, Superintendent
KAREN M. ELDRIDGE, Principal

COMMENT CODES

The student is:

1.   Improving in this course
2.   demonstrating quality work
3.   showing outstanding ability
4.   achieving below ability
5.   not bringing books or materials to class
6.   not completing assignments regularly  .
7.   displaying poor study habits
8.   displaying good study habits
9.   needing to participate more in class discussions
10.  a cooperative student
11.  a pleasure to teach
12.  not working well or cooperatively with others
13.  talking excessively during class
14.  inattentive during class
15.  failing to respect authority
16.  needing to improve his/her attitude
17.  improving in class behavior
18.  excessively tardy
19.  excessively absent

| | | |
|---|---|---|
| A = 93-100 | Excellent | ^A grade of F in conduct will affect eligibility in some athletic and school organizations or elected offices. |
| B = 85-92 | Above Average | |
| C = 77-84 | Average | |
| D = 70-76 | Below Average | |
| F = Below 70 | Failure^ | *Indicates Core Course |

IMPORTANT

All subjects are normally scheduled for **a semester**.  A Carnegie unit is earned when a course is passed.  Students receive half a credit for the following courses:  Band (1st semester), Health, and Introduction to Team Sports.  The final semester grade includes the final examination grade.

Grades are affected by attendance; a student who is absent from school for an entire day or any portion of the day shall bring a signed note from his/her parent/guardian explaining the reason(s) for the absence.  The absence will be excused or unexcused based on the state board rule indicating that absences from school may be excused for the following reasons:  (1) personal illness for which attendance in school would endanger the student's health or the health of others; (2) serious illness or death in the student's immediate family; (3) special and recognized holidays observed by the student's faith; (4) order of governmental agencies (i.e., a court order); (5) conditions rendering school attendance impossible or hazardous to the student's health or safety; (6) students serving as a page in the Georgia General Assembly; and (7) student voter registration (one day only).  An absence shall be designated unexcused if appropriate documentation is not provided according to state guidelines within three days of the absence.

When unexcused absences exceed ten days in a semester for one class at the high school level, the student shall be ineligible to take the final exam for that particular class.  If a student is absent when a final exam is given, he/she must present a doctor's excuse in order to make up the exam.  The exam must be made up by the last day of the semester for students.  If circumstances prevent the student from meeting this deadline then an appeal may be made to the principal.

A passing score on each section of the Georgia Graduation Test is REQUIRED FOR GRADUATION.  The test report for each student will be sent home beginning in the spring of the eleventh grade and periodically thereafter until passing scores have been achieved.  Summer school remedial sessions are offered for all students who do not pass the graduation test.

The school staff is interested in providing the best education possible for your child.  Close cooperation between home and school contributes toward accomplishing this purpose.  Every effort is made to help your child experience success and make progress; but progress also depends upon attitude, a willingness to work, and regular attendance.

We will be happy to arrange conferences with you to discuss the progress of your child.  Please call the counseling office, (404) 370-4423, for an appointment.

Parent(s)/Guardian(s) - Report is mailed and need not be returned.  This copy is for your records.

Form AH
Revised 1999

# DECATUR HIGH SCHOOL
Decatur, Georgia 30030
## Report Card

CITY SCHOOLS OF DECATUR
IDA H. LOVE, Superintendent
KAREN M. ELDRIDGE, Principal

COMMENT CODES

The student is:

1. improving in this course
2. demonstrating quality work
3. showing outstanding ability
4. achieving below ability
5. not bringing books or materials to class
6. not completing assignments regularly
7. displaying poor study habits
8. displaying good study habits
9. needing to participate more in class discussions
10. a cooperative student
11. a pleasure to teach
12. not working well or cooperatively with others
13. talking excessively during class
14. inattentive during class
15. failing to respect authority
16. needing to improve his/her attitude
17. improving in class behavior
18. excessively tardy
19. excessively absent

**Jones, Sara Kathryn**

Report Card     Semester 1     1999-2000    Grade   1 2

Absent: 4       Tardy: 2

| Course No. | Course Name | Teacher | Grade | Exam | Conduct | Abs | Comments |
|---|---|---|---|---|---|---|---|
| 27072000 | AP Calculus* | Gardner | 90 | F | A | 3 | 11 |
| 50081200 | AP ArtPortfolio | Keith-Ott | 95 | N | A | | |
| 70031000 | DSCreativeMusicComp | Nelson2 | 99 | N | A | 1 | 3 |
| 00000000 | JE Psychology* | Pearson c | 98 | N | A | | |



| | | |
|---|---|---|
| A = 93-100 | Excellent | ^A grade of F in conduct will |
| B = 85-92 | Above Average | affect eligibility in some |
| C = 77-84 | Average | athletic and school organizations |
| D = 70-76 | Below Average | or elected offices. |
| F = Below 70 | Failure^ | *Indicates Core Course |

<u>IMPORTANT</u>

All subjects are normally scheduled for a semester. A Carnegie unit is earned when a course is passed. Students receive half a credit for the following courses: Band (1st semester), Health, and Introduction to Team Sports. The final semester grade includes the final examination grade.

Grades are affected by attendance; a student who is absent from school for an entire day or any portion of the day shall bring a signed note from his/her parent/guardian explaining the reason(s) for the absence. The absence will be excused or unexcused based on the state board rule indicating that absences from school may be excused for the following reasons: (1) personal illness for which attendance in school would endanger the student's health or the health of others; (2) serious illness or death in the student's immediate family; (3) special and recognized holidays observed by the student's faith; (4) order of governmental agencies (i.e., a court order); (5) conditions rendering school attendance impossible or hazardous to the student's health or safety; (6) students serving as a page in the Georgia General Assembly; and (7) student voter registration (one day only). An absence shall be designated unexcused if appropriate documentation is not provided according to state guidelines within three days of the absence.

When unexcused absences exceed ten days in a semester for one class at the high school level, the student shall be ineligible to take the final exam for that particular class. If a student is absent when a final exam is given, he/she must present a doctor's excuse in order to make up the exam. The exam must be made up by the last day of the semester for students. If circumstances prevent the student from meeting this deadline then an appeal may be made to the principal.

A passing score on each section of the Georgia Graduation Test is REQUIRED FOR GRADUATION. The test report for each student will be sent home beginning in the spring of the eleventh grade and periodically thereafter until passing scores have been achieved. Summer school remedial sessions are offered for all students who do not pass the graduation test.

The school staff is interested in providing the best education possible for your child. Close cooperation between home and school contributes toward accomplishing this purpose. Every effort is made to help your child experience success and make progress; but progress also depends upon attitude, a willingness to work, and regular attendance.

We will be happy to arrange conferences with you to discuss the progress of your child. Please call the counseling office, (404) 370-4423, for an appointment.

**Parent(s)/Guardian(s)** - Report is mailed and need not be returned. This copy is for your records.

Form AH
Revised 1998

# DECATUR HIGH SCHOOL
Decatur, Georgia  30030
## Report Card

CITY SCHOOLS OF DECATUR

IDA H. LOVE, Superintendent

KAREN M. ELDRIDGE, Principal

COMMENT CODES

The student is:

1. improving in this course
2. demonstrating quality work
3. showing outstanding ability
4. achieving below ability
5. not bringing books or materials to class
6. not completing assignments regularly
7. displaying poor study habits
8. displaying good study habits
9. needing to participate more in class discussions
10. a cooperative student
11. a pleasure to teach
12. not working well or cooperatively with others
13. talking excessively during class
14. inattentive during class
15. failing to respect authority
16. needing to improve his/her attitude
17. improving in class behavior
18. excessively tardy
19. excessively absent

Jones, Sara  Kathryn

Report Card - Semester 1  1998-99 Grade  11

Absent: 0              Tardy: 3

| Course No. | Course Name | Teacher | Grade | Exam | Conduct | Abs | Comments |
|---|---|---|---|---|---|---|---|
| 53039100 | Advanced Band I | Anderson6 | 97 | N | A | | |
| 22043000 | APLangComp11 * | Cassell 10 | 93 | A | A | 5 | 11 |
| 23031000 | Writer's Worksh* | Cassell 10 | 89 | A | A | 6 | 11 |
| 50021200 | Vis Arts/Co II | Fowlkes | 96 | N | A | 3 | 11 |
| 27065000 | Adv  Alg/Trig* | Vaughn | 94 | C | A | 5 | 11 |

| | | |
|---|---|---|
| A = 93-100 | Excellent | *A grade of F in conduct will affect eligibility in some athletic and school organizations or elected offices. |
| B = 85-92 | Above Average | |
| C = 77-84 | Average | |
| D = 70-76 | Below Average | |
| F = Below 70 | Failure* | |



## IMPORTANT

All subjects are normally scheduled for a semester.  A Carnegie unit is earned when a course is passed.  Students receive half a credit for the following courses:  American Political Behavior, Economics Honors, Band (1st semester), Citizenship, Economics, Health, and Introduction to Team Sports.  The final semester grade includes 20% for the final examination.

Grades are affected by attendance; a student who is absent from school for an entire day or any portion of the day shall bring a signed note from his/her parent/guardian explaining the reason(s) for the absence.  The absence will be excused or unexcused based on the state board rule indicating that absences from school may be excused for the following reasons:  (1) personal illness for which attendance in school would endanger the student's health or the health of others; (2) serious illness or death in the student's immediate family; (3) special and recognized holidays observed by the student's faith; (4) order of governmental agencies (i.e., a court order); (5) conditions rendering school attendance impossible or hazardous to the student's health or safety; (6) students serving as a page in the Georgia General Assembly; and (7) student voter registration (one day only).  An absence shall be designated unexcused if it cannot be validated according to state guidelines within three days of the absence.

When unexcused absences exceed ten days in a semester for one class at the high school level, the student shall be ineligible to take the final exam for that particular class.  If a student is absent when a final exam is given, he/she must present a doctor's excuse in order to make up the exam.  The exam must be made up by the last day of the semester for students.  If circumstances prevent the student from meeting this deadline then an appeal may be made to the principal.

A passing score on each section of the Georgia Graduation Test is REQUIRED FOR GRADUATION.  The test report for each student will be sent home beginning in the spring of the eleventh grade and periodically thereafter until passing scores have been achieved.  Summer school remedial sessions are offered for all students who do not pass the graduation test.

The school staff is interested in providing the best education possible for your child.  Close cooperation between home and school contributes toward accomplishing this purpose.  Every effort is made to help your child experience success and make progress; but progress also depends upon attitude, a willingness to work, and regular attendance.

We will be happy to arrange conferences with you to discuss the progress of your child.  Please call the counseling office, (404) 370-4423, for an appointment.

Parent(s)/Guardian(s) - Report is mailed and need not be returned.  This copy is for your records.

Revised 1998

# DECATUR HIGH SCHOOL
Decatur, Georgia 30030
## Report Card

CITY SCHOOLS OF DECATUR
IDA H. LOVE, Superintendent
KAREN M. ELDRIDGE, Principal

**Jones, Sara Kathryn**

Report Card - Semester 2   1998-99       Grade 11

Absent: 3       Tardy: 0

| Course No. | Course Name | Teacher | Grade | Exam | Conduct | Abs | Comments |
|---|---|---|---|---|---|---|---|
| 53038200 | Advanced Band II | Anderson6 | 98 | N | A | 1 | |
| 70031000 | DS-1 Pottery | Fowlkes | 95 | N | A | 6 | |
| 45054000 | Am Pol Beh Hon* | Maupin | 96 | C | A | 7 | 11 |
| 45061000 | Economics*Hon | Maupin3 | 96 | C | A | 7 | 11 |
| 40651000 | Chemistry I* | Winterscheid | 95 | A | A | 6 | 2   11 |

COMMENT CODES
The student is:
1. Improving in this course
2. demonstrating quality work
3. showing outstanding ability
4. achieving below ability
5. not bringing books or materials to class
6. not completing assignments regularly
7. displaying poor study habits
8. displaying good study habits
9. needing to participate in class discussions
10. a cooperative student
11. a pleasure to teach
12. not working well or cooperatively with others
13. talking excessively during class
14. inattentive during class
15. failing to respect authority
16. needing to improve his/her attitude
17. improving in class behavior
18. excessively tardy
19. excessively absent

| | |
|---|---|
| A = 93-100 | Excellent |
| B = 85-92 | Above Average |
| C = 77-84 | Average |
| D = 70-78 | Below Average |
| F = Below 70 | Failure* |

*A grade of F in conduct will affect eligibility in some athletic and school organizations or elected offices.



**IMPORTANT**

All subjects are normally scheduled for a semester. A Carnegie unit is earned when a course is passed. Students receive half a credit for the following courses: American Political Behavior, Economics Honors, Band (1st semester), Citizenship, Economics, Health, and Introduction to Team Sports. The final semester grade includes 20% for the final examination.

Grades are affected by attendance; a student who is absent from school for an entire day or any portion of the day shall bring a signed note from his/her parent/guardian explaining the reason(s) for the absence. The absence will be excused or unexcused based on the state board rule indicating that absences from school may be excused for the following reasons: (1) personal illness for which attendance in school would endanger the student's health or the health of others; (2) serious illness or death in the student's immediate family; (3) special and recognized holidays observed by the student's faith; (4) order of governmental agencies (i.e., a court order); (5) conditions rendering school attendance impossible or hazardous to the student's health or safety; (6) students serving as a page in the Georgia General Assembly; and (7) student voter registration (one day only). An absence shall be designated unexcused if it cannot be validated according to state guidelines within three days of the absence.

When unexcused absences exceed ten days in a semester for one class at the high school level, the student shall be ineligible to take the final exam for that particular class. If a student is absent when a final exam is given, he/she must present a doctor's excuse In order to make up the exam. The exam must be made up by the last day of the semester for students. If circumstances prevent the student from meeting this deadline then an appeal may be made to the principal.

A passing score on each section of the Georgia Graduation Test is REQUIRED FOR GRADUATION. The test report for each student will be sent home beginning in the spring of the eleventh grade and periodically thereafter until passing scores have been achieved. Summer school remedial sessions are offered for all students who do not pass the graduation test.

The school staff is interested in providing the best education possible for your child. Close cooperation between home and school contributes toward accomplishing this purpose. Every effort is made to help your child experience success and make progress; but progress also depends upon attitude, a willingness to work, and regular attendance.

We will be happy to arrange conferences with you to discuss the progress of your child. Please call the counseling office, (404) 370-4423, for an appointment.

**Parent(s)/Guardian(s)** - Report is mailed and need not be returned. This copy is for your records.

Form AA
Revised 1997

## DECATUR HIGH SCHOOL
### DECATUR, GEORGIA 30030

CITY SCHOOLS OF DECATUR
IDA H. LOVE, Superintendent
WILLIAM J. FUNK, Principal

COMMENT CODES

The student is:

1. improving in this course
2. demonstrating quality work
3. showing outstanding ability
4. achieving below ability
5. not bringing books or materials to class
6. not completing assignments regularly
7. displaying poor study habits
8. displaying good study habits
9. needing to participate more in class discussions
10. a cooperative student
11. a pleasure to teach
12. not working well or cooperatively with others
13. talking excessively during class
14. inattentive during class
15. fails to respect authority
16. needing to improve his/her attitude
17. improving in class behavior
18. excessively tardy
19. excessively absent

Jones, Sara Kathryn

Report Card - Semester 1   1997-98         Grade 10

Absent  1          Tardy  0

| Course No | Course Name | Teacher | Grade | Exam | Conduct | Abs | Comments |
|-----------|-------------|---------|-------|------|---------|-----|----------|
| 53.0072 | Intermediate Band II | Anderson4 | 90 | C | A | 3 | |
| 20.525 | Care of Child I | Black | 96 | A | A | 1 | 3    11 |
| 50.0211 | Visual Art/Comp I | Fowlkes | 95 | A | A | | |
| 26.0114 | Biology I Honors | Maxfield | 90 | A | A | 1 | 11 |
| 45.082 | US History  AP | Nielsen | 95 | A | A | 1 | 11 |

| | |
|---|---|
| A = 93-100  Excellent | *A grade of F in conduct will |
| B = 85-92  Above Average | affect eligibility in some |
| C = 77-84  Average | athletic and school organizations |
| D = 70-78  Below Average | or elected offices. |
| F = Below 70  Failure* | |



### IMPORTANT

All subjects are normally scheduled for a semester.  A Carnegie unit is earned when a course is passed.  The final semester grade includes 20% for the final examination.

Grades are affected by attendance; a statement of reason for absence must be written by the parent or guardian for each absence.  A student with excessive absences must have an excusable absence signed by a doctor in order to receive credit for the semester's work.  Only lawful absences are excused.  Lawful absences according to the compulsory attendance law are the following: "Children may be temporarily excused from school (1) who are personally ill--whose attendance would endanger their health or the health or others; (2) in whose immediate family there is a serious illness or death which would reasonably necessitate absence from school; (3) on special and recognized religious holidays observed by their faith; (4) when absence is mandated by order of governmental agencies, e.g.; preinduction physical examination for service in armed forces, or court order."

A passing score on each section of the Georgia Graduation Test is REQUIRED FOR GRADUATION.  The test report for each student will be sent home beginning in the spring of the eleventh grade and periodically thereafter until passing scores have been achieved.

The school staff is interested in providing the best education possible for your child.  Close cooperation between home and school contributes toward accomplishing this purpose.  Every effort is made to help your child experience success and make progress; but progress also depends upon attitude, a willingness to work, and regular attendance.

We will be happy to arrange conferences with you to discuss the progress of your child.  Please call the counseling office, 370-4423, for an appointment.

Parent/Guardians-Report is mailed and need not be returned.    This copy is for your records.

Form AH
Revised 1997

# DECATUR HIGH SCHOOL
## DECATUR, GEORGIA 30030

CITY SCHOOLS OF DECATUR
IDA H. LOVE, Superintendent
WILLIAM J. FUNK, Principal

## Jones, Sara Kathryn

**Report Card - Semester 2  1997-98**          Grade 10

Absent: 2          Tardy: 1

| Course No. | Course Name | Teacher | Grade | Exam | Conduct | Abs | Comments |
|---|---|---|---|---|---|---|---|
| 7.064 | Algebra II | Flemons | 93 | C | A | 2 | |
| 3.0514 | Am Lit/Comp10 | Cassell | 95 | A | A | 1 | 9 |
| 3.0372 | Concert Band II | Anderson6 | 99 | N | A | | |
| 8.521 | Graphic Arts I | Fowlkes | 97 | A | A | 2 | |

COMMENT CODES

The student is:

1. improving in this course
2. demonstrating quality work
3. showing outstanding ability
4. achieving below ability
5. not bringing books or materials to class
6. not completing assignments regularly
7. displaying poor study habits
8. displaying good study habits
9. needing to participate more in class discussions
10. a cooperative student
11. a pleasure to teach
12. not working well or cooperatively with others
13. talking excessively during class
14. inattentive during class
15. fails to respect authority
16. needing to improve his/her attitude
17. improving in class behavior
18. excessively tardy
19. excessively absent

| | |
|---|---|
| A = 93-100  Excellent | *A grade of F in conduct will affect eligibility in some athletic and school organizations or elected offices. |
| B = 85-92  Above Average | |
| C = 77-84  Average | |
| D = 70-76  Below Average | |
| F = Below 70 Failure* | |

IMPORTANT

All subjects are normally scheduled for a semester.  A Carnegie unit is earned when a course is passed.  The final semester grade includes 20% for the final examination.

Grades are affected by attendance; a statement of reason for absence must be written by the parent or guardian for each absence.  A student with excessive absences must have an excusable absence signed by a doctor in order to receive credit for the semester's work.  Only lawful absences are excused.  Lawful absences according to the compulsory attendance law are the following: "Children may be temporarily excused from school (1) who are personally ill--whose attendance would endanger their health or the health of others; (2) in whose immediate family there is a serious illness or death which would reasonably necessitate absence from school; (3) on special and recognized religious holidays observed by their faith; (4) when absence is mandated by order of governmental agencies, e.g.: preinduction physical examination for service in armed forces, or court order."

A passing score on each section of the Georgia Graduation Test is REQUIRED FOR GRADUATION.  The test report for each student will be sent home beginning in the spring of the eleventh grade and periodically thereafter until passing scores have been achieved.

The school staff is interested in providing the best education possible for your child.  Close cooperation between home and school contributes toward accomplishing this purpose.  Every effort is made to help your child experience success and make progress; but progress also depends upon attitude, a willingness to work, and regular attendance.

We will be happy to arrange conferences with you to discuss the progress of your child.  Please call the counseling office, 370-4423, for an appointment.

Parent/Guardians-Report is mailed and need not be returned.   This copy is for your records.

# DECATUR HIGH SCHOOL
## DECATUR, GEORGIA 30030

CITY SCHOOLS OF DECATUR
DON L. GRIFFITH, Superintendent
WILLIAM J. FUNK, Principal

Jones, Sara Kathryn

Report Card – Semester 1 1996-97    Grade 9

Absent: 0    Tardy: 0

| Course No. | Course Name | Teacher | Grade | Exam | Conduct | Abs | Comments | |
|---|---|---|---|---|---|---|---|---|
| 53.0371 | Intermediate Band I | Anderson 3 | 98 | N | B | | | |
| 23.0614 | Lit/Comp 9Honors | Cassell | 88 | A | B | | 11 | 10 |
| 40.0114 | Physical Science | Gillham | 80 | A | A | | | |
| 60.011 | French I | Greene | 91 | A | A | | | |
| 36.011 | Phy Ed/Health J | Januzelli | 93 | A | A | 1 | 10 | |

COMMENT CODES

The student is:

1. improving in this course
2. demonstrating quality work
3. showing outstanding ability
4. achieving below ability
5. not bringing books or materials to class
6. not completing assignments regularly
7. displaying poor study habits
8. displaying good study habits
9. needing to participate more in class discussions
10. a cooperative student
11. a pleasure to teach
12. not working well or cooperatively with others
13. talking excessively during class
14. inattentive during class
15. fails to respect authority
16. needing to improve his/her attitude
17. improving in class behavior
18. excessively tardy
19. excessively absent

| | |
|---|---|
| A = 93 - 100  Excellent | |
| B = 85 - 92   Above average | *A grade of F in conduct will |
| C = 77 - 84   Average | affect eligibility in some |
| D = 70 - 76   Below average | athletic and school organizations |
| F = Below 70 Failure* | or elected offices |



IMPORTANT

All subjects are normally scheduled for a semester. A Carnegie unit is earned when a course is passed. The final semester grade includes 20% for the final examination.

Grades are affected by attendance; a statement of reason for absence must be written by the parent or guardian for each absence. A student with excessive absences must have an excusable absence signed by a doctor in order to receive credit for the semester's work. Only lawful absences are excused. Lawful absences according to the compulsory attendance law are the following: "Children may be temporarily excused from school (1) who are personally ill--whose attendance would endanger their health or the health or others; (2) in whose immediate family there is a serious illness or death which would reasonably necessitate absence from school; (3) on special and recognized religious holidays observed by their faith; (4) when absence is mandated by order of governmental agencies, e.g.: preinduction physical examination for service in armed forces, or court order."

A passing score on each section of the Georgia Graduation Test is REQUIRED FOR GRADUATION. The test report for each student will be sent home beginning in the spring of the eleventh grade and periodically thereafter until passing scores have been achieved.

The school staff is interested in providing the best education possible for your child. Close cooperation between home and school contributes toward accomplishing this purpose. Every effort is made to help your child experience success and make progress, but progress also depends upon attitude, a willingness to work, and regular attendance.

We will be happy to arrange conferences with you to discuss the progress of your child. Please call the counseling office, 370-4423, for an appointment.

Parents/Guardians: Report card should be signed and need not be returned. This copy is for your record.

## DECATUR  HIGH  SCHOOL
### DECATUR,  GEORGIA  30030

CITY SCHOOLS OF DECATUR
DON L. GRIFFITH, Superintendent
WILLIAM J. FUNK, Principal

Jones, Sara Kathryn

**Report Card – Semester 2 1996-97**          Grade 9

Absent: 0          Tardy: 0

COMMENT CODES

The student is:

| CourseNo. | Course Name | Teacher | Grade | Exam | Conduct | Abs | Comments |
|-----------|-------------|---------|-------|------|---------|-----|----------|
| 3.0371 | Concert Band I | Anderson5 | 97 | N | A | | |
| 5.0834 | World Hist Honors | Brown | 87 | C | B | 2 | |
| 7.0634 | Eucl Geometry | Flemons | 88 | D | A | | |
| 0.012 | French Ii | Sessions | 82 | B | B | | |

1.  improving in this course
2.  demonstrating quality work
3.  showing outstanding ability
4.  achieving below ability
5.  not bringing books or materials to class
6.  not completing assignments regularly
7.  displaying poor study habits
8.  displaying good study habits
9.  needing to participate more in class discussions
10.  a cooperative student
11.  a pleasure to teach
12.  not working well or cooperatively with others
13.  talking excessively during class
14.  inattentive during class
15.  fails to respect authority
16.  needing to improve his/her attitude
17.  improving in class behavior
18.  excessively tardy
19.  excessively absent

| | |
|---|---|
| A = 93 -100  Excellent<br>B = 85 - 92  Above average<br>C = 77 - 84  Average<br>D = 70 - 76  Below average<br>F = Below 70  Failure* | *A grade of F in conduct will<br> affect eligibility in some<br> athletic and school organizations<br> or elected offices. |



**IMPORTANT**

All subjects are normally scheduled for a semester.  A Carnegie unit is earned when a course is passed.  The final semester grade includes 20% for the final examination.

Grades are affected by attendance; a statement of reason for absence must be written by the parent or guardian for each absence.  A student with excessive absences must have an excusable absence signed by a doctor in order to receive credit for the semester's work.  Only lawful absences are excused.  Lawful absences according to the compulsory attendance law are the following: "Children may be temporarily excused from school (1) who are personally ill--whose attendance would endanger their health or the health or others; (2) in whose immediate family there is a serious illness or death which would reasonably necessitate absence from school; (3) on special and recognized religious holidays observed by their faith; (4) when absence is mandated by order of governmental agencies, e.g., preinduction physical examination for service in armed forces, or court order."

A passing score on each section of the Georgia Graduation Test is REQUIRED FOR GRADUATION.  The test report for each student will be sent home beginning in the spring of the eleventh grade and periodically thereafter until passing scores have been achieved.

The school staff is interested in providing the best education possible for your child.  Close cooperation between home and school contributes toward accomplishing this purpose.  Every effort is made to help your child experience success and make progress; but progress also depends upon attitude, a willingness to work, and regular attendance.

We will be happy to arrange conferences with you to discuss the progress of your child.  Please call the counseling office, 370-4423, for an appointment.

Parent/Guardians- Report is mailed and need not be returned.  This copy is for your record.

# EXHIBIT T

https://oscar.gatech.edu/pls/bprod/bwskotrn.P_ViewTran



1074935   5-316-720-1
Ga Tech grades-College Re

# Display Transcript

901424789 Sara K. Jones
Jan 02, 2014 04:07 pm

If you received a grade of "NR", your instructor did not report grades. Please contact the instructor for assistance.

 This is NOT an official transcript. Courses which are in progress may also be included on this transcript.

**The "PASSED HOURS" column should be ignored. It is used for calculations by the Board of Regents and is not a true indicator of passed hours. Students should view "EARNED HOURS" instead.**

**The last column ("R") indicates repeated courses. \*\*If an "E" is in the last column, the grade has been excluded as a result of the grade substitution policy. All grades received at Georgia Tech are included in GPA calculation with the exception of those removed via grade substitution. Click this Grade Substitution link to review the policy.**

Transfer Credit    Institution Credit    Transcript Totals

*Transcript Data*
**STUDENT INFORMATION**

**Name :**                Sara K. Jones
**Birth Date:**
**Curriculum Information**

**Current Program**
**Major and Department:**        Biology, Sch/Biology

\*\*\*This is NOT an Official Transcript\*\*\*

**DEGREES AWARDED**

| | | | |
|---|---|---|---|
| **Degree Awarded:** | BS in Applied Biology | **Degree Date:** | Aug 04, 2006 |
| **Institutional Honors:** | Honor | | |
| **Departmental Honors:** | Cooperative Plan | | |

**Curriculum Information**

**Primary Degree**
**Major:**                    Applied Biology
**Minor:**                    Japanese

**TRANSFER CREDIT ACCEPTED BY INSTITUTION        -Top-**

\*Advanced Placement, Col Board

| Subject | Course | Title | Grade | Credit Hours | Quality Points | **R** |
|---|---|---|---|---|---|---|

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points |
|---------|--------|--------|-------|-------|-------|--------------|----------------|
| ENGL | 1102 | Georgia Tech-Atlanta * | US | English Composition II | A | 3.000 | 12.00 |
| MATH | 1502 | Georgia Tech-Atlanta * | US | Calculus II | B | 4.000 | 12.00 |

### Term Totals (Undergraduate Semester)

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Current Term: | 14.000 | 14.000 | 14.000 | 14.000 | 42.00 | 3.00 |
| Cumulative: | 28.000 | 28.000 | 28.000 | 28.000 | 81.00 | 2.89 |

Unofficial Transcript

**Major:** Chemistry
**Academic Standing:** Good Standing

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points | Start and End Dates | R |
|---------|--------|--------|-------|-------|-------|--------------|----------------|--------------------|---|
| LCC | 2500 | Georgia Tech-Atlanta * | US | Intro to Film | A | 3.000 | 12.00 | | |
| MATH | 2401 | Georgia Tech-Atlanta * | US | Calculus III | A | 4.000 | 16.00 | | |

### Term Totals (Undergraduate Semester)

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Current Term: | 7.000 | 7.000 | 7.000 | 7.000 | 28.00 | 4.00 |
| Cumulative: | 35.000 | 35.000 | 35.000 | 35.000 | 109.00 | 3.11 |

Unofficial Transcript

**Major:** Chemistry
**Academic Standing:** Good Standing

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points | Start and End Dates | R |
|---------|--------|--------|-------|-------|-------|--------------|----------------|--------------------|---|
| COOP | 2008 | Georgia Tech-Atlanta * | US | Fall Co-op Assignment | V | 12.000 | 0.00 | | |

### Term Totals (Undergraduate Semester)

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Current Term: | 12.000 | 0.000 | 0.000 | 0.000 | 0.00 | 0.00 |
| Cumulative: | 47.000 | 35.000 | 35.000 | 35.000 | 109.00 | 3.11 |

Unofficial Transcript

**Major:** Chemistry
**Academic Standing:** Good Standing

| Subject | Course | Campus | | Level | Title | Grade | Credit Hours | Quality Points | Start and End Dates | R |
|---------|--------|--------|--|-------|-------|-------|--------------|----------------|---------------------|---|
| BIOL | 1520 | Georgia Tech-Atlanta * | US | | Intro To Organismal Biol | C | 4.000 | 8.00 | | |
| CHEM | 1313 | Georgia Tech-Atlanta * | US | | Quantitative Analysis | W | 3.000 | 0.00 | | |
| CHEM | 2311 | Georgia Tech-Atlanta * | US | | Organic Chemistry I | B | 3.000 | 9.00 | | |
| PSYC | 2240 | Georgia Tech-Atlanta * | US | | Personality Theory | B | 3.000 | 9.00 | | |

**Term Totals (Undergraduate Semester)**

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Current Term: | 13.000 | 10.000 | 10.000 | 10.000 | 26.00 | 2.60 |
| Cumulative: | 60.000 | 45.000 | 45.000 | 45.000 | 135.00 | 3.00 |

Unofficial Transcript

| **Major:** | Chemistry |
|---|---|
| **Academic Standing:** | Good Standing |

| Subject | Course | Campus | | Level | Title | Grade | Credit Hours | Quality Points | Start and End Dates | R |
|---------|--------|--------|--|-------|-------|-------|--------------|----------------|---------------------|---|
| COOP | 2005 | Georgia Tech-Atlanta * | US | | Summer Co-op Assignment | V | 12.000 | 0.00 | | |

**Term Totals (Undergraduate Semester)**

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Current Term: | 12.000 | 0.000 | 0.000 | 0.000 | 0.00 | 0.00 |
| Cumulative: | 72.000 | 45.000 | 45.000 | 45.000 | 135.00 | 3.00 |

Unofficial Transcript

| **Major:** | Applied Biology |
|---|---|
| **Academic Standing:** | Good Standing |
| **Additional Standing:** | Dean's List |

| Subject | Course | Campus | | Level | Title | Grade | Credit Hours | Quality Points | Start and End Dates | R |
|---------|--------|--------|--|-------|-------|-------|--------------|----------------|---------------------|---|
| BIOL | 3310 | Georgia Tech-Atlanta * | US | | Intro Microbiology | B | 4.000 | 12.00 | | |
| CHEM | 1312 | Georgia Tech-Atlanta * | US | | Inorganic Chem Lab I | A | 1.000 | 4.00 | | |
| CHEM | 2312 | Georgia Tech-Atlanta * | US | | Organic Chemistry II | A | 3.000 | 12.00 | | |
| MUSI | 3610 | Georgia Tech-Atlanta * | US | | Composers 1500-1800 | A | 2.000 | 8.00 | | |

https://oscar.gatech.edu/pls/bprod/bwskotrn.P_ViewTran

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points |
|---|---|---|---|---|---|---|---|
| PUBP | 3000 | Georgia Tech-Atlanta * | US | US Constitutional Issues | A | 3.000 | 12.00 |

**Term Totals (Undergraduate Semester)**

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Current Term: | 13.000 | 13.000 | 13.000 | 13.000 | 48.00 | 3.69 |
| Cumulative: | 85.000 | 58.000 | 58.000 | 58.000 | 183.00 | 3.15 |

Unofficial Transcript

**Major:** Applied Biology
**Academic Standing:** Good Standing
**Additional Standing:** Dean's List

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points | Start and End Dates | R |
|---|---|---|---|---|---|---|---|---|---|
| BIOL | 2334 | Georgia Tech-Atlanta * | US | Genetics | A | 4.000 | 16.00 | | |
| BIOL | 3331 | Georgia Tech-Atlanta * | US | Cell Biology | B | 4.000 | 12.00 | | |
| CHEM | 2380 | Georgia Tech-Atlanta * | US | Synthesis Lab I | B | 2.000 | 6.00 | | |
| JAPN | 1001 | Georgia Tech-Atlanta * | US | Elementary Japanese I | A | 4.000 | 16.00 | | |

**Term Totals (Undergraduate Semester)**

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Current Term: | 14.000 | 14.000 | 14.000 | 14.000 | 50.00 | 3.57 |
| Cumulative: | 99.000 | 72.000 | 72.000 | 72.000 | 233.00 | 3.23 |

Unofficial Transcript

**Major:** Applied Biology
**Academic Standing:** Good Standing

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points | Start and End Dates | R |
|---|---|---|---|---|---|---|---|---|---|
| COOP | 4005 | Georgia Tech-Atlanta * | US | Summer Co-op Assignment | V | 12.000 | 0.00 | | |

**Term Totals (Undergraduate Semester)**

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Current Term: | 12.000 | 0.000 | 0.000 | 0.000 | 0.00 | 0.00 |
| Cumulative: | 111.000 | 72.000 | 72.000 | 72.000 | 233.00 | 3.23 |

Unofficial Transcript

**Major:** Applied Biology

1/2/2014 4:08 PM

**Academic Standing:** Good Standing
**Additional Standing:** Dean's List

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points | Start and End Dates | R |
|---------|--------|--------|-------|-------|-------|--------------|----------------|---------------------|---|
| BIOL | 3751 | Georgia Tech-Atlanta * | US | Anatomy & Physiology | B | 3.000 | 9.00 | | |
| BIOL | 4220 | Georgia Tech-Atlanta * | US | Bacterial/Viral Genetics | B | 3.000 | 9.00 | | |
| CS | 1315 | Georgia Tech-Atlanta * | US | Intro Media Computation | A | 3.000 | 12.00 | | |
| JAPN | 1002 | Georgia Tech-Atlanta * | US | Elementary Japanese II | A | 4.000 | 16.00 | | |

**Term Totals (Undergraduate Semester)**

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|--|---------------|--------------|--------------|-----------|----------------|-----|
| Current Term: | 13.000 | 13.000 | 13.000 | 13.000 | 46.00 | 3.53 |
| Cumulative: | 124.000 | 85.000 | 85.000 | 85.000 | 279.00 | 3.28 |

Unofficial Transcript

**Major:** Applied Biology
**Academic Standing:** Good Standing

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points | Start and End Dates | R |
|---------|--------|--------|-------|-------|-------|--------------|----------------|---------------------|---|
| COOP | 4001 | Georgia Tech-Atlanta * | US | Spring Co-op Assignment | V | 12.000 | 0.00 | | |

**Term Totals (Undergraduate Semester)**

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|--|---------------|--------------|--------------|-----------|----------------|-----|
| Current Term: | 12.000 | 0.000 | 0.000 | 0.000 | 0.00 | 0.00 |
| Cumulative: | 136.000 | 85.000 | 85.000 | 85.000 | 279.00 | 3.28 |

Unofficial Transcript

**Major:** Applied Biology
**Academic Standing:** Good Standing

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points | Start and End Dates | R |
|---------|--------|--------|-------|-------|-------|--------------|----------------|---------------------|---|
| BIOL | 3332 | Georgia Tech-Atlanta * | US | Statistical & Math Biol | B | 4.000 | 12.00 | | |
| PHYS | 2211 | Georgia Tech-Atlanta * | US | Intro Physics I | A | 4.000 | 16.00 | | |
| PSYC | 2220 | Georgia Tech-Atlanta * | US | Industrial/Organiz Psy | A | 3.000 | 12.00 | | |

**Term Totals (Undergraduate Semester)**

Academic Transcipt

https://oscar.gatech.edu/pls/bprod/bwskotrn.P_ViewTran

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Current Term: | 11.000 | 11.000 | 11.000 | 11.000 | 40.00 | 3.63 |
| Cumulative: | 147.000 | 96.000 | 96.000 | 96.000 | 319.00 | 3.32 |

Unofficial Transcript

**Major:** Applied Biology
**Academic Standing:** Good Standing

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points | Start and End Dates | R |
|---|---|---|---|---|---|---|---|---|---|
| BIOL | 4464 | Georgia Tech-Atlanta * | US | Developmental Biology | W | 3.000 | 0.00 | | |
| BIOL | 4802 | Georgia Tech-Atlanta * | US | Special Topics Cancer Biol & Biotechnology | A | 2.000 | 8.00 | | |
| CHEM | 4511 | Georgia Tech-Atlanta * | US | Biochemistry I | C | 3.000 | 6.00 | | |
| JAPN | 2001 | Georgia Tech-Atlanta * | US | Intermediate Japanese I | A | 3.000 | 12.00 | | |
| PHYS | 2212 | Georgia Tech-Atlanta * | US | Intro-Physics II | C | 4.000 | 8.00 | | |

**Term Totals (Undergraduate Semester)**

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Current Term: | 15.000 | 12.000 | 12.000 | 12.000 | 34.00 | 2.83 |
| Cumulative: | 162.000 | 108.000 | 108.000 | 108.000 | 353.00 | 3.26 |

Unofficial Transcript

**Major:** Applied Biology
**Academic Standing:** Good Standing

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points | Start and End Dates | R |
|---|---|---|---|---|---|---|---|---|---|
| BIOL | 4290 | Georgia Tech-Atlanta * | US | Recombinant DNA Proj Lab | B | 3.000 | 9.00 | | |
| BIOL | 4450 | Georgia Tech-Atlanta * | US | Senior Seminar | B | 1.000 | 3.00 | | |
| CHEM | 4512 | Georgia Tech-Atlanta * | US | Biochemistry II | B | 3.000 | 9.00 | | |
| JAPN | 2002 | Georgia Tech-Atlanta * | US | Intermediate Japanese II | B | 3.000 | 9.00 | | |

**Term Totals (Undergraduate Semester)**

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Current Term: | 10.000 | 10.000 | 10.000 | 10.000 | 30.00 | 3.00 |
| Cumulative: | 172.000 | 118.000 | 118.000 | 118.000 | 383.00 | 3.24 |

1/2/2014 4:08 PM

Academic Transcript

https://oscar.gatech.edu/pls/bprod/bwskotrn.P_ViewTran

Unofficial Transcript

**Major:** Applied Biology
**Academic Standing:** Good Standing

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points | Start and End Dates | R |
|---------|--------|--------|-------|-------|-------|--------------|----------------|---------------------|---|
| BIOL | 4464 | Georgia Tech-Atlanta * | US | Developmental Biology | A | 3.000 | 12.00 | | I |
| JAPN | 3001 | Georgia Tech-Atlanta * | US | Advanced Japanese I | A | 3.000 | 12.00 | | |

**Term Totals (Undergraduate Semester)**

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Current Term: | 6.000 | 6.000 | 6.000 | 6.000 | 24.00 | 4.00 |
| Cumulative: | 178.000 | 124.000 | 124.000 | 124.000 | 407.00 | 3.28 |

Unofficial Transcript

**Major:** Applied Biology
**Academic Standing:** Good Standing

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points | Start and End Dates | R |
|---------|--------|--------|-------|-------|-------|--------------|----------------|---------------------|---|
| BIOL | 2335 | Georgia Tech-Atlanta * | US | General Ecology | A | 3.000 | 12.00 | | |
| CHEM | 4699 | Georgia Tech-Atlanta * | US | Undergraduate Research | A | 3.000 | 12.00 | | |
| JAPN | 3002 | Georgia Tech-Atlanta * | US | Advanced Japanese II | B | 3.000 | 9.00 | | |

**Term Totals (Undergraduate Semester)**

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Current Term: | 9.000 | 9.000 | 9.000 | 9.000 | 33.00 | 3.66 |
| Cumulative: | 187.000 | 133.000 | 133.000 | 133.000 | 440.00 | 3.30 |

Unofficial Transcript

**Major:** Applied Biology
**Academic Standing:** Good Standing

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points | Start and End Dates | R |
|---------|--------|--------|-------|-------|-------|--------------|----------------|---------------------|---|
| JAPN | 3691 | Georgia Tech Studies Abroad | US | Tech & Scientific Japn | A | 3.000 | 12.00 | | |
| JAPN | 3692 | Georgia Tech Studies Abroad | US | Business Japanese | B | 3.000 | 9.00 | | |

1/2/2014 4:08 PM

Academic Transcript

https://oscar.gatech.edu/pls/bprod/bwskotrn.P_ViewTran

| JAPN | 3693 | Georgia Tech Studies Abroad | US | Japan Today | A | 3.000 | 12.00 |

**Term Totals (Undergraduate Semester)**

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Current Term: | 9.000 | 9.000 | 9.000 | 9.000 | 33.00 | 3.66 |
| Cumulative: | 196.000 | 142.000 | 142.000 | 142.000 | 473.00 | 3.33 |

Unofficial Transcript

**TRANSCRIPT TOTALS (UNDERGRADUATE SEMESTER)**   -Top-

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Total Institution: | 196.000 | 142.000 | 142.000 | 142.000 | 473.00 | 3.33 |
| Total Transfer: | 0.000 | 0.000 | 3.000 | 0.000 | 0.00 | 0.00 |
| Overall: | 196.000 | 142.000 | 145.000 | 142.000 | 473.00 | 3.33 |

Unofficial Transcript

**RELEASE: 8.4.1**

1/2/2014 4:08 PM