IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| SARA WHYTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE NO. |
| v. | ) | |
| | ) | 3:18-CV-62 |
| NATIONAL BOARD OF | ) | |
| MEDICAL EXAMINERS, | ) | |
| | ) | |
| Defendant. | ) | |

## ATTORNEYS' FEES BRIEF

A temporary restraining order was entered in this ADA case on May 21, 2018. Plaintiff has taken her USMLE test after receiving all the relief she prayed for in her complaint.[1] She now moves for attorneys' fees under 42 U.S.C. § 12205.

## ARGUMENT AND CITATION OF AUTHORITY

The Supreme Court has explained that when a plaintiff succeeds in bringing a civil rights claim, "[s]he serves as a private attorney general, vindicating a policy that Congress considered of the highest priority." Fox v. Vice, 563 U.S. 826, 833 (2011) (internal quotation marks and citation omitted); K.M. ex rel Bright v. Tustin Unified School District, 78 F. Supp. 3d 1289, 1299-1300(C.D. Cal. 2015). Prevailing parties in ADA actions are entitled to an award of attorney's fees, 42

---

[1]Under Title III of the ADA, there is no damage remedy. See Houston v. Marod Supermarkets, Inc., 733 F. 3d 1323, 1329 (11th Cir. 2013).

1

U.S.C. § 12205. A "prevailing party" should ordinarily recover an attorney's fee

unless special circumstances would render such an award unjust. <u>Barrios v.</u>

<u>California Interscholastic Federation</u>, 277 F. 3d 1128, 1134 (9th Cir. 2002) citing

<u>Hensley v. Eckerhart</u>, 461 U.S. 424, 429 (1983). <u>See</u> <u>also</u> <u>Roe v. Cheyenne</u>

<u>Mountain Conference Resorts Inc.</u>, 124 F. 3d 1221, 1232 (10th Cir. 1997). 42

U.S.C. § 12205 is interpreted broadly, since it is remedial in nature and provides

for enforcement of the ADA, a "landmark statute." <u>Nansen v. Deercreek Plaza,</u>

<u>LLC</u>, 420 F. Supp. 2d 1346, 1349 (S.D. Fla. 2006) citing <u>Newman v. Piggie Park</u>

<u>Enterprises, Inc.</u>, 390 U.S. 400, 402 (1968).[2]

## I. PLAINTIFF IS THE PREVAILING PARTY

In <u>LSO, Ltd. v. Stroh</u>, 205 F. 3d 1146, 1160-1161 (9th Cir. 2000), the Court

explained:

> The Officials appeal from the district court's order
> entered on July 7, 1998, awarding attorney's fees to LSO
> with respect to the TRO. The district court reasoned that
> because LSO obtained a TRO and therefore was able to
> hold its 1997 convention, it was the "prevailing party"
> with respect to the TRO for the purposes of a fee award
> under 42 U.S.C. § 1988(b). The district court also found
> that the Officials were the prevailing party on the other
> claims raised by LSO and awarded them costs. LSO
> appeals this award.

---

[2] In this case, plaintiff's parents were willing to foot the bill. As noted in counsel's
affidavit, any money received up to $25,000 will be returned to plaintiff. In
counsel's experience, it is rare that an individual can foot the bill.

We review the district court's award of fees pursuant
to 42 U.S.C. § 1988 for abuse of discretion. See Barjon v.
Dalton, 132 F. 3d 496, 500 (9th Cir. 1997). We also
review an award of costs for abuse of
discretion. See EEOC v. Pape Lift, Inc., 115 F. 3d 676,
680 (9th Cir. 1997).

A party "prevails" for the purposes of a fee award if it
succeeds "on any significant issue in litigation which
achieves some of the benefit [it] sought in bringing
suit." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct.
1933, 76 L.Ed. 2d 40 (1983). "[T]o be considered a
prevailing party within the meaning of § 1988, the
plaintiff must be able to point to a resolution of the
dispute which changes the legal relationship between
itself and the defendant." Texas State Teachers Ass'n v.
Garland Indep. Sch. Dist., 489 U.S. 782, 792, 109 S.Ct.
1486, 103 L.Ed. 2d 866 (1989). "[P]laintiffs seeking to
qualify as 'prevailing parties' [must] establish some sort
of clear, causal relationship between the litigation
brought and the practical outcome realized." American
Constitutional Party v. Munro, 650 F. 2d 184, 188 (9th
Cir. 1981).

The Officials contend that obtaining a TRO alone does
not qualify one for "prevailing party" status. As authority
for this assertion, they cite to decisions from three other
circuits. The officials misread these cases.
In Bisciglia v. Kenosha Unified Sch. Dist. No. 1, 45 F. 3d
223 (7th Cir. 1995), the court held that obtaining a TRO
alone does not constitute prevailing on the merits where
the TRO did no more than preserve the status quo.
See id. at 230–31. The other cases cited by the Officials
also invoked a test based on whether the status quo had
been changed. See Bly v. McLeod, 605 F. 2d 134, 137
(4th Cir. 1979)(holding that party obtaining TRO was not
a "prevailing party" because the particular TRO in
question only preserved the status quo); Paragould Music
Co. v. City Paragould, 738 F. 2d 973, 974 (8th Cir.
1984) (same).

3

It is clear that the TRO in this case did more than preserve the status quo. Here, the district court correctly noted that LSO was the prevailing party with respect to the TRO because the TRO allowed the convention and art exhibition to take place. It explained that "[t]he legal relationship between the Defendants and LSO was legally altered because the TRO prevented the Defendants from further interfering with the Art Exhibition." Thus, the district court did not abuse its discretion in awarding fees to LSO.

Because we reverse the district court's rulings in favor of the Officials on several of the claims contained in LSO's amended complaint, a new determination of "prevailing party" status with respect to these claims will have to be made at the conclusion of the proceedings on remand. Thus, we do not reach LSO's appeal of the district court's decision awarding costs to the Officials.

Sinapi v. Rhode Island Board of Bar Examiners, 2016 WL 4014587 (D. R.I.

2016), arose in the same posture of this case:

When it enacted the ADA, Congress created a "national mandate" for the elimination of pervasive societal discrimination that "denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses ...." See 42 U.S.C. § 1210l(a)-(b). In enacting the ADA, Congress sought to create "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b).

In the fee-shifting provision of the ADA and other federal civil rights statutes, Congress used the term "prevailing party" as a "legal term of art," indicating "one who has been awarded some relief by a court." Buckhannon Bd. & Care Home, Inc. v. W.

4

Virginia Dep't of Health & Human Res., 532 U.S. 598, 603 (2001). Specifically, to achieve prevailing party status, a civil rights plaintiff must first show a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989); see Hutchinson, 636 F. 3d at 9. Second, a plaintiff must show that this change in legal relationship was "judicially sanctioned," and was accompanied by "the necessary judicial imprimatur on the change." Buckhannon, 532 U.S. at 605; see Hutchinson, 636 F. 3d at 9. It is primarily this second requirement of judicial imprimatur that the Board claims Mr. Sinapi has failed to meet with his TRO. ECF No. 45 at 11-12.

The First Circuit and the Supreme Court have not spoken as to whether the judicial imprimatur requirement can be satisfied based on the court's granting of a TRO. Enforceable judgments on the merits as well as court-ordered consent decrees necessarily satisfy this requirement, Hutchinson, 636 F. 3d at 9, and the First Circuit has held that other court dispositions can also evince judicial imprimatur. See id. at ll. Notably, the Third, Fifth, Ninth, Tenth, and District of Columbia Circuits as well as the District of Massachusetts have all held that a preliminary injunction can satisfy the judicial imprimatur requirement. See People Against Police Violence v. City of Pittsburgh, 520 F. 3d 226 (3d Cir. 2008); Dearmore v. City of Garland, 519 F. 3d 517 (5th Cir. 2008); Watson v. Cty of Riverside, 300 F. 3d 1092 (9th Cir. 2002); Kansas Judicial Watch v. Stout, 653 F. 3d 1230 (10th Cir. 2011); Select Milk Producers, Inc. v. Johanns, 400 F. 3d 939 (D.C. Cir. 2005); TriCity Cmty. Action Program, Inc. v. City of Malden, 680 F. Supp. 2d 306 (D. Mass. 2010).

In the First Circuit, the inquiry into whether a specific disposition satisfies the judicial imprimatur requirement "focus[es] on substance, not form," and gives the most

weight to the "function of the order ... in determining whether it may serve as the linchpin for 'prevailing party' status." Hutchinson, 636 F. 3d at 9. Specifically, the inquiry looks to three factors: (l) a court-ordered change in legal relationship, (2) judicial approval vis-a-vis the merits of the case, and (3) judicial oversight and ability to enforce the obligations imposed on the parties. See id. (quoting Aronov v. Napolitano, 562 F. 3d 84, 90 (1st Cir. 2009)). When conducting this inquiry in the mootness context, the court looks to dispositions that were favorable to the plaintiff before those dispositions became moot. See Diffenderfer, 587 F. 3d at 453.

Mr. Sinapi is a prevailing party under the fee-shifting provision of the ADA because this Court granted a TRO in his favor, which compelled the Board to provide him with testing accommodations on the July 2015 bar exam. ECF No. 6. When this Court granted the TRO, it resolved the crux of Mr. Sinapi's dispute with the Board — the issue of whether he should be granted additional time on the bar exam because of his disability. Id. In doing so, the TRO materially altered Mr. Sinapi's legal relationship with the Board, and it vindicated Mr. Sinapi's rights under the ADA by granting him accommodations consistent with those afforded him in Massachusetts. Id. The TRO also bears this Court's official sanction, and satisfies each factor of the judicial imprimatur requirement. ECF No. 6; see Hutchinson, 636 F. 3d at 9. First, the TRO was a court-ordered, and it required the otherwise unwilling Board to grant Mr. Sinapi additional time on his exam. ECF No. 6. Second, the TRO evinced this Court's approval vis-a-vis the merits of Mr. Sinapi's ADA claim because it was grounded in this Court's assessment of his likelihood of success on the merits of that claim. Id. Finally, the TRO imposed upon the Board a patent and immediate obligation to comply, and this Court retained jurisdiction over the case after the TRO was granted. Id. Therefore, on the basis of the TRO, Mr. Sinapi is a prevailing party under the fee-shifting

provision of the ADA, and the Court turns to the issue of
the amount of his award.

Cf. Maine School Administrative District v. Mr. and Mrs. R., 321 F. 3d 9, 15-16

(1st Cir. 2003); ACLU v. Polk County, Fla., 2006 WL 2147716 (M.D. Fla. 2006)

slip at 3. Accord Doe v. Marshall, 622 F. 2d 118, 119 (5th Cir. 1980) ("The district

court found that all four factors necessary for preliminary relief were present, and

granted a temporary injunction allowing John to play football."); Bishop v.

Committee on Professional Ethics and Conduct of the Iowa State Bar Ass'n., 686

F. 2d 1278, 1280 (8th Cir. 1982) (Even preliminary or temporary relief granted by

the district court may be sufficient to make a plaintiff a 'prevailing party' under

section 1988" citing Doe; Sound v. Koller, 2010 WL 1992194 (D. Haw. 2010) slip

at 2.

Plaintiff did not merely maintain the status quo. She did in fact secure all the

injunctive relief she was entitled to. Defendant, of course, recognized this point.

This is why its brief and argument pounded on the fact that plaintiff was seeking a

mandatory injunction. Absent order from the Court, plaintiff could not have taken

the USMLE.

II.   DETERMINING THE LODESTAR

Because Plaintiff is the prevailing party in this ADA litigation, she is

entitled to reasonable attorneys' fees. In determining an objective estimate of the

value of a lawyer's services, this Court must multiply those hours reasonably

expended by a reasonable hourly rate, or compute the "lodestar." Hensley, 461

U.S. at 433; see also Norman v. Hous. Auth. of Montgomery, 836 F. 2d 1292, 1299

(11th Cir. 1988); Loranger v. Stierheim, 10 F. 3d 776, 781 (11th Cir. 1994) (per

curiam). Moreover,  "[t]he Supreme Court has emphasized that the resulting figure

is "more than a mere 'rough guess' of the final award." Halderman v. Pennhurst

State School and Hosp., 725 F. Supp. 861 863 (E.D. Pa. 1989) (citing Pennsylvania

v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986)).

Rather, it is "'presumed to be the reasonable fee' to which counsel is entitled." Id.

See also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554 (2010) ("[T]here is a

`strong presumption` that the lodestar figure is reasonable.").

A. Reasonable Hours

In determining whether counsel expended a reasonable amount of time on

the case, the Court looks first to the time claimed.

The hours claimed or spent on a case are "[t]he most useful starting point for

determining the amount of a reasonable fee." Hensley, 461 U.S. at 433. Counsel

must exercise "billing judgment" in determining the hours reasonably expended on

the merits, Id. at 437, and attorneys should be compensated for the time reasonably

expended in seeking an award of fees from the court. Johnson v. Univ. Coll. of

Univ. of Ala. Birmingham, 706 F. 2d 1205, 1207 (11th Cir. 1983); Johnson v.

Mississippi, 606 F. 2d 635, 638 (5th Cir. 1979). Counsels' certification that the

work itemized has in fact been performed is "entitled to considerable weight on the issue of time required…" <u>Perkins v. Mobile Hous. Bd.</u>, 847 F. 2d 735, 738 (11th Cir. 1988). Indeed, this Circuit has stated that "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case and, therefore, it must appear that the time claimed is obviously and convincingly excessive under the circumstances." <u>Perkins,</u> 847 F. 2d at 738 (emphasis added).

Plaintiff notes in <u>I.K., a minor, by Ikevias Davis as Next Friend v. Atlanta Neighborhood Charter School, Inc., et al.,</u> 1:15-CV- 250 MHC (N.D. Ga. 2015), that the Court approved both the hours of each counsel and their hourly rate.

It seems to plaintiff that the hours expended in this case were reasonable. In <u>Sinapi</u>, the attorney was paid for his time spent on the case. The Court determined that fees for the TRO and attorney fees pre-litigation were reasonable and awarded fees for 29.7 hourly by the principal attorney, 35.8 hours by the associate and 31.4 hours by the paralegal. In contrast, plaintiff's counsel has spent 77.8.

Ralph Goldberg has broken the 56.6 hours he spent on this case into 3 categories—the initial interviews (4.1 hours), researching; preparing the complaint and TRO (41.9) and the attorney's fees brief. (10.6 hours). Such breakdown appears on the time records attached to the affidavit.

Ms. Cuvillier has spent 19.2 hours and broken her fees into four categories, the initial interview 4.1, present communication with client 3.8, communication with client pre-hearing 8.5, and hearing 6. There has been little or no duplication of effort. Plaintiff notes that two local counsel entered an appearance (and although Mr. Greenwood could not attend the TRO hearing, an associate of his firm did so.) In addition, Mr. Burgoyne, counsel for the National Board appeared by telephone.

Ralph Goldberg is seeking $19,810.00 (56.6 hours x $350 an hour), Laurene Cuvillier is seeking $5,280.00. (19.2 hours x $250 an hour).

### III. THE JOHNSON FACTORS.

Although the Eleventh Circuit has followed Supreme Court precedent in abandoning the test set forth in Johnson in favor of the lodestar formula, it is still useful to consider the twelve factors in calculating a reasonable fee. Johnson v. Ga. Highway Express, Inc., 488 F. 2d 714 (5th Cir. 1974); Loranger v. Stierheim, 10 F. 3d 776, 781 (11th Cir. 1994); Cain v. Alemco USA, Inc., No. 1:12-CV-3296-TWT, 2014 WL 2158413, at *1 (N.D. Ga. May 23, 2014) (considering Johnson factors).

At least five Johnson factors—the time and labor required; the novelty and difficulty of the case; the amount involved and the result obtained; the skill of the attorneys requisite to perform the legal service properly; and the experience, reputation, and ability of the attorneys—should be considered in assessing the reasonableness of the hours claimed. See generally Norman, 836 F. 2d at 1299-02.

10

A. Time and Labor Required.

In making a fee request, "[c]ounsel…should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434; Norman, 836 F. 2d at 1301. Counsel should provide in the fee request the hours spent "with sufficient particularity." ACLU v. Barnes, 168 F. 3d 423 (11th Cir. 1999). Counsel have done so in their affidavits. See Goldberg affidavit at 6, Cuvillier affidavit.

B. Novelty and Difficulty of the Issues Presented.

In determining a reasonable attorney fee, this Court should consider the novelty and difficulty of the questions presented in this case and the skill requisite to perform the services properly. See Blanchard v. Bergeron, 489 U.S. 87, n. 5 (1989) (citing Johnson, 488 F. 2d at 717-19). This case was not especially factually complex, but the legal issues were somewhat complex and sometimes novel because there is so little precedent addressing the effect of the ADAAA on the issue of testing and none in this District. The issue of seeking affirmative injunctive relief on a TRO was also somewhat novel. At the very least, this case was not what has been termed a "cookie cutter" Title III, ADA case.

The public benefit advanced by civil rights litigation is far more important than the amount of money received. City of Riverside v. Rivera, U.S. 561, 574 (1989) ("Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate

11

important civil and constitutional rights that cannot be valued solely in monetary terms."). Attorneys' fees analysis should "encompass not only a comparison of the relief requested to that recovered, but also a determination of whether public interest have been served by resolution of the dispute." Walker v. Crigler, 145 F. 3d 1327 (4th Cir. 1998) (unpublished opinion) (citing Sheppard v. Riverview Nursing Center, Inc., 88 F. 3d 1332, 1336 (4th Cir. 1996)); see also Webster Greenthumb Co., 112 F. Supp. 2d 1339, 1376-79 (N.D. Ga. 2000) ("[T]he most important factor is the results obtained," and enhancement may be appropriate for public advancement "spillover benefits for non-parties."); Barber v. T.D. Williamson, Inc., 254 F. 3d 1223 (10th Cir. 2001) (attorney fees to civil rights claimant to be construed broadly to allow recovery when attorneys are encouraged to represent civil rights clients, important right is affirmed, or need to improve or change conduct is established).

At the end of the day, the results achieved for Plaintiff included all of the relief sought at the outset of the case, although that level of success is not a prerequisite to a full free award under the ADA. See Koster v. Perales, 903 F. 2d 131, 135 (2nd Cir. 1990) (awarding full measure of attorneys' fees, although settlement agreement required defendant to do no more than he was obligated to do by law before litigation began because "[p]laintiffs…obtained the relief contemplated at the outset of the litigation."); see also Hewitt v. Helms, 482 U.S.

12

755, 761 (1987) ("At the end of the rainbow lies not a judgment, but some action

(or cessation of action) by the defendant that the judgment produces…"); see also

Hensley, 461 U.S. at 435 ("[T]he Court's rejection of or failure to reach certain

grounds is not a sufficient reason for reducing a fee. The result is what matters.")

(Emphasis added); Brooks v. Georgia State Bd. of Elections, 997 F. 2d 857, 861

(11th Cir. 1993) ("compensable time for purposes of these fee statutes is the time

spent 'on the litigation.'") (emphasis in original). Such a favorable result benefits

not only the instant Plaintiff, but also the community more broadly. Whatever the

ADAAA means, one thing it does mean is that testing organizations among others

should take a history of accommodation seriously, instead of regarding those

seeking accommodations as somehow lowering professional standards.

Indeed, counsel are enforcing what "has been described as a milestone on

the path to a more decent, tolerant, progressive society." PGA Tours, Inc. v.

Martin, 532 U.S. 671, 675 (2001), and "among the most salutary remedial laws

ever passed by a well-intended Congress." Houston v. Marod Supermarkets, Inc.,

733 F. 3d 1323, 1341 (11th Cir. 2013) (dissent). As the Court in Hernandez v.

Grullense, 2014 WL 1724356 (N.D. Cal. 2014) noted at page 1:

> The ADA was adopted in 1990 to provide a "national
> mandate for the elimination of discrimination against
> individuals with disabilities" and to "address the major
> areas of discrimination faced day-to-day by people with
> disabilities." 42 U.S.C. § 12101(1), (4); see also H.R.
> REP. 101–485, 22–23. The Act is "a milestone on the

13

path to a more decent, tolerant, progressive society," Board of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 375 (2001) (Kennedy, J., concurring), and "among the most salutary remedial laws ever passed by a well-intended Congress." Houston v. Marod Supermarkets, Inc., 733 F. 3d 1323, 1341 (11th Cir. 2013). "The ADA creates the possibility that successful plaintiffs may establish permanent changes in the design and physical configuration of structures to better accommodate the disabled. The benefits of such changes clearly redound not only to the plaintiffs themselves, but to similarly situated disabled persons, and the entire society at large." Walker v. Carnival Cruise Lines, 107 F. Supp. 2d 1135, 1143 (N.D. Cal. 2000). The ADA has increased access to public and commercial facilities for thousands of people. See, e.g., United States Comm'n on Civil Rights, "Sharing the Dream: Is the ADA Accommodating All?" (2000).[3]

B. Reasonable Hourly Rate.

In assessing a reasonable hourly rate for Plaintiff's counsel, this Court must evaluate the attorneys' "knowledge of trial practice and knowledge of the substantive law." Norman, 836 F. 2d at 1301. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Id. at 1299. In short, the rate should "reflect what an attorney with similar experience, background, skill, and reputation would charge under the same circumstances." In re Chicken Antitrust Litig., 560 F. Supp. at 971; In re Domestic Air Transp. Litig.,

---

[3] As noted, the Houston citation is the dissent.

14

148 F.R.D. at 355; Pub. Interest Group of N.J., Inc. v. Windall, 51 F. 3d 1179, 1185 (3rd Cir. 1995). The market rate applies whether the attorney is in public interest or private practice. Mason v. Pierce, 806 F. 2d 1556, 1557-58 (11th Cir. 1987). The affidavits herein establish such a rate.

    C. Johnson Factors Relevant to Hourly Rate.

    As noted above, a review of the factors delineated in Johnson is still deemed useful in calculation of a reasonable fee. Norman, 836 F. 2d at 1299. "[T]he district court may wish to consider any of the Johnson factors to the extent that they suggest that comparables offered may not be relevant to the issues before the court or as they may affect the weight to be given to the comparables being offered to the court." Id. at 1299-1300. The factors which are most relevant to the reasonableness of a requested hourly rate in this case are discussed below.

    D. The Customary Fee.

    There is no doubt that the prevailing attorneys' own customary or usual billing rates are an "appropriate factor to be considered by the court." Blum v. Stenson, 465 U.S. 886, 895 (1984). Judge Thrash in the Northern District has described the customary fee as the "best evidence" of hourly rate. Webster Greenthumb, 112 F. Supp. 2d 1339, 1368 (N.D. Ga. 2000).

    Evidence of such rates is found in counsels' affidavits and the case of I.K., a minor, by Ikevias Davis as Next Friend v. Atlanta Neighborhood Charter School,

Inc., et al., 1:15-CV-250-MHC (N.D. Ga. 2015). The best evidence, of course, is the fact that plaintiff was willing to pay the sum of $25,000 in this case. A copy of the contract with plaintiff is attached.

Nevertheless, counsel is aware that it is presumed that the going rate is the rate where this Court sits. There are three decisions counsel finds relevant. In Richardson v. McCarthy, 3:13-CV-95 (CDL) (M.D. Ga. 2016), the Court awarded Mr. Beasley, who has been in practice since 1988, $325.00 an hour in a job discrimination case. In Prison Legal News v. Chapman, 2015 WL 5722797 (M.D. Ga. 2015), this Court awarded Mssrs. Webber and, Spears $300 an hour. Gerald Weber has been in practice since 1990 and Brian Spears since 1978. The other attorneys were paid from $150 to $200. Mr. Filipovits had become a member of the bar in 2009.

In Georgia State Conference of NAACP v. Hancock County Bd. of Elections, 2018 WL 1583160(M.D. Ga. 2018), this Court awarded similar rates.[4] The undersigned have been in practice since 1975 and 2004 respectively. The fees they seek are well within the rates set out in these cases and the cases in fn. 4 below.

_____

[4] The movants in the Hancock County case cited to the following cases: Plumbers & Pipe fitters Union No. 421 Health & Welfare Fund v. Brian Trematore Plumbing & Heating, Inc., 2013 WL 3816660 slip at 3 (M.D. Ga. 2013); Hickey v. Columbus Consol. Gov't., 2011 WL 1314762 slip at 12 (M.D. Ga. 2011), and Stalvey v. Wal-Mart Stores E. LP, 2011 WL 611835 slip at 2 (M.D. Ga. 2011).

E. Experience, Reputation, and Ability of Attorneys.

The experience, reputation and ability of counsel are set forth in the attached

Declarations, and weigh heavily in favor of their offered hourly rates.

IV. Costs

Plaintiff seeks the following costs:

$400 filing fee;

$73.24 for car rental;

$25 for gas.

These costs are compensable. See Norkunas v. Hpt Cambridge, LLC, 969 F.

Supp. 2d 184 (D. Mass. 2013).[5]

CONCLUSION

Counsel are entitled to attorneys' fees of $19,810 for Ralph Goldberg and

$5,288.00 for Laurene Cuvillier. They are also entitled to costs of $498.24.

---

[5] While the Court denies rental car recovery, that is after counsel was reimbursed for airfare and the Court suggested taxis were cheaper. See fn. 8. In this case, the rental car was for counsel to travel from Tucker, Ga. to Macon and back. It would have been ridiculous to travel by taxi.

17

Respectfully submitted,

/s/ Ralph Goldberg
Ralph Goldberg
Georgia Bar No. 299475

/s/ Laurene Cuvillier
Laurene Cuvillier
Georgia Bar No. 202922
Attorneys for Plaintiff

Goldberg & Cuvillier, P.C.
1400 Montreal Road, Suite 100
Tucker, Georgia 30084-6919
(770) 670-7343
attorneygoldberg@hotmail.com
cuvillier@bellsouth.net

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel of record for the

opposing party in the foregoing matter with a copy of the foregoing by depositing

in the United States Mail copies of the same in properly addressed envelopes with

adequate postage thereon or by notification of electronic filing to:

Mr. Robert Burgoyne
Perkins Coie
700 13th Street, NW
Suite 600
Washington, D.C. 20005-3960

Mr. G. Grant Greenwood
James Bates Brannan Groover LLP
231 Riverside Drive, Suite 100
PO Box 4283
Macon, GA 31201

This 31st day of May, 2018.

Respectfully submitted,

/s/ Ralph Goldberg
Ralph Goldberg
Georgia Bar No. 299475

/s/ Laurene Cuvillier
Laurene Cuvillier
Georgia Bar No. 202922
Attorneys for Plaintiff

Goldberg & Cuvillier, P.C.
1400 Montreal Road, Suite 100
Tucker, Georgia 30084-6919
(770) 670-7343
attorneygoldberg@hotmail.com
cuvillier@bellsouth.net

19